# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VOITH PAPER GMBH & CO. KG     :
     :     Civil Action No. 07-226-JJF
    Plaintiff,     :
     :
       v.     :
     :
JOHNSONFOILS, INC.     :
     :
    Defendant.     :

## DEFENDANT JOHNSONFOILS, INC.'S
## OPENING CLAIM CONSTRUCTION BRIEF

George H. Seitz, III (DE #667)
Patricia Pyles McGonigle (DE #3126)
Kevin A. Guerke (DE#4096)
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

-and-

Anthony S. Volpe
John J. O'Malley
Ryan W. O'Donnell
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400

*Attorneys for Defendant*
*JohnsonFoils, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................ iv

NATURE AND STAGE OF THE PROCEEDINGS ....................... 1

SUMMARY OF ARGUMENT ...................................................... 3

STATEMENT OF FACTS ........................................................... 3

ARGUMENT .............................................................................. 5

I.    INTRODUCTION .............................................................. 5

II.   LEGAL STANDARDS ....................................................... 6

    A.    Claim construction. ................................................... 6

        1.    Identify the person of ordinary skill in the art. ......................... 7

        2.    The Court must consider the plain and ordinary meaning of the claims. ................................... 7

        3.    The Court must consider the patent's specification and prosecution history to determine if there is a contrary or special definition for a term. ..................... 8

        4.    As a last resort, the Court may consider extrinsic evidence to interpret the terms. ................... 9

        5.    Once all of the above steps are completed, the Court can construe the claims. .............................. 9

    B.    The scope of a patent claim is subject to prosecution history estoppel or prosecution history disclaimer. ............................. 10

    C.    Legal standard for definiteness of patent claims. ............................... 13

III.  DEFINING THE PERSON OF ORDINARY SKILL IN THE ART ............... 14

IV.   PROPER INTERPRETATION OF THE CLAIMS OF U.S. PATENT NO. 5,718,805 ........................................... 14

A.    Independent claim 1. ............................................................... 14

    1.    The Term "Following." .................................................... 16

    2.    The Phrase "neither wire belt defining a single wire
          predrainage zone" .......................................................... 16

    3.    The Terms of the "First Section" ................................... 17

          (a)    The Phrase "a first drainage element at the start
                 of the path through the twin wire zone[.]"...................... 17

          (b)    The Phrase "means for supporting the belts for
                 forming a wedge shaped entrance slot
                 into the first section[.]".......................................... 19

          (c)    The Phrase "a fiber suspension supplying headbox
                 having an outlet placed and directed for
                 delivering fiber suspension from the
                 headbox to the wedge shaped entrance slot." ................. 19

    4.    The Terms of the  "Second Section" ............................... 20

          (a)    First Drainage Strips and
                 Second Drainage Strips ...................................... 22

                 (i) The Phrase "a plurality of first drainage
                 strips are positioned for contacting
                 the first wire belt"........................................... 22

                 (ii) The Phrase "a plurality of second drainage
                 strips are positioned within the loop of the
                 second wire belt and are for contacting
                 the second wire belt"......................................... 23

          (b)    First Support Means for Resiliently Supporting
                 the First Drainage Strips and Second
                 Support Means Supporting the  Second
                 Drainage Strips Rigidly...................................... 24

                 (i) The Phrase "first support means for resiliently
                 supporting    the    first    drainage    strips    against

the respective wire belt that the strips
contact" .................................................................. 24

(ii) The Phrase "second support means
supporting the second drainage strips rigidly
against the second wire belt"............................. 25

(c)    First and Second Means for Collecting Water ................. 26

(i)    The Phrase "first means for collecting the
water drained from the fiber suspension by the
most upstream, one of the drainage
strips" .................................................................. 26

(ii) The Phrase  "second means separate from
the first means for collecting thewater
drained from the fiber suspension by all of
the other drainage strips".................................. 28

5.    The Terms of the "Third Section" ................................. 28

6.    All Sections are Free of Rolls Which Deflect
the Twin Wire Zone ....................................................... 29

7.    Summary ......................................................................... 30

B.    Independent claim 2. .............................................................. 31

1.    Free of Forming Rolls .................................................... 31

2.    No Suction Roll ............................................................... 32

C.    Independent claim 3. .............................................................. 33

D.    Independent claim 4. .............................................................. 33

E.    Independent claim 5. .............................................................. 33

V.    PROPER INTERPRETATION OF THE CLAIMS OF U.S.
PATENT NO. 5,972,168................................................................ 34

A.    Independent claim 3. .............................................................. 35

**B.**    Independent claim 7. ............................................................... 37

**C.**    Independent claims 1 and 5. ................................................... 38

**D.**    Dependent claims 2, 4, 6, and 8. ............................................ 39

**CONCLUSION** .............................................................................. 39

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) ..........................................8

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) ...............................8

*Applied Med. Res. Corp. v. United States Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) ................................................................................3, 7

*Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297 (Fed.
    Cir. 2001) ....................................................................................................................10, 35

*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001) ......................................................................7

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*,
    224 F.3d 1308 (Fed. Cir. 2000) ...............................................................................7

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)............................8

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.*,
    347 F.3d 1314 (Fed. Cir. 2003) ...............................................................................10

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005) ................................................................................13

*In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994) .......................................................13

*Eagle Comtronics, Inc. v. Arrow Commun. Labs., Inc.*,
    305 F.3d 1303 (Fed Cir. 2002) ................................................................................12

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999) ...................................12

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371
    (Fed. Cir. 2001) ..........................................................................................................14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 304 F.3d 1289
    (Fed. Cir. 2002) ..........................................................................................................11, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359
    (Fed. Cir. 2003) ..........................................................................................................11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ...................................................................................................10, 11

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) .............12

*Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352 (Fed. Cir. 2000) ......................8

*Life Techs., Inc. v. Clontech Lab., Inc.*, 224 F.3d 1320 (Fed. Cir. 2000) ..........................7

*Markman v. Westview Instruments*, 517 U.S. 370 (1996) ...................................................6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ......................6, 9

*Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250 (Fed. Cir. 1999) ...............8

*Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003) ......................13

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ..............................12

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .............................................7, 8, 9

*Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577 (Fed. Cir. 1995) .....................................14

*Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999) ........................................................14

*S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364 (Fed. Cir. 2001) .................................................13

*Sage Prods. v. Devon Indus.*, 126 F.3d 1420 (Fed. Cir. 1997) ...........................................8

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) .....................12

*Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989
    (Fed. Cir. 2003) ...........................................................................................................13

*Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985) ..................7

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ..............................9

## FEDERAL STATUTES

35 U.S.C. §112 ......................................................................................................8, 13, 39

35 U.S.C. §120.................................................................................................................34

**OTHER**

*Merriam Webster's Collegiate Dictionary*, 452 (10th Ed. 1995). .......................16

## NATURE AND STAGE OF THE PROCEEDINGS

On April 27, 2007, Voith Paper GmbH & Co. KG ("Voith") filed this action alleging that JohnsonFoils, Inc. ("JohnsonFoils") infringed on Patent No. 5,718,805 ("the '805 Patent"), and Patent No. 5,972,168 ("the '168 Patent") (collectively referred to as "Patents-in-Suit"). JohnsonFoils served its Answer, Affirmative Defenses and Counterclaims on August 13, 2007.

On August 3, 2007, the Court issued a Scheduling Order setting the trial for November 5, 2008, and ordering the parties to:

(1)     File all motions to amend the pleadings by December 21, 2007;

(2)     File their respective Markman Briefs ten days prior to the scheduled Markman hearing;

(3)     Attend a Markman hearing scheduled for January 30, 2008;

(4)     Complete exchange of contentions interrogatories, identify witnesses and complete document discovery by February 15, 2008; and

(5)     and complete fact discovery by April 30, 2008. (D.I. 17).

On August 24, 2007, JohnsonFoils filed Requests for Reexamination with the United States Patent and Trademark Office for the Patents-in-Suit.

On August 28, 2007, JohnsonFoils filed a "Motion to Stay the Proceedings Pending Reexamination of the Patents-in-Suit or in the Alternative for Leave to File a Motion for Summary Judgment Prior to August 20, 2008 that Patents 5,718,805 and 5,972,168 are Invalid." (D.I. 27). Voith filed its response on September 17, 2007. (D.I. 33). JohnsonFoils' motion to stay remains pending.

On September 5, 2007, Voith answered JohnsonFoils' Counterclaims. (D.I. 31).

On November 9, 2007, Voith filed its "Motion to Compel Defendant JohnsonFoils, Inc., to Provide Information Requested in Voith's First and Second Sets of Interrogatories and To Produce Documents Responsive to Voith's First and Second Set of Requests for Documents." (D.I. 42). JohnsonFoils filed its "Answering Brief to Plaintiff's Motion to Compel Defendant JohnsonFoils, Inc. to Provide Information Requested in Voith's First and Second Sets of Interrogatories and to Produce Documents Responsive to Voith's First and Second Requests for Documents" on November 28, 2007. (D.I. 46). Voith then filed a further Reply Brief on December 3, 2007. (D.I. 48). Voith's motion to compel remains pending.

On December 17, 2007, JohnsonFoils filed "Defendant's Motion to Compel Production of Documents in Response to Its First Set of Document Requests." (D.I. 49).

On December 18, 2007, Voith filed its "Motion for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) Prohibiting the Disclosure of Voith's Highly Confidential Information to Individuals Engaged in Competitive Business Practices for or on Behalf of Voith's Competitor JohnsonFoils, Inc." (D.I. 52).

On December 21, 2007, JohnsonFoils filed its "Motion for Leave to Amend Its Counterclaims" (D.I. 54) and its "Opening Brief in Support of Its Motion for Leave to Amend Its Counterclaims." (D.I. 55).

On January 9, 2008, JohnsonFoils' filed its "Answering Brief in Opposition to Plaintiff's Motion for A Protective Order Pursuant to Federal Rules of Civil Procedure 26(c) Prohibiting the Disclosure of Voith's Highly Confidential Information to Individuals Engaged in Competitive Business Practices for or on Behalf of Voith's Competitor JohnsonFoils, Inc." (D.I. 57).

On January 14, 2008, Voith filed its "Answering Brief in Opposition to Defendant JohnsonFoils, Inc.'s Motion for Leave to Amend its Counterclaims." (D.I. 62).

On January 16, 2007, JohnsonFoils filed its "Declaration of Patricia P. McGonigle in Support of Defendant, JohnsonFoils, Inc.'s Opening Claim Construction Brief." (D.I.  ).

## SUMMARY OF ARGUMENT

Each apparatus claim in Patent Nos. 5,718,805 and 5,972,168 recites three structurally distinct sections with different components. Each method claim of Patent 5,972,168 is directed to producing paper web by feeding wire belts past those structurally distinct sections, which have distinct functions. Since different claim limitations separately reciting structurally and functionally distinct elements can not mean the same thing, [1] the first, second, and third sections of the Patents-in-Suit must be construed as separate sections that do not overlap.

## STATEMENT OF FACTS

The '805 Patent, Exhibit A, issued from a chain of continuing applications. The '805 Patent issued directly from Application No. 08/556,769 ("the '769

---

[1] See, *Applied Med. Res. Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).

Application") which was filed November 2, 1995 as a continuation application of Application No. 08/286,948 ("the '948 Application"), filed August 8, 1994. *Id.* The '948 Application, which issued as Patent No. 5,500,091 ("the '091 Patent"), was a continuation of Application No. 08/055,918 ("the '918 Application"), filed April 29, 1993 and which ultimately issued as Patent No. 5,389,206 ("the '206 Patent"). *Id.* The '918 Application was a continuation of Application No. 07/773,965 ("the '965 Application") filed as PCT/EP90/01313 on September 8, 1990. *Id.* The '805 Patent also claims priority to DE 39 27 597.3, filed August 22, 1989. Exhibit A, Facepage. The '805 Patent includes independent apparatus claims 1 – 5 and no dependent claims. Exhibit A, Col. 8, line 4 – Col. 12, line 21.

The '168 Patent also issued from a chain of continuing applications, as follows. The '168 Patent issued directly from Application 09/161,138 ("the '138 Application") which was filed on September 25, 1998 as a continuation of Application No. 09/023,435 ("the '435 Application"). *Id.* The '435 Application was filed on February 13, 1998 as a continuation of the '769 Application, *i.e.* the '805 Patent application. *Id.* Like the '769 Application, the '138 Application is also a continuation of the '948 Application, the '918 Application, the '965 Application, PCT/EP90/01313, and DE 39 27 597.3. *Id.* The '168 Patent includes independent apparatus claims 3 and 7; and independent method claims 1 and 5. Exhibit B, Col. 8, line 4 – Col. 12, line 2. The '168 Patent also includes dependent claims 2, 4, 6, and 8.

JohnsonFoils produced the official United States Patent and Trademark Office ("USPTO") file histories related to the Patents-in-Suit in discovery as JFI0204346 – JFI0204886.  On even date with the filing of this brief, JohnsonFoils filed the "Declaration of Patricia P. McGonigle in Support of Defendant, JohnsonFoils, Inc.'s Opening Claim Construction Brief." ("Declaration").  The Declaration included those file histories as its Exhibits 1 through 5.  Exhibits F, G, H, and P herein are copies of selected documents of Exhibit 3 of the Declaration. Exhibits I, K, M, N, and O herein are copies of selected documents of Exhibit 1 of the Declaration.

<u>ARGUMENT</u>

## I.    INTRODUCTION

Each of the Patents-in-Suit states:  "The present invention relates to a twin-wire former for the production of a fiber web, in particular a paper web, from fiber suspension." Exhibit A, Col. 1, lines 15 – 27; Exhibit B, Col. 1, lines 17 – 19.  In other words, the Patents-in-Suit relate to a paper making machine and a method of making paper with that machine.  The claimed machine and process of making paper involves draining water from a fiber suspension by running the fiber suspension serially past unique components of the paper machine.  Exhibit A, Col. 1, lines 15 – 44; Exhibit B, Col. 1, lines 17 – 46.

Each apparatus claim in the Patents-in-Suit recites that the machine has a twin wire zone separated into discrete "first", "second", and "third" sections and each section includes unique components.  See Exhibit A, Col. 8, line 4 – Col. 12,

line 21; and Exhibit B, Col. 8, line 4 – Col. 12, line 2. Each method claim recites "feeding the wire belts" first past components that correspond to the first section, then past components that correspond to the second section, and finally past components that correspond to the third section. See Exhibit B, Col. 8, line 4 – Col. 12, line 2. The scope of each claim of the Patents-in-Suit is limited to either a machine with these three discrete sections or a method of making paper web with such a three section machine.

Exhibit C includes a claim chart comparing the '805 Patent claim 1 to its claims 2 – 5. Exhibit D includes a claim chart comparing the '168 Patent independent claims to one another and to the '805 Patent claim 1.

## II.    LEGAL STANDARDS

### A.    Claim construction.

Claim construction is a matter of law decided exclusively by the court and not the finder of fact. *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) ("Markman II"). Construing the claims is a multi-step process of: 1) identifying the person of ordinary skill in the art; 2) looking at the plain and ordinary meaning of the claims; 3) looking to the patent's specification and prosecution history if there is a contrary or special definition for a term; 4) looking at extrinsic evidence to interpret the terms; and 5) construing the terms based on the previous steps. See *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) ("*Markman I*"), aff'd, 517 U.S. 370 (1996).

### 1. Identify the person of ordinary skill in the art.

A person of ordinary skill in the art is one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate, whether by patient, and often expensive, systematic research or by extraordinary insights. *Life Techs., Inc. v. Clontech Lab.*, Inc., 224 F.3d 1320, 1325 (Fed. Cir. 2000) (citing *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985)).

### 2. The Court must consider the plain and ordinary meaning of the claims.

For every disputed claim term, a choice must be made between its plain and ordinary meaning or a contrary, if any, special definition from the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). The analysis begins with the claim terms themselves. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). "[T]he context in which a term is used in the asserted claims can be highly instructive." *Id.* In particular, the use of different terms in a claim connotes different meanings. *Applied,* 448 F.3d at 1333 (Fed. Cir. 2006) (citing, *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)).

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding

structure, material, or acts described in the specification. 35 U.S.C. § 112, Paragraph 6. "[W]hether a claim limitation is in means-plus-function format, is a matter of claim construction and is thus a question of law reviewed *de novo*." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003) (citing *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352 (Fed. Cir. 2000)).

A claim limitation that uses the word "means" will invoke a rebuttable presumption that § 112, Paragraph 6 applies. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002). When a limitation lacks the term "means" but uses functional terms rather than structure or material to describe the claimed function, the limitation is in means-plus-function format. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999) (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318 (Fed. Cir. 1999)).

In construing means-plus-function limitations, a court must first define the particular function claimed. *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1428 (Fed. Cir. 1997). Then, the court must identify "the corresponding structure, material, or acts described in the specification" that performs the claimed function. 35 U.S.C. § 112, Paragraph 6; see *Sage Prods.*, 126 F.3d at 1428.

> **3.    The Court must consider the patent's specification and prosecution history to determine if there is a contrary or special definition for a term.**

"The claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument … . For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315. If the

specification reveals a special definition given to the claim term that differs from the ordinary meaning, then that term definition governs. *Id.* at 1316. Similarly, the prosecution history can be consulted to determine how the inventor understood the claim language and whether the inventor limited the invention during prosecution. *Id.* at 1317. In other words, the specification is the best source for interpreting a disputed claim, guided, as needed, by the prosecution history. *Id.* at 1315. Reliance on dictionaries or treatises to assist in interpreting the commonly understood meaning of the claim terms is to be limited, and the use of the term in the specification should be controlling. *Id.* at 1320-1324.

> **4.    As a last resort, the Court may consider extrinsic evidence to interpret the terms.**

As a last resort, extrinsic evidence, such as the prior art and expert testimony, may also be relied on to construe patent claims, but only after all of the intrinsic evidence is considered. *Markman I*, 52 F.3d at 980. Extrinsic evidence that contradicts the plain meaning of the claim terms should be rejected. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

> **5.    Once all of the above steps are completed, the Court can construe the claims.**

Having: 1) identified the person of ordinary skill in the art; 2) looked at the plain and ordinary meaning of the claims; 3) looked to the patent's specification and prosecution history to determine if there is a contrary or special definition for a term; and 4) considered whether extrinsic evidence is appropriate to interpret the terms, a court can construe the claims. *Phillips*, 415 F.3d at 1313-1314.

B. **The scope of a patent claim is subject to prosecution history estoppel or prosecution history disclaimer.**

Prosecution History Estoppel:   Prosecution history estoppel prevents the patentee from broadening the scope of the claim through the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002) (*Festo VIII*).   By surrendering a broader claim, the applicant acknowledges the meaning of the words to describing the broader and narrower invention and affirmatively chooses the narrower meaning.    *Id.* at 734-735. An applicant who narrowed the claims to obtain a patent cannot recapture the broader claim scope by arguing a lack of a broader word needed to describe the equivalent. *Id.*

"There are two distinct theories of prosecution history estoppel--amendment-based estoppel and argument-based estoppel." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.,* 347 F.3d 1314, 1324-1325 (Fed. Cir. 2003).   "In general, prosecution history estoppel, under either theory, requires that patent claims be interpreted in light of the proceedings before the PTO." *Deering*, 347 F.3d at 1325.   When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001).

With respect to amendment-based estoppel, a rebuttable presumption exists that a narrowing amendment related to patentability results in a surrender of a patent claim's scope. *Festo VIII*, 535 U.S. at 737.  The Federal Circuit, on remand

from the Supreme Court, established three-steps for determining prosecution history estoppel. First, determine if the claim amendment narrowed the literal scope of the claim; second, determine if the narrowing amendment was made for a reason related to patentability; third, if the first and second steps are answered affirmatively, decide the extent of the scope surrendered by the amendment. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 344 F.3d 1359, 1366 - 1367 (Fed. Cir. 2003) ("*Festo IX*"). In *Festo VIII*, the Supreme Court imposed a presumption that a narrowing amendment relating to patentability surrendered all of the territory between the original and the amended claim limitation. *Id.* (citing *Festo VIII*, 535 U.S. at 740). If an alleged equivalent falls within this surrendered territory, there is a presumption of prosecution history estoppel that precludes infringement under the doctrine of equivalents. *Festo IX*, 344 F.3d at 1367.

The patentee bears the burden to show that any narrowing amendment did not surrender the equivalent at issue. *Id.* (citing *Festo VIII*, 535 U.S. at 741). The patentee can only meet this burden by showing: (1) that the equivalent was "unforeseeable" at the time of the amendment; (2) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; or (3) some other reason suggesting that the patentee could not reasonably be expected to have described the substitute in question. *Festo VIII*, 535 U.S. at 740-41; *Festo IX*, 344 F.3d. at 1365. In short, the patentee must show that at the time of the amendment one skilled in the art could not reasonably have been expected to draft a claim that literally encompassed the alleged equivalent. *Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 304 F.3d 1289, 1290 (Fed. Cir. 2002).

The practice of rewriting a dependent claim into independent form is a narrowing amendment, and that amendment bars the application of the Doctrine of Equivalents for the subject matter added from the dependent claim to the original subject matter of the independent claim. *Honeywell Int'l v. Hamilton Sundstrand Corp.,* 370 F.3d 1131, 1141 (Fed. Cir. 2004).

With respect to argument-based estoppel, the scope of claim coverage is limited by arguments seeking to overcome or distinguish a reference. *Eagle Comtronics, Inc. v. Arrow Commun. Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002) (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (holding that the scope of coverage of the claims may change if a patentee has "relinquished [a] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference")). Also, "[c]lear assertions made during prosecution in support of patentability, *whether or not actually required to secure allowance of the claim*, may also create an estoppel." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995), emphasis added. Any argument-based estoppel affecting a limitation in one claim extends to all claims in which that limitation appears. *Id.* at 1584.

<u>Prosecution History Disclaimer</u>: Prosecution history disclaimer narrows the meaning of a term from the plain and ordinary meaning to a limited meaning based on arguments made during the claim's prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). The rationale that supports the

doctrine is simple: competitors should be able to rely on statements made during a patent's prosecution; that is, a patentee who disclaims subject matter during prosecution cannot later recapture the subject matter in litigation. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

### C.    Legal standard for definiteness of patent claims.

The patent statute requires that the claims of a patent "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, Paragraph 2.  This definiteness requirement "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371- 72 (Fed. Cir. 2001). "If one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005), (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*)).

Determining whether a patent claim satisfies the definiteness requirement of 35 U.S.C. § 112, Paragraph 2 is a matter of law for the court.  See *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003).  If a court determines that a claim is not "amenable to construction," then the claim is invalid as

indefinite. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).   An indefinite claim cannot be "fixed" during litigation by a court rewriting them in a way that corrects ambiguous or indefinite language.  *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("Although we construe claims, if possible, so as to sustain their validity, it is well settled that … courts do not redraft claims.")

## III.   DEFINING THE PERSON OF ORDINARY SKILL IN THE ART

The Patents-in-Suit state that the alleged inventions are merely combinations of known features.  Exhibit A, Col. 3, lines 1 – 2; and Exhibit B, Col. 3, lines 4 – 5. One of ordinary skill in the art is a person having familiarity with these known, or conventional, paper making features.  This person would have sufficient experience of about 2 years to appreciate both known machine features and paper making.

Expert opinion is not necessary to explain the claimed subject matter.   A person of ordinary skill in this art need not have any specific scientific degree, technical training, or mathematical knowledge.  The person of ordinary skill in the art need only comprehend the conventional features in the recited combination.  It is from this perspective that the following claim terms are construed.

## IV.   PROPER INTERPRETATION OF THE CLAIMS OF U.S. PATENT NO. 5,718,805

### A.   Independent claim 1.

Independent claim 1 of the '805 Patent is reproduced below.

1.    A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship;

first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second

drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element,

the twin wire zone being free of rolls which deflect the twin wire zone.

Exhibit A, Col. 8, lines 4 – 49, underlining emphasis added.

### 1.    The Term "Following"

The second section <u>follows</u> the first section, and the third section <u>follows</u> the second section along the path of the wire belts through the twin wire zone.  The accepted meaning of follows is "to go or come after a person or thing in place, time, or sequence.[2]"  Sections that go or come in a sequence necessarily occupy discrete physical places.  Under the plain and ordinary meaning of claim 1, the first, second, and third sections are discrete physical sections that do not overlap.  One of ordinary skill in the art would interpret one section "following" another as

> "*coming after [the previous section] in sequence and occupying a discrete physical place.*"

### 2.    The Phrase "neither wire belt defining a single wire predrainage zone"

In the '805 Patent application (*i.e.*, the '769 Application), Exhibit F, Voith attempted to obtain claims to a twin wire zone that included at least some a single wire predrainage zone.  The claims included the addition of "<u>neither wire belt defin[es] a single wire predrainage zone of</u> **a substantial length**."  Exhibit F, page 14, underlining and bold emphasis added.  Voith could not obtain broader claims because every element of the claims was old and disclosed in prior art references.  Exhibit G, pages 2-5.  Voith's March 4, 1997 Reply amended the claims to recite

---

[2] Exhibit E, *Merriam Webster's Collegiate Dictionary*, 452 (10th Ed. 1995).

"neither wire belt defining a single wire predrainage zone." Exhibit H, pages 1 - 9, underlining added. Voith surrendered all twin wire formers having any single wire predrainage zone and it cannot recapture the prior art technology through equivalents. "[N]either wire belt defining a single wire predrainage zone" is limited to the literal meaning:

"*neither wire belt has any single wire predrainage.*"

### 3.     The Terms of the "First Section"

The components of the first section are: (a) "a first drainage element at the start of the path through the twin wire zone," (b) "means for supporting the belts for forming a wedge shaped entrance slot into the first section," and (c) "a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot[.]"   See Exhibit C, pages 3 - 4; and Exhibit A, Col. 8, lines 14 – 21.

### (a) The Phrase "a first drainage element at the start of the path through the twin wire zone"

The '805 Patent specification gives the "first drainage element" special meaning as the particular drainage devices:  a rotating forming cylinder, a curved stationary forming shoe, or drainage strips.  Exhibit A, Col. 3, lines 7 – 10; and Col. 6, lines 50 – 62.  And "as a rule" the rotating forming cylinder is a suction roll. Exhibit A, Col. 6, lines 19 – 23.  Based on the special meaning in the specification, the first drainage element of the '805 Patent can be a suction roll or a curved stationary forming shoe.

The '805 Patent states the further limitation that the first drainage element may be a straight forming shoe but only in undefined "certain situations." Exhibit A, Col. 4, lines 14-16.  Since the public cannot determine what would qualify as a "certain situation," the first drainage element cannot be a straight forming shoe.

The '805 Patent also provides a special meaning for the term "drainage" in the first section:

> For success it is, however, also decisive that previously, in section I, a known pre-drainage towards <u>both sides</u> has already taken place and that this also takes place with the greatest possible retention of the flocculation-free condition of the fiber suspension.

Exhibit A, Col. 5, lines 26 – 30, underlining emphasis added.  The drainage element in the first section must cause drainage toward both sides.  But the '805 Patent never defines "a known pre-drainage."  Additionally, Voith distinguished its claims over the prior art Patent No. 4,925,531 ("Koski," Exhibit J) by stating that Koski's deflectors in the first section are not drainage elements:

> Koski, on the other hand, teaches several deflectors 24 at a location similar to the one where the curved drainage element in the first section of claim 13 appears.  <u>Such deflectors are not drainage elements</u>.

Exhibit I, Page 5, underlining emphasis added.  Contrary to Voith's assertion, Koski states:  "there is one or several deflectors 24 which remove water out of the web W that is being formed." Exhibit J, Col. 4, lines 24 – 29.  Voith unambiguously argued that Koski's drainage deflectors are not the claimed drainage element of the '805 Patent.   Since the claim 1 "drainage strips" recited in the second section are deflectors, Voith has disclaimed drainage strips in the first section of the claimed twin wire former.  Exhibit A, Col. 5, lines 21 – 24.

One of ordinary skill in the art would interpret "a first drainage element at the start of the path through the twin wire zone" as limited to

> "*either a suction roll or a curved stationary forming shoe within the twin wire zone that results in drainage from both sides of the twin wire zone.*"

### (b) The Phrase "means for supporting the belts for forming a wedge shaped entrance slot into the first section"

The function of this means for element is "supporting the belts for forming a wedge shaped entrance slot into the first section." The '805 Patent describes two different structures for performing this function:  1) breast rolls 13 and 14, and 2) suction roll 40 in combination with breast roll 13.  Exhibit A, Figures 1 – 5; Col. 4, lines 12 – 13; and Col. 6, lines 20 – 24.  One of ordinary skill in the art would interpret "means for supporting the belts for forming a wedge shaped entrance slot into the first section" as

> "*two breast rolls or a breast roll and a suction roll that support the belts to form a wedge shaped entrance slot into the first section.*"

### (c) The Phrase "a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot"

One of ordinary skill in the art understands the meaning of "fiber suspension supplying headbox."   However, the claim limitation "placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot" has a special meaning in the '805 Patent:

> The jet pulp discharged by the headbox 10 comes into contact with the two wire belts 11 and 12 <u>only at</u> the place where the lower wire 11 in the first section I of the twin-wire zone travels over a stationary curved forming shoe 16.

Exhibit A, Col. 4, lines 6 – 10, underlining added.  Each figure of the '805 Patent illustrates the only to the place where the wire travels over the first drainage element.  Exhibit A, Drawing Sheets.  One of ordinary skill in the art in view of the above and the lack of a single wire zone would interpret "a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot" as

> "*a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension only at the place where the lower wire in the first section of the twin wire zone travels over the stationary curved forming shoe or suction roll and forms a wedge shaped entrance.*"

### 4.    The Terms of the "Second Section"

As recited in claim 1 of the '805 Patent, the components of the second section are: (a) first drainage strips and second drainage strips; (b) first support means for resiliently supporting the first drainage strips and second support means supporting the second drainage strips rigidly; and (c) first and second means for collecting water.  In particular, claim 1 recites:

> in the second section,
>
> a plurality of first drainage strips are positioned for contacting the first wire belt;
> ...
> a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt;
> ...
> first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;
>
> second support means supporting the second drainage strips rigidly against the second wire belt;

- 20 -

> first means for collecting the water drained from the fiber suspension
> by the most upstream, one of the drainage strips;  [and]
>
> second means separate from the first means for collecting the water
> drained from the fiber suspension by all of the other drainage strips... .

Exhibit A, Col. 8, lines 22 – 42.  The '805 Patent separates these components from

the first section:

> The inventors have found that a combination of <u>known features</u>,
> namely:
>
> A. Twin-wire former without a single-wire pre-drainage zone or at
> least without a single-wire pre-drainage zone of any substantial length
> such as to cause any appreciable pre-drainage
>
> B. <u>Start of the drainage</u> in the twin-wire zone at a preferably curved
> drainage element, for instance on a rotating forming cylinder or, even
> better, on a curved stationary forming shoe
>
> C. <u>Further drainage</u> in the twin-wire zone between strips which are
> arranged along a "zig-zag" line, the strips which rest against the one
> wire belt being resiliently supported,
>
> <u>leads to an extremely high increase in the quality of the finished fiber
> web</u>, so that it satisfies even the highest requirements. ...

Exhibit A, Col. 3, lines 1 – 17, underlining added.  The '805 Patent also states that

the "extremely high increase in the quality of the finished fiber web" and the alleged

invention cannot be achieved unless the second section components are physically

isolated both from the first and third sections:

> It is important that two drainage boxes 17 and 18 with the <u>alternately
> resiliently and firmly supported ledge strips 27 and 28 lie **not in the
> front or the rear sections but in the middle section II of the twin-wire
> zone, since only here can they develop their full effect**</u>, namely,
> intensive drainage of the fiber suspension fed while retaining the fine
> flocculation-free fiber distribution. This is achieved in the manner that
> the corresponding wire belt is imparted a slight (scarcely visible)

> deflection on each strip so that turbulence is constantly produced in the still liquid part of the fiber pulp. <u>For success it is, however, also decisive that previously, in section I, a known pre-drainage towards both sides has already taken place</u> and that this also takes place with the greatest possible retention of the flocculation-free condition of the fiber suspension.

Exhibit A, Col. 5, lines 15-30, underlining and bold emphasis added.  In other words, the drainage strips and their associated structures cannot be located in any other section. Based on the plain language of claim 1 and the '805 Patent's explicit requirements, one of ordinary skill in the art would interpret "the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone" as

> "*the twin wire zone having a second section coming after the first section in sequence and occupying a discrete physical place along the path of the belts through the twin wire zone, wherein the components of the second section are not located in any other section.*"

### (a)  First Drainage Strips and Second Drainage Strips

#### (i)  The Phrase "a plurality of first drainage strips are positioned for contacting the first wire belt"

The '805 Patent describes the stationary curved forming shoe in the first section as including "several strips 16' with drainage slits present between them." Exhibit A, Col. 4, lines 6 – 12.  However, the '805 Patent goes further to state that these forming shoe strips are not drainage strips in the second section.  Exhibit A, Col. 5, lines 15 – 30.  Claim 1 also distinguishes the plurality of first drainage strips and the plurality of second drainage strips; the plurality of first drainage strips are resiliently supported while the plurality of second drainage strips are rigidly supported.  Exhibit A, Col. 8, lines 32 – 36.  The '805 Patent further notes, "Instead

- 22 -

of a rigidly supported [second] strip, a feed or discharge edge of a drainage box can also be provided." Exhibit A, Col. 7, lines 65 – 67. Since these structures are specific for the rigidly supported strips, a resiliently supported first strip cannot be a feed or discharge edge of a drainage box.

One of ordinary skill in the art would interpret "a plurality of first drainage strips are positioned for contacting the first wire belt;" as

> "*a plurality of first drainage strips that are not forming shoe strips, are not feed or discharge edges of drainage boxes, and are positioned for contacting the first wire belt.*"

### (ii) The Phrase "a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt"

As set forth immediately above, the Patents-in-Suit state that drainage strips are not forming shoe strips. One of ordinary skill in the art would interpret "a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt" as

> "*a plurality of second drainage strips that are not forming shoe strips positioned within the loop of the second wire belt for contacting the second wire belt.*"

Claim 1 also recites the specific orientation of the first and second drainage strips:

> the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship[.]

Exhibit A, Col. 8, lines 29 – 32. As stated in the '805 Patent Summary of the Invention, the alleged invention must have "strips which are arranged along a "zig-

zag" line... ." Exhibit A, Col. 3, lines 11 – 14.  The '805 Patent defines "zig-zag":

> It is important that each of the strips 27 and 28 lies in the region of a
> space between two opposite strips so that a "zig-zag" arrangement (i.e.
> non-opposing relationship) is present.

Exhibit A, Drawing Sheet 1 and Col. 4, lines 59 – 62.  Based on the requirement for

zig-zag strips and the clear definition of the same, one of ordinary skill in the art

would interpret "the first strips being shifted in position along the path of the wire

belts with respect to the second strips so that the first and second strips are offset

and in a non-opposing relationship" to mean

> "*each of the first strips and the second strips lies in the region that is*
> *spaced between two of the opposite strips.*"

Voith stated that the prior art Patent 4,769,111, Exhibit L, shows "flexibly

supported battens in a twin wire former.  The battens, however, are not displaced as

set forth in applicants' invention."  Exhibit K, pages 1 and 3.  Based on the recited

requirement for the zig-zag arrangement and Voith's distinction of the same over

the prior art, Voith is limited to a literal claim meaning and cannot recapture

equivalents of the recited strip arrangement.

> **(b) First Support Means for Resiliently Supporting the First
> Drainage Strips and Second Support Means Supporting the
> Second Drainage Strips Rigidly**
>
> > **(i) The Phrase "first support means for resiliently
> > supporting the first drainage strips against the
> > respective wire belt that the strips contact"**

The structures for "resiliently supporting the first drainage strips against the

respective wire belt that the strips contact" are springs, pneumatic pressure

cushions, or a water permeable plate.  Exhibit A, Col. 4, lines 25 – 26.  One of

ordinary skill in the art would interpret "first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact" as

> *"springs, pneumatic pressure cushions, or a water permeable plate that are associated with the first drainage strips and resiliently support them against the respective wire belt."*

### (ii) The Phrase "second support means supporting the second drainage strips rigidly against the second wire belt"

The '965 Application, from which the '805 Patent is a continuation, included claims that only recited a single "means for resiliently supporting at least one of the first and second drainage strips against the respective wire belt that the strip contacts... ." Exhibit M, page 3. The USPTO rejected that broad recital because Voith only described how to make and use a machine with "<u>flexibly</u> supported strips located <u>opposite</u> <u>rigidly</u> supported strips... ." Exhibit N, page 2, underlining emphasis added. The USPTO also rejected the claims as known in the prior art German reference DE 3 183 133 ("DE 133"); or the "Tissari" or "Koski" Patents in view of DE 133. Exhibit N, pages 3 – 5. In particular, the Examiner stated:

> Tissari ... shows every feature claimed ... <u>except</u> it does not specify that at least one of the strips ... are "resiliently supported". Likewise Koski's sole Figure shows every feature of [the claims] except at least one or more of [the] deflectors ... being "resiliently mounted". However the artisan is well aware of the option and advantages of resiliently supported dewatering ribs/strips as evidenced by DE 3138133.

Exhibit N, pages 4 – 5, underlining added. Voith amended the claims by adding the following underlined text and deleting bracketed text:

> <u>first support</u> means for resiliently supporting [at least one of] the first

> [and second] drainage strips against the respective wire belt that that
> strip contacts;
>
> second support means supporting the at least one second drainage strip
> rigidly against the second wire belt.

Exhibit O, page 2, underlining and bracketing in original.  Voith also stated:

> Neither Tissari nor Koski disclose or suggest that the dewatering
> ribs/strips employed therein should have one set which is resiliently
> mounted and the other set rigidly mounted.  In view of the foregoing,
> applicants respectfully submit that claim 13 is patentable over Tissari,
> Koski and DE '133, either considered singly or in combination.

*Id.*, page 5.

The second means must be associated only with the second drainage strips.

But, the Patents-in-Suit do not disclose structures for "supporting the second

drainage strips rigidly against the second wire belt" and the limitation renders the

claim insolubly ambiguous and indefinite.  One of ordinary skill in the art would

interpret "second support means supporting the second drainage strips rigidly

against the second wire belt" as

> *"an indefinite structure for supporting the second drainage strips
> rigidly against the second wire belt."*

### (c)  First and Second Means for Collecting Water

#### (i)  The Phrase "first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips"

The first means is recited in lines 32 – 33 of the '769 Application claim 1, as

filed; the second means is recited in lines 35 – 37.  Exhibit F, pages 14 – 15.  The

USPTO rejected the '769 Application claims reciting these limitations and stated:

[I]t is unclear which strips first and second means for collecting water is meant for, all of the first and second drainage strips are implied in the current language, yet that is not clear nor supported by the specification.  It appears that --second-- should be inserted before "drainage" on line 33 and line 36 of claim 1 to be clear and consistent with the specification.

Exhibit G, page 2; the underlining was handwritten by the Examiner in the original.  In reply, Voith stated:

With respect to the rejection under 35 U.S.C. §112 concerning lines 33 and 36 of claim 1, applicants respectfully submit that the present language is clear.  Since it does not matter whether the most upstream one of the drainage strips is a first drainage strip or a second drainage strip, the interpretation given to the language by the Examiner is correct and is the intended meaning.

Exhibit H, page 9, underlining added.  Based on Voith's unambiguous affirmation of the Examiner's interpretation, the function of the first means must be interpreted as "collecting water drained from the fiber suspension by the most upstream one of the drainage strips, whether that strip is a first or second strip."

In the closest embodiment disclosed in the '805 Patent: a vacuum chamber 21 in a drainage box 18 collects water drained solely from the most upstream strip through a vertical channel 21a; the vacuum chamber 22 in the drainage box 18 collects water drained only from the other strips on the same side of the wire belts as the most upstream strip; and, drainage box 17 collects water only from the strips on the other side of the wire belts.  Exhibit A, Col. 4, lines 17 – 47.  One of ordinary skill in the art would interpret "first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips" as

"*a vacuum chamber, in a drainage box, that collects water drained by the most upstream one of the drainage strips through a vertical*

*channel."*

### (ii) The Phrase "second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips"

As stated in section (i) immediately above, Voith defined this means-plus-function limitation as collecting the water drained from the fiber suspension by all of the remaining first and second strips. However, the '805 Patent does not disclose any such structure for performing this function. See Exhibit A, Drawing Sheets. Since the Patents-in-Suit fail to describe the structures associated with this means-plus-function element, claim 1 is insolubly ambiguous and indefinite. One of ordinary skill in the art would interpret "second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips" as

> *"an indefinite structure, separate from the vacuum chamber, the drainage box and the vertical channel, for collecting the water drained from the fiber suspension by all of the remaining first and second strips."*

### 5. The Terms of the "Third Section"

As recited in claim 1, the third section does not start within the second section but, instead, it follows "the second section along the path of the wire belts through the twin wire zone." Exhibit A, Col. 8, lines 22 – 24. The specification also establishes the critical requirement that the components of the second section do not extend into the third section:

> It is important that two drainage boxes 17 and 18 with the alternately resiliently and firmly supported ledge strips 27 and 28 lie <u>not in</u> the front or <u>the rear section</u>s but in the middle section II of the twin-wire zone, <u>since only here can they develop their full effect</u>.

Exhibit A, Col. 5, lines 15 – 19, underlining emphasis added.  One of ordinary skill in the art would interpret "the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone" as

> "*a third section coming after the second section in sequence and occupying a discrete physical place along the path of the wire belts, wherein no component of the third section is located in any other section.*"

The only recited component of the third section is "a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element[.]"  The second drainage element is given a special meaning in the specification as a curved forming shoe.  Exhibit A, Col. 5, line 4.  One of ordinary skill in the art would interpret this limitation as

> "*a curved forming shoe positioned in the third section so one of the wire belts travels over the curved forming shoe.*"

### 6.    All Sections are Free of Rolls Which Deflect the Twin Wire Zone

Claim 1 recites "the twin wire zone being free of rolls which deflect the twin wire zone." As filed, the '769 Application claim 1 did not recite this limitation. Exhibit F, pages 14 -15.  The USPTO rejected claim 1 and its dependent claims 2 – 4 as anticipated or obvious over a variety of prior art references.  Exhibit G, pages 3 – 6.   However, the examiner indicated the allowability of dependent claim 5 if presented as an independent claim.   Claim 5 originally recited:  "The twin wire former of claim 1, wherein the twin wire zone is free of rolls which deflect the twin wire zone." Exhibit F, page 15.  In Reply, Voith re-wrote claim 5 to include the limitations of claim 1; Exhibit H, pages 1 – 2; and the USPTO issued a Notice of

Allowability, Exhibit P.  Voith is restricted to the literal meaning of this limitation

by its amendment and cannot recapture its equivalents.  One of ordinary skill in the

art would interpret this limitation as

> "*the entire twin wire zone must be free of any deflection rolls.*"

### 7.    Summary

Based on the foregoing, claim 1 must be construed as

A twin-wire former for the production of a paper web from a fiber
suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire
belts to travel along a path together for forming a twin wire zone of the
twin wire former, with the web between the wire belts as the wire belts
travel along the path through the twin wire zone, neither wire belt has
any a single wire predrainage;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes either a
suction roll or a curved stationary forming shoe within the twin wire
zone that results in drainage from both sides of the twin wire zone; two
breast rolls or a breast roll and a suction roll that support the belts to
form a wedge shaped entrance slot into the first section; a fiber
suspension supplying headbox having an outlet placed and directed for
delivering fiber suspension only at the place where the lower wire in
the first section of the twin wire zone travels over the stationary
curved forming shoe or suction roll and forms a wedge shaped
entrance;

the twin wire zone having a second section coming after the first
section in sequence and occupying a discrete physical place along the
path of the belts through the twin wire zone, wherein the components
of the second section are not located in any other section,

a plurality of first drainage strips that are not forming shoe strips, are
not feed or discharge edges of drainage boxes, and are positioned for
contacting the first wire belt; and a plurality of second drainage strips
that are not forming shoe strips positioned within the loop of the
second wire belt for contacting the second wire belt; each of the first

strips and the second strips lies in the region that is spaced between two of the opposite strips;

springs, pneumatic pressure cushions, or a water permeable plate that are associated with the first drainage strips and resiliently support them against the respective wire belt;

an indefinite structure for supporting the second drainage strips rigidly against the second wire belt;

a vacuum chamber, in a drainage box, that collects water drained by the most upstream one of the drainage strips through a vertical channel; and

an indefinite structure, separate from the vacuum chamber, the drainage box and the vertical channel, for collecting the water drained from the fiber suspension by all of the remaining first and second strips; and

a third section coming after the second section in sequence and occupying a discrete physical place along the path of the wire belts, wherein no component of the third section is located in any other section;

a curved forming shoe positioned in the third section so one of the wire belts travels over the curved forming shoe,

the entire twin wire zone must be free of any deflection rolls.

## B.    Independent claim 2.

Independent claims 1 and 2 have the following differences.[3]

### 1.    Free of Forming Rolls

The last limitation of claim 1 recites, "the twin wire zone being free of rolls which deflect the twin wire zone," while the last limitation of claim 2 recites, "the twin wire zone being free of any forming rolls."   Exhibit C, page 8; and Exhibit A,

---

[3] The '805 Patent claims 1 and 2 vary by three punctuation marks and one mis-spelling, which do not affect the meaning of the claim 2 with respect to claim 1.  See Exhibit C and Exhibit A, Col. 8, line 4 – Col. 9, line 31.  With respect to these changes, the interpretation of claim 1 applies to claim 2.

Col. 8, lines 50 – 51; and Col. 9, lines 30 – 31.  As filed, the '769 Application claim 1 did not recite either limitation.  Exhibit F, pages 14 -15.  The USPTO rejected claim 1 and its dependent claims 2 – 4 as anticipated or obvious over a variety of prior art references.  Exhibit G, pages 3 – 6.  The examiner did indicate that dependent claim 6 would be allowable over the cited prior art if re-written in independent form.  Claim 6 originally recited, "The twin wire former of claim 1, wherein the twin wire zone is free of any forming rolls." Exhibit F, page 15.  In Reply, Voith combined claims 1 and 6; Exhibit H, pages 2 – 4; and claim 6 issued as claim 2 of the '805 Patent.   Exhibit P, page 1. Voith is restricted to the literal meaning of this limitation by its amendment and cannot recapture its equivalents.  One of ordinary skill in the art would understand the plain language of this limitation:

> "*the entire twin wire zone must be free of forming rolls.*"

### 2.  No Suction Roll

As interpreted in section IV.A.3.a. above, the claim 1 first drainage element is "either a suction roll or a curved stationary forming shoe."  Since the suction roll is a forming roll; Exhibit A, Col. 6, lines 20 – 21; and the twin wire former of claim 2 is free of forming rolls, the claim 2 drainage element must be construed as

> "*a curved stationary forming shoe within the twin wire zone that results in drainage from both sides of the twin wire zone.*"

For the same reasons, the fiber suspension supplying headbox cannot deliver suspension to a suction roll.  Instead, the placement of the headbox must be construed as

> "*placed and directed for delivering fiber suspension only where the*

*lower wire in the first section of the twin wire zone travels over the curved stationary forming shoe and forms a wedge shaped entrance.*"

### C.    Independent claim 3.

In addition to the limitations of claim 1, claim 3 recites: 1) the plurality of first drainage strips are positioned "within the loop of the first wire belt;" 2) "the last one of the second drainage strips being located downstream of the last one of the first drainage strips;" and, 3) the "second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith." See Exhibit C; and Exhibit A, Col. 8, lines 4 – 51 and Col. 9, line 31 – Col. 10, line 10.    Claim 3 does not recite the "first means for collecting water..." or the "second means separate from the first means for colleting water..."  *Id.* One of ordinary skill in the art would interpret claims 1 and 3 identically and these linguistic changes do not alter the scope of the claim.

### D.    Independent claim 4.

In comparison to claim 1, claim 4 includes the combined changes present in independent claims 2 and 3.  See Exhibit C; and Exhibit A, Col. 8, lines 4 – 51 and Col. 10, lines 11 – 53.  One of ordinary skill in the art would interpret claim 4 as presented in sections IV.A., above, with the changes identified in sections IV.B. and IV.C., above.

### E.    Independent claim 5.

Claim 5 recites that the first section includes a "single drainage element." See Exhibit C; and Exhibit A, Col. 8, lines 4 – 51 and Col. 10, line 54 – Col. 12, line 21. Claim 5 further recites "said single first drainage element in the first section being

a single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the belts through the twin wire zone, the single forming roll being engaged by one of the wire belts for curving the path of the belts around the single forming roll after the entrance of the suspension into the entrance slot." *Id.* As presented in section IV.A.3.a., the '805 Patent defines "forming roll" as "suction roll."

Claim 5 also: 1) recites that the plurality of first drainage strips "are positioned in the loop of the first wire belt;" 2) substitutes the first and second means for collecting water with "means for supplying a vacuum in the area of the second drainage strips;" 3) recites that the "second drainage element ha[s] an open surface to enable water to be drained through the wire belt in contact therewith;" and, 4) modifies the last limitation: "the twin wire zone <u>apart from said single forming roll</u> being free of rolls which deflect the twin wire zone." *Id.*

One of ordinary skill in the art would interpret claim 5 like claim 1 but for these linguistic changes, which further limit the claim.

## V.    PROPER INTERPRETATION OF THE CLAIMS OF U.S. PATENT NO. 5,972,168

The Patents-in-Suit both issued from continuation applications of U.S. Application No. 07/773,965. Exhibit A, Col. 1, lines 1 – 11; and Exhibit B, Col. 1, lines 1 – 14. And the '168 Patent application was a continuation of the '805 Patent application. Under 35 U.S.C. §120, the specifications of the '805 Patent and the '168 Patent cannot vary but for insubstantial details of form and the '168 Patent includes the same special definitions of claim terms as the '805 Patent. In addition,

the prosecution history of the '805 Patent applies with equal effect to the '168 Patent claims. See *Biovail*, 239 F.3d at 1301.

### A.     Independent claim 3.

Independent claim 3 of the '168 Patent is presented first since it is an apparatus claim like those previously interpreted.   By comparison to the '805 Patent claim 1, with brackets indicating deleted language and underlining indicating added language, the '168 Patent independent claim 3 recites:

> A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:
>
> first and second web forming wire belts [, means for directing the wire belts to] which travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;
>
> each wire belt forming an endless loop;
>
> the twin wire zone having a first section which includes a [first drainage element] single forming roll at the start of the path of the wire belts through the twin wire zone [, means for supporting the]; supports which support the wire belts for forming a wedge shaped entrance slot into the first section[,];
>
> a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;
>
> said single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the wire belts through the twin wire zone, the single forming roll being engaged by one of the wire belts and being arranged for curving the path of both wire belts around the single forming roll after the entrance of the suspension into the entrance slot;
>
> the twin wire zone having a second section following the first section along the path of the wire belts through the twin wire zone; in the

second section, a plurality of <u>the</u> first drainage strips are positioned <u>within the loop of the first wire belt and are</u> for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; <u>a</u> first <u>strip</u> support [means for] <u>which</u> resiliently [supporting] <u>supports</u> the first drainage strips against the [respective] <u>first</u> wire belt that the <u>first</u> strips contact;

<u>a</u> second <u>strip</u> support [means supporting] <u>which supports</u> the second drainage strips rigidly against the second wire belt;

[first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and]

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; [a second] drainage [element] <u>elements</u> in the third section, for being engaged by one of the wire belts as the wire belts travel over the [second drainage element,] <u>drainage elements, the drainage elements including at least one stationary dewatering element followed by a suction roll and having an open surface to enable water to be drained through the wire belt in contact therewith; and</u>

the twin wire zone <u>apart from said single forming roll and said suction roll</u> being free of rolls which deflect the twin wire zone.

See Exhibit D; Exhibit A, Col. 8, lines 4 – 49; and Exhibit B, Col. 8, line 50 – Col. 9, line 40.

As shown above, Voith deleted the "means for directing the wire belts to travel along a path together." This makes it unclear how the first and second web forming wire belts are associated with each other or the former. This lack of a structural connection renders the claim ambiguous and invalid under 35 U.S.C.

§112, second paragraph.

Voith attempted to insert a structure for the term "means" in the following mean-plus-function limitations: 1) "means [supports]" for supporting the belts for forming a wedge shaped entrance slot; 2) "means [supports]" for resiliently supporting the first drainage strips against the respective wire belt that the strips contact; and 3) "means [supports]" supporting the second drainage strips rigidly against the second wire belt.  There is no support in the specification for the structure of "*supports* which *support* the wire belts," "a first strip *support* which resiliently *supports* the first drainage strips," or "a second strip *support* which *supports* the second drainage strips."  These limitations are in means-plus-function format and must be interpreted the same as the corresponding mean-plus-function limitations in the '805 Patent claim 1.  Since the structure corresponding to the means "which supports the second drainage strips" is not disclosed in the specification, the claim is invalid as indefinite under 35 U.S.C. §112, second paragraph.  See section IV.A.4.b.

One of ordinary skill in the art would otherwise interpret the '168 Patent claim 3 like the '805 Patent claim 1 but for the linguistic changes.  If these linguistic changes alter the '168 Patent interpretations, they further limit the scope of claim 3.

**B.    Independent claim 7.**

By comparison to claim 3, claim 7 recites a "stationary curved forming shoe" instead of "single forming roll" with respect to the first section.  See Exhibit D; and

Exhibit B, Col. 8, line 50 – Col. 4, line 36; and Col. 10, line 17 – Col. 11, line 4.  And "a stationary drainage element followed by a suction roll" instead of a "drainage element" in the third section.  *Id.*  But for these linguistic changes, one of ordinary skill in the art would interpret claim 7 like claim 3, or find that they further limit the scope of claim 7.

## C.    Independent claims 1 and 5.

Although these method claims do not recite "first section," "second section," or "third section," each recites serially "feeding the wire belts" across unique components.  See Exhibit D; and Exhibit B, Col. 8, lines 4 – 47 and Col. 9, line 39 – Col. 10, line 14.

Method claim 1 recites uniquely positioned components that correspond to the uniquely positioned components recited in apparatus claim 3.  Exhibit D; and Exhibit B, Col. 8, lines 4 – 47 and Col. 8, line 50 – Col. 4, line 36.  Method claim 1 does recite a "stationary drainage element and then ... a suction roll" where apparatus claim 3 recites "drainage elements."  *Id.*  This linguistic difference result only in a more limited scope of method claim 1.

Method claim 5 recites uniquely positioned components that correspond to the uniquely positioned components recited in apparatus claim 7.  See Exhibit D; and Exhibit B, Col. 9, line 39 – Col. 10, line 14 and Col. 10, line 17 – Col. 11, line 4.

One of ordinary skill in the art would interpret each of the method claims 1 and 5 as steps of using the apparatus recited in claims 3 and 7, respectively.  In particular, the methods required "feeding wire belts" through a discrete first section

that follows a discrete second section, which follow a discrete third section.

### D.    Dependent claims 2, 4, 6, and 8.

One of ordinary skill in the art would understand the plain and ordinary meaning of dependent claims 2, 4, 6, and 8.

## CONCLUSION

For the aforementioned reasons, JohnsonFoils asks this Court to make the following determinations as a matter of law: 1) that claims 1 – 5 of the '805 Patent are indefinite and invalid, 2) that claims 1 – 8 of the '168 Patent are indefinite and invalid and 3) to the extent that the claims can be interpreted, that claims 1 - 5 of the '805 Patent and claims 1-8 of the '168 Patent must be construed as set forth above.

Respectfully submitted,

Seitz, Van Ogtrop & Green, P.A.

Date: January 16, 2008

/s/ Patricia P. McGonigle
  George H. Seitz, III (DE #667)
  Patricia Pyles McGonigle (DE #3126)
  Kevin A. Guerke (DE#4096)
  222 Delaware Avenue, Suite 1500
  P.O. Box 68
  Wilmington, DE 19899
  (302) 888-0600

  -and-

Anthony S. Volpe
John J. O'Malley
Ryan W. O'Donnell
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400

*Attorneys for Defendant*
*JohnsonFoils, Inc.*

# EXHIBIT A

US005718805A

# United States Patent [19]

**Egelhof et al.**

[11] **Patent Number:** 5,718,805

[45] **Date of Patent:** *Feb. 17, 1998

[54] **TWIN WIRE FORMER**

[75] Inventors: **Dieter Egelhof; Klaus Henseler,** both of Heidenheim, Germany; **Werner Kade,** Neenah, Wis.; **Albrecht Meinecke,** Heidenheim, Germany; **Wilhelm Wanke,** Heidenheim, Germany; **Hans-Jurgen Wulz,** Heidenheim, Germany; **Rudolf Bück,** deceased, late of Heidenheim, Germany, by Else Bück, legal representative

[73] Assignee: **J. M. Voith GmbH,** Heidenheim, Germany

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,500,091.

[21] Appl. No.: **556,769**

[22] Filed: **Nov. 2, 1995**

## Related U.S. Application Data

[63] Continuation of Ser. No. 286,948, Aug. 8, 1994, Pat. No. 5,500,091, which is a continuation of Ser. No. 55,918, Apr. 29, 1993, Pat. No. 5,389,206, which is a continuation of Ser. No. 773,965, filed as PCT/EP90/01313, Sep. 8, 1990, abandoned.

[30]     **Foreign Application Priority Data**

Aug. 22, 1989  [DE]  Germany ..................... 39 27 597.3

[51] **Int. Cl.**[6] ............................................ **D21F 1/00**
[52] **U.S. Cl.** ................................ **162/301;** 162/300
[58] **Field of Search** ..................... 162/203, 300, 162/301, 303, 348, 352

[56]     **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,994,774 | 11/1976 | Halme et al. | 162/301 |
| 4,425,187 | 1/1984 | Armstrong et al. | 162/300 |
| 4,532,008 | 7/1985 | Creagan et al. | 162/203 |
| 4,609,435 | 9/1986 | Tissari | 162/352 |
| 4,769,111 | 9/1988 | Nevalainen et al. | 162/351 |
| 4,917,766 | 4/1990 | Koivuranta et al. | 162/301 |
| 4,925,531 | 5/1990 | Koski | 162/301 |
| 5,078,835 | 1/1992 | Schiel et al. | 162/352 |
| 5,185,064 | 2/1993 | Nyman | 162/301 |
| 5,389,206 | 2/1995 | Buck et al. | 162/301 |
| 5,500,091 | 3/1996 | Buck et al. | 162/301 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0289445 | 4/1988 | European Pat. Off. . | |
| 0296135 | 6/1988 | European Pat. Off. . | |
| 0306759 | 8/1988 | European Pat. Off. . | |
| 3138133 | 9/1981 | Germany . | |
| 3321406 | 6/1983 | Germany . | |
| 3329833 | 8/1983 | Germany . | |
| 3628282 | 8/1986 | Germany . | |
| 8806036.5 | 5/1988 | Germany . | |
| 1125906 | 10/1965 | United Kingdom . | |
| 8604368 | 7/1986 | WIPO . | |
| 9102842 | 3/1991 | WIPO | 162/301 |

### OTHER PUBLICATIONS

Tappi Press "1989 Twin–Wire Seminar", Washington Hilton, Washington, D.C., Apr. 12–14, 1989, pp. iii, 103–114.

*Primary Examiner*—Karen M. Hastings
*Attorney, Agent, or Firm*—Ostrolenk, Faber, Gerb & Soffen, LLP

[57]     **ABSTRACT**

In a twin-wire former for the production of a paper web, two wire belts (11 and 12) together form a twin-wire zone which is divided into three sections (I, II and III). In the first section (I) the two wires (11, 12) travel over a curved forming shoe (16), or a forming roll (40). They form there a wedge-shaped inlet slot (15) with which a headbox (10) is directly associated. In the second section (II), several resiliently supported strips (27) rest against the lower wire (11) and between each of said strips (27) a rigidly mounted strip (28) rests against the upper wire (12). In the third section (III) both wire belts (11, 12) pass over another curved forming shoe (23).

**5 Claims, 2 Drawing Sheets**



Fig.1



Fig.2

Fig.3





Fig.4



Fig.5

5,718,805

## 1

### TWIN WIRE FORMER

#### RELATED APPLICATIONS

This is a continuing application of, and hereby incorporates by reference the entire disclosure of, application Ser. No. 08/286,948, filed Aug. 8, 1994 now U.S. Pat. No. 5,500,091, which is a continuing application Ser. No. 08/055,918, filed Apr. 29, 1993, issued Feb. 14, 1995 as U.S. Pat. No. 5,389,206, which is a continuing application Ser. No. 07/773,965, filed as PCT/EP90/01313 Sep. 8, 1990, now abandoned.

#### BACKGROUND OF THE INVENTION

The present invention relates to a twin-wire former for the production of a fiber web, in particular a paper web, from a fiber suspension. The invention proceeds from the basis of the twin-wire former known from British Patent 1 125 906. The features indicated in the patent include a twin wire former for producing a fiber web and particularly a paper web from a fiber suspension. Two web forming wire belts, in the form of endless loops, travel together to form a twin wire zone. The web travels between and along the path of the wire belts through the twin wire zone. The twin wire zone has three sections and the elements in those three sections are described below. The patent describes features that state, in other words, that the forming of the fiber web from the pulp suspension fed from the headbox takes place exclusively between two wire belts. Thus, there is no so-called single-wire pre-drainage path. In a first section of the twin-wire zone, the two wire belts together form a wedge-shaped inlet slot; a jet of pulp slurry coming from the headbox discharges into it. The jet strikes the two wire belts at a place where they pass over a curved drainage element; in the case of the aforementioned British patent, this is a stationary, curved forming shoe. Its curved wire guide surface is formed of a plurality of strips with drainage slots between them. This forming shoe is followed (in a second section of the twin-wire zone) by a drainage strip arranged in the other wire loop and, behind the latter, by a drainage strip arranged in the first-mentioned wire loop (and formed by a first suction box). Finally, in a third section of the twin-wire zone there are a plurality of stationary drainage elements developed as flat suction boxes.

It has been attempted for decades with twin-wire formers of the known type to produce fiber webs (in particular, paper webs) of the highest possible quality with relatively high operating speeds. Due to the forming of the web between two wires, the result, in particular, is obtained that the final fiber web has substantially the same properties on both sides (little "two-sidedness"). However, it is difficult to obtain as uniform as possible a distribution of the fibers in the final fiber web. In other words, it is difficult to obtain a good "formation" since while the web is formed, there is always the danger that fibers will agglomerate and form flocculations. Therefore, it is attempted to form a jet of pulp slurry which pulp slurry is as free as possible of flocculations in the headbox (for instance, by means of a turbulence producer). It is, furthermore, endeavored so to influence the drainage of the fiber suspension during the web-forming that "reflocculation" is avoided as far as possible or that, after possible flocculation, a "deflocculation" (i.e. a breaking up of the flocculations) takes place.

It is known that a curved drainage element arranged in the first section of the twin-wire zone and, in particular, a stationary curved forming shoe developed in accordance with the aforementioned British Patent 1 125 906 counter-

## 2

acts the danger of reflocculation. This is true also of the drainage strips arranged in the British patent in the second section of the twin-wire zone. Nevertheless, the danger of reflocculation is not completely eliminated in the arrangement according to said British patent. Since the number of drainage strips there is very small, a large part of the web-forming takes place in the region of the following flat-suction boxes. They, to be sure, are of high drainage capacity so that the web-forming can be completed in the region of the last flat suction boxes (i.e. the so-called main drainage zone, in which a part of the fiber material is still in the form of a suspension, terminates in the region of the flat suction box). The flat suction boxes, however, are not able to avoid reflocculation or to break up flocculations which have already occurred.

In order to control these last-mentioned difficulties, a web-forming device known under the name of "Duoformer D" has been developed (TAPPI proceedings 1988 annual meeting, pages 75 to 80). This known web-forming device is part of a twin-wire former which has a single-wire pre-drainage zone. In the twin-wire zone there are provided, in the one wire loop, a plurality of strips which are fixed in position but adjustably supported, namely, on the bottom of a suction box which drains in upward direction. Furthermore, a plurality of resiliently supported strips are provided in the other wire loop. By this resilience of the last-mentioned strips, the following result can be obtained: For example, upon an increase of the amount of suspension entering between the two wire belts, the flexibly supported strips can move away somewhat. In this way, the danger (which is present when only firmly supported strips are used) is eliminated of a backing up taking place in the fiber suspension in front of the strips. Such a backing up could destroy the fiber layers which have been formed up to then on the two wire belts. In other words, with this known web-forming device, a drainage pressure, once established, remains constant due to the resiliently supported strips even upon a change in the amount of suspension fed or upon a change in the drainage behavior of the fiber suspension. Therefore, automatic adaptation of the web-forming device to said changed conditions occurs.

With this known web-forming device, fiber webs of relatively good formation can also be formed. With respect to this, however, the demands have increased considerably recently, so that further improvements are desirable.

#### SUMMARY OF THE INVENTION

The object of the invention is so to develop a twin-wire of the aforementioned kind that the quality of the fiber web produced is further improved, particularly with respect to its formation (cloudiness), and that the twin-wire former can easily be adapted to different operating conditions (for instance, with regard to quantity and drainage behavior of the fiber suspension).

This object is achieved by the features set forth below. In particular, there is a respective drainage strip above each of the two wire belts in the second section of the twin wire zone, and at least one of the two drainage strips is supported resiliently against the respective wire belt while the other may or may not be resiliently supported, and typically is rigidly supported against the respective wire belt. Preferably, there are at least two of the drainage strips and often more against each of the wire belts. The drainage strips against one belt are offset along the path of the wire belts with respect to the drainage strips against the other belt, providing a zig zag or staggered array, and the drainage strips against at least one of the belts are resiliently supported.

5,718,805

| 3 | 4 |

The inventors have found that a combination of known features, namely:

A. Twin-wire former without a single-wire pre-drainage zone or at least without a single-wire pre-drainage zone of any substantial length such as to cause any appreciable pre-drainage

B. Start of the drainage in the twin-wire zone at a preferably curved drainage element, for instance on a rotating forming cylinder or, even better, on a curved stationary forming shoe

C. Further drainage in the twin-wire zone between strips which are arranged along a "zig-zag" line, the strips which rest against the one wire belt being resiliently supported,

leads to an extremely high increase in the quality of the finished fiber web, so that it satisfies even the highest requirements. At the same time, the twin-wire former of the invention is insensitive to changes in the amount of suspension fed and to changes in the drainage behavior of the fiber suspension. Experiments have shown that it is possible by the invention to obtain both a high increase in quality with respect to the formation and also good values with regard to the retention of fillers and fines. In contradistinction to this, in the known double-wire formers it is constantly found that there is a strong reduction in the retention upon an improvement in the formation.

It was, furthermore, found in experiments that in the second section of the twin-wire zone the number of strips can be considerably reduced as compared with the "Duoformer D". However, this number is substantially greater than in the case of the twin-wire former known from British Patent 1 125 906. It is advantageous to increase the distance between adjacent strips as compared with the "Duoformer D". In particular, the drainage strips above each one of the wire belts are of a thickness along the path of the wire belts and the spacing between adjacent strips above each wire belt is a minimum of about three times the strip thickness.

To be sure, from German OS 31 38 133, FIG. 3, a twin-wire former is known the twin-wire zone of which is provided in a first section with a curved stationary drainage element and in a second section with strips arranged along a "zig-zag" line, which strips may also be resiliently supported and there being a relatively large distance between them. However, in that case, in front of the twin-wire zone there is a single-wire pre-drainage zone in which the forming of the web starts initially only in a lower layer of the fiber suspension fed while the upper layer remains liquid and tends very strongly to flocculation. It has been found that these flakes cannot be broken up again to the desired extent in the following twin-wire zone. Another disadvantage is that the twin-wire zone is diverted by a guide roll (14b) behind the second section. This results (due to the so-called table-roll effect) in a further drainage which is uneven over the width of the web and thus in undesired variations in the quality of the web (recognizable, for instance, by disturbing longitudinal stripes).

## BRIEF DESCRIPTION OF THE DRAWINGS

Other developments of the invention will be explained below with reference to embodiments which are shown in the drawing. Each of FIGS. 1 to 5 shows-in simplified diagrammatic form-one of the different embodiments.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The twin-wire former shown in FIG. 1 has a substantially horizontally extending twin-wire zone; this zone comprises three sections I, II and III arranged one behind the other. The endless wire belts (lower wire 11 and upper wire 12), shown only in part, travel in the direct vicinity of a headbox 10 over, in each case, a breast roll 13 and 14 respectively, so that the two wire belts together form a wedge-shaped entry slot 15 at the start of the twin-wire zone. The jet pulp discharged by the headbox 10 comes into contact with the two wire belts 11 and 12 only at the place where the lower wire 11 in the first section I of the twin-wire zone travels over a stationary curved forming shoe 16. The curved travel surface thereof is formed of several strips 16' with drainage slits present between them. The distance between the two breast rolls 13 and 14 is variable. The forming shoe 16 can be operated with or without vacuum. Additionally, although it is preferable that the forming shoe 16 be curved, a straight forming shoe may also be used in certain situations.

In the second section II of the twin-wire zone, the two wire belts 11 and 12 (with the partially still liquid fiber suspension present between them) travel between a lower drainage box 17 and an upper drainage box 18. In the lower drainage box 17 there are a row of at least two strips 27 (preferably of approximately rectangular cross section) which are pressed from below resiliently against the lower wire 11. For this purpose, the strips are supported, for instance, on springs 24 (or pneumatic pressure cushions) on a, preferably water-permeable, plate. It is obvious that the force of the springs (or of the pressure prevailing in the pressure cushions) is individually adjustable.

The upper drainage box 18 is suspended on both the front and rear ends on vertically displaceable support elements as indicated diagrammatically by double arrows. On its lower side, there is a row of at least three strips 28 of preferably parallelogram cross section which rest against the upper side of the upper wire 12 and are rigidly attached to the box 18. Above the strips 28, a front vacuum chamber 21 and a rear vacuum chamber 22 are present in the drainage box 18.

Each of the upper strips 28 scrapes off water from the wire 12. Accordingly, the amount of water scraped off decreases in the direction of flow of the wire 12 from strip to strip. The drainage water from each of the strips 28 except the drainage water scraped off by the first strip may be drained away jointly. However, it is disadvantageous to also include the drainage water from the first strip 28 since this generally would disturb the operation of the other strips. Accordingly, a vertical channel 21a is positioned in front of the first upper strip 28 to carry away or collect the water scraped off by the first strip 28.

In the region of the forming shoe 16, a part of the water of the fiber suspension is led off downward; another part penetrates due to the tension of the upper wire 12 upwards through the upper wire and is deflected by the furthest in front of the strips 28 into the front vacuum chamber 21. The water passing upward between the upper strips 28 enters into the rear vacuum chamber 22. The water penetrating between the lower strips 27 through the lower wire 11 is led off downward. Between adjacent upper drainage strips 28 there is a minimum distance X of about three times the thickness Y of the strips. The same is true of the lower resiliently supported strips 27. It is important that each of the strips 27 and 28 lies in the region of a space between two opposite strips so that a "zig-zag" arrangement (i.e. non-opposite relationship) is present. Also, as seen in FIG. 1, the first one of the strips 28 is located upstream of the first one of the strips 27. The two wires 11 and 12 preferably travel on a straight path through section II. Gentle curvature of this section of the path is, however, also possible; see FIGS. 2 and 5. Differing from FIG. 1, the resiliently supported strips

5,718,805

| 5 | 6 |

could also be arranged in the upper box 18 and the firmly supported strips in the lower box 17. In the third section III of the twin-wire zone, both wire belts 11 and 12 travel over another preferably curved forming shoe 23 which (as shown) is arranged preferably in the lower wire loop 11. Behind it, an additional strip 29 with vacuum chamber 30 can be arranged in the loop of the upper wire 12. Furthermore, flat suction boxes 31 can be present in the loop of the lower wire. There (as is shown by dash-dot lines) the upper wire 12 can be separated by means of a guide roll 19 from the lower wire 11 and from the fiber web formed. Lower wire and fiber web then travel over a wire suction roll 20. The guide roll 19 can, however, also lie further back, so that the upper wire 12 is separated from the lower wire 11 only on the wire suction roll 20.

It is important that two drainage boxes 17 and 18 with the alternately resiliently and firmly supported ledge strips 27 and 28 lie not in the front or the rear sections but in the middle section II of the twin-wire zone, since only here can they develop their full effect, namely, intensive drainage of the fiber suspension fed while retaining the fine flocculation-free fiber distribution. This is achieved in the manner that the corresponding wire belt is imparted a slight (scarcely visible) deflection on each strip so that turbulence is constantly produced in the still liquid part of the fiber pulp. For success it is, however, also decisive that previously, in section I, a known pre-drainage towards both sides has already taken place and that this also takes place with the greatest possible retention of the flocculation-free condition of the fiber suspension.

For this two-sided pre-drainage, a stationary preferably curved forming shoe is provided in the first section I of the twin-wire zone (in accordance with FIGS. 1 and 3–5) whenever it is a question of satisfying the highest quality demands with respect to the formation. This effect of the forming shoe is due to the fact that at least the one wire belt travels polygonally from strip to strip, each strip not only leading water away but also producing turbulence in the pulp which is still liquid. With such a forming shoe, it is, however, difficult at times to obtain a stable operating condition upon the starting of the paper machine. Therefore, it may be advantageous to provide a known forming roll 40 in accordance with FIG. 2 in Section I instead of the stationary forming shoe and the breast roll lying in front of it. This possibility will be utilized when, in particular, the highest productivity is demanded from the paper manufacturing machine.

In the third section III, the aforementioned strip 29 can serve either solely to lead away water upwards or, in addition, for the further production of turbulence (for further improvement in quality). The latter is possible if a part of the fiber pulp is still in liquid condition at this place.

In FIGS. 1 to 3, the distance between the two wires 11 and 12 in the twin-wire zone has been shown greatly exaggerated. By this, it is intended to make it clear that the two wires 11 and 12 converge towards each other over a relatively long path within the twin-wire zone. This makes it clear that the process of web-forming on the first forming shoe 16 (in Section I) commences relatively slowly and is completed only in Section III. In this connection, the end of the main drainage zone in which the two wires converge towards each other (and thus, the end of the web-forming process) can lie approximately in the center of the wrapping zone of the second forming shoe 23, as is indicated, merely by way of example, in FIGS. 1 to 3. The end of the wire convergence is symbolically indicated there by the point E; the solids content of the paper web has reached there approximately

the value of 8%. This point can, however, also lie, for instance, on one of the flat suction boxes 31. Behind this point, it is attempted further to increase the solids content, if possible even before the separation of the two wires. One goal is, namely, for the separation of the wires to take place with the highest possible solids content of the web so that as few fibers as possible are torn out of the web upon the separation. The nature and number of the drainage elements necessary for this within the twin-wire zone may, however, differ greatly and is dependent, among other things, on the type of paper and the raw-material components thereof, as well as on the operating speed.

The embodiments shown in FIGS. 2 and 3 differ from the others primarily by the fact that the twin-wire zone rises substantially vertically upward in the direction of travel of the wires. In this way, the removal of the water withdrawn from the fiber suspension is simplified since the water can be discharged relatively uniformly towards both sides. No vacuum chambers are required in particular in the central section II of the twin-wire zone. To be sure, the forming roll 40 of FIG. 2 is, as a rule, developed as a suction roll. The forming shoes 16, 23, particularly those arranged in the third section III, can, if necessary, be provided with a suction device.

Further elements of the twin-wire former shown in FIG. 2 are water-collection containers 41, 42 and 43, guide plates 44 associated with the fixed strips 28, and a water removal strip 45. The other elements are provided with the same reference numbers as the corresponding elements in FIG. 1. The same is true with regard to FIG. 3. One possible modification of FIG. 3 can consist therein that, instead of the wire suction roll 20, a forming roll is provided, and instead of the guide roll 19 the wire suction roll. A similar arrangement is known from German Utility Model 88 06 036 (Voith File: P 4539). Aside from this exception and aside from the embodiment according to FIG. 2 (with forming roll 40), the invention will, however, be used whenever possible-so to design the twin-wire former that the relatively expensive forming roll (as to purchase and operation) can be dispensed with. Thus, as a rule, the wire suction roll 20 is present as the sole suction roll. Furthermore, in all embodiments of the invention it can be seen to it that no guide roll which deflects the twin-wire zone (and has the above-mentioned injurious table-roll effect) is present.

The embodiment of FIG. 4 differs from FIG. 1 among other things by the fact that, in the first section I of the twin-wire zone, a second curved stationary forming shoe 16a is arranged in the loop of the lower wire 11 behind and spaced from a first curved stationary forming shoe 16. Furthermore, in the loop of the upper wire 12 in the region between the two stationary forming shoes 16 and 16a there is provided an individual strip 50 which in known manner is part of a vacuum chamber 51. This vacuum chamber 51, similar to the upper drainage box 18 of FIG. 1, is suspended on its front and rear ends in vertically displaceable mounts. In this way, both the depth of penetration of the strip 50 into the path of travel of the upper wire 12 as well as the angle of attack of the strip 50 can be varied. With slight depth of penetration, the strip 50 serves solely for removal of water, while with greater depth of penetration it serves, in addition, for the production of turbulence in the suspension and, thus, for improvement of the formation. By the presence of two separate forming shoes 16 and 16a, the pre-drainage on both sides is temporarily interrupted; it is only continued after the strip 50 has removed from the upper wire 12 the water which has penetrated upward on the first forming shoe 16. In this way, higher operating speeds are possible.

5,718,805

| 7 | 8 |

Another difference from FIG. 1 is that, in the second section II of the twin-wire zone, the lower, flexibly supported strips 57 and the upper, firmly supported strips 58 are developed as individual strips. This means that each strip has its own supporting body 55/56. The lower strip-supporting bodies 55 are swingably mounted, the strip 57 being pressed resiliently by the force of springs 54 against the bottom of the lower wire 11. The supporting body 56 of each of the upper strips 58 is developed as vacuum chamber in the same way as that of the strip 50. The suspension of these vacuum chambers 56 corresponds to that of the vacuum chamber 51. It is important that each of the strips 57 and 58 rest with a given force of application (corresponding to the suspension pressure) against its wire belt 11 or 12. The strips 57 and 58 are adjusted in such a manner that a slight deflection of the wire belts takes place preferably on each strip. Due to the resilient supporting of the lower strips 57, the adjustment, once effected, is insensitive to changes in the quantity or quality of pulp, so that no backing up takes place in front of the strips and, nevertheless, an effective introduction of turbulence forces into the fiber suspension takes place. In contradistinction to FIGS. 1 to 3, there is the possibility of adjusting each 'one of the strips 57/58 individually with respect to position in height and inclination relative to the travel path of the wire. In this way, one can even better control the quality of the paper produced, with respect to both the formation and the nature of its surface (printability). Differing from FIG. 4, the upper strips 58 could be supported resiliently and the lower strips 57 stationary. Another alternative could consist therein that not only the upper strips 58 but also the lower strips 57 are fastened in vertically displaceable mounts (as shown on the vacuum chamber 51). In such case, the springs 54 might possibly be eliminated.

Another difference between FIGS. 1 and 4 resides in the fact that in FIG. 4 the twin-wire zone rises in the direction of travel of the wires upwards with an inclination of, on the average, about 20° with respect to the horizontal. In this way, it is possible to keep the entire height of the twin-wire former relatively slight. In the third section III of the twin-wire zone, a flat forming shoe 23' is provided rather than a curved one, differing from FIG. 1. The separation of the upper wire 12 from the lower wire and the fiber web formed can take place, as in FIG. 1, on one of the flat suction boxes 31. Instead of this, however, the upper wire 12 can also be conducted up to the wire suction roll 20. There, as shown, it can wrap around a small part (or, alternatively, a larger part) of the circumference of the wire suction roll and then be returned via the reversing roll 19.

In the embodiment shown in FIG. 5, the twin-wire zone, as a whole, extends substantially in horizontal direction. The individual elements are substantially the same as in the embodiment of FIG. 4. However, there is the difference that the drainage strips 57 and 58 lying in the second section II of the twin-wire zone are arranged along a downwardly curved path of the twin-wire zone. Accordingly, an upwardly curved forming shoe 16, 23 is provided in the first section I and in the third section III of the twin-wire zone. This embodiment is advisable, in particular, for the modernizing of existing Fourdrinier paper machines.

The embodiments shown have the feature in common that, in the second section II of the twin-wire zone, there are present preferably n flexibly supported strips 27/57 and n+1 rigidly supported strips. However, it is also possible to make the number of flexibly supported strips equal to or greater by one than the number of rigidly supported strips. Instead of a rigidly supported strip, a feed or discharge edge of a drainage box can also be provided. The minimum number n

of flexibly supported strips is two (see FIG. 4). However, three or four flexibly supported strips are preferred.

What is claimed is:

1. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element, the twin wire zone being free of rolls which deflect the twin wire zone.

2. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber sus-

5,718,805

pension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective ware belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element, the twin wire zone being free of any forming rolls.

3. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relation- ship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact, the last one of the second drainage strips being located downstream of the last one of the first drainage strips;

second support means supporting the second drainage strips rigidly against the second wire belt;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element, the second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith; and

the twin wire zone being free of rolls which deflect the twin wire zone.

4. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber sus- pension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relation- ship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact, the last one of the second drainage strips being located downstream of the last one of the first drainage strips;

second support means supporting the second drainage strips rigidly against the second wire belt;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element; and

the twin wire zone being free of any forming rolls.

5. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a single first drainage element at the start of the path

5,718,805

11

through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone; said single first drainage element in the first section being a single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the belts through the twin wire zone, the single forming roll being engaged by one of the wire belts for curving the path of the belts around the single forming roll after the entrance of the suspension into the entrance slot;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts

12

with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt; and

means for supplying a vacuum in the area of the second drainage strips;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section, for being engaged by one of the wire belts as the wire belts travel over the second drainage element, the second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith; and

the twin wire zone apart from said single forming roll being free of rolls which deflect the twin wire zone.

\* \* \* \* \*

# EXHIBIT B

# United States Patent [19]

**Egelhof et al.**

[11] **Patent Number:** 5,972,168

[45] **Date of Patent:** Oct. 26, 1999

[54] **TWIN WIRE FORMER**

[75] Inventors: **Dieter Egelhof; Klaus Henseler,** both of Heidenheim, Germany; **Werner Kade,** Neenah, Wis.; **Albrecht Meinecke,** Heidenheim, Germany; **Wilhelm Wanke,** Heidenheim, Germany; **Hans-Jurgen Wulz,** Heidenheim, Germany; **Rudolf Bück,** deceased, late of Heidenheim, Germany, by Elsie Bück, legal representative

[73] Assignee: **Voith Sulzer Papiertechnik Patent GmbH,** Germany

[21] Appl. No.: **09/161,138**

[22] Filed: **Sep. 25, 1998**

### Related U.S. Application Data

[62] Continuation of application No. 09/023,435, Feb. 13, 1998, which is a continuation of application No. 08/556,769, Nov. 2, 1995, Pat. No. 5,718,805, which is a continuation of application No. 08/286,948, Aug. 8, 1994, Pat. No. 5,500, 091, which is a continuation of application No. 08/055,918, Apr. 29, 1993, Pat. No. 5,389,206, which is a continuation of application No. 07/773,965, abandoned, filed as application No. PCT/EP90/01313, Sep. 8, 1990.

[51] Int. Cl.$^6$ ...................................................... D21F 1/00

[52] U.S. Cl. ................................................ 162/203; 162/301

[58] Field of Search ................................... 162/203, 300, 162/301, 303, 348, 352

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,056,719 | 10/1962 | Webster | 162/203 |
| 3,582,467 | 6/1971 | Gustafson et al. | 162/303 |
| 3,726,758 | 4/1973 | Parker et al. | 162/273 |
| 3,772,145 | 11/1973 | Notbohm | 162/273 |
| 3,994,774 | 11/1976 | Halme et al. | 162/301 |
| 4,609,435 | 9/1986 | Tissari | 162/301 |
| 4,769,111 | 9/1988 | Nevalainen et al. | 162/351 |
| 4,917,766 | 4/1990 | Koivuranta et al. | 162/301 |
| 4,925,531 | 5/1990 | Koski | 162/301 |
| 4,999,087 | 3/1991 | Ebihara et al. | 162/301 |
| 5,389,206 | 2/1995 | Buck et al. | 162/301 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 3138133 | 9/1981 | Germany . |
| 3321406 | 6/1983 | Germany . |

*Primary Examiner*—Karen M. Hastings
*Attorney, Agent, or Firm*—Ostrolenk, Faber, Gerb & Soffen, LLP

[57] **ABSTRACT**

In a twin-wire former for the production of a paper web, two wire belts (11 and 12) together form a twin-wire zone which is divided into three sections (I, II and III). In the first section (I) the two wires (11, 12) travel over a curved forming shoe (16). They form there a wedge-shaped inlet slot (15) with which a headbox (10) is directly associated. In the second section (II), several resiliently supported strips (27) rest against the lower wire (11) and between each of said strips (27) a rigidly mounted strip (28) rests against the upper wire (12). In the third section (III) both wire belts (11, 12) pass over another curved forming shoe (23).

**8 Claims, 2 Drawing Sheets**





Fig.1



Fig.2

Fig.3



_Fig.4_



_Fig.5_

1

## TWIN WIRE FORMER

### RELATED APPLICATIONS

This is a continuing application of, and hereby incorporates by reference the entire disclosure of, application Ser. No. 09/023,435, filed Feb. 13, 1998, allowed, which is a continuing application of Ser. No. 08/556,769, filed Nov. 2, 1995, now Pat. No. 5,718,805, which is a continuing application of Ser. No. 08/286,948, filed Aug. 8, 1994, now Pat. No. 5,500,091, which is a continuing application of Ser. No. 08/055,918, filed Apr. 29, 1993, now Pat. No. 5,389,206, which is a continuing application of Ser. No. 07/773,965, filed Nov. 12, 1991, now abandoned, filed as PCT/EP90/01313 on Sept. 8, 1990, now abandoned.

### BACKGROUND OF THE INVENTION

The present invention relates to a twin-wire former for the production of a fiber web, in particular a paper web, from a fiber suspension. The invention proceeds from the basis of the twin-wire former known from British Patent 1 125 906. The features indicated in the patent include a twin wire former for producing a fiber web and particularly a paper web from a fiber suspension. Two web forming wire belts, in the form of endless loops, travel together to form a twin wire zone. The web travels between and along the path of the wire belts through the twin wire zone. The twin wire zone has three sections and the elements in those three sections are described below. The patent describes features that state, in other words, that the forming of the fiber web from the pulp suspension feed from the headbox takes place exclusively between two wire belts. Thus, there is no so-called single-wire pre-drainage part. In a first section of the twin-wire zone, the two wire belts together form a wedge-shaped inlet slot; a jet of pulp slurry coming from the headbox discharges into-it. The jet strikes the two wire belts at a place where they pass over a curved drainage element; in the case of the aforementioned British patent, this is a stationary, curved forming shoe. Its curved wire guide surface is formed of a plurality of strips with drainage slots between them. This forming shoe is followed (in a second section of the twin-wire zone) by a drainage strip arranged in the other wire loop and, behind the latter, by a drainage strip arranged in the first-mentioned wire loop (and formed by a first suction box). Finally, in a third section of the twin-wire zone there are a plurality of stationary drainage elements developed as flat suction boxes.

It has been attempted for decades with twin-wire farmers of the known type to produce fiber webs (in particular, paper webs) of the highest possible quality with relatively high operating speeds. Due to the forming of the web between two wires, the result, in particular, is obtained that the final fiber web has substantially the same properties on both sides (little "two-sidedness"). However, it is difficult to obtain as uniform as possible a distribution of the fibers in the final fiber web. In other words, it is difficult to obtain a good "formation" since while the web is formed, there is always the danger that fibers will agglomerate and form flocculations. Therefore, it is attempted to form a jet of pulp slurry which pulp slurry is as free as possible of flocculations in the headbox (for instance, by means of a turbulence producer). It is, furthermore, endeavored so to influence the drainage of the fiber suspension during the web-forming that "reflocculation" is avoided as far as possible or that, after possible flocculation, a "deflocculation" (i.e. a breaking up of the flocculations) takes place.

It is known that a curved drainage element arranged in the first section of the twin-wire zone and, in particular, a

2

stationary curved forming shoe developed in accordance with the aforementioned British Patent 1 125 906 counteracts the danger of reflocculation. This is true also of the drainage strips arranged in the British Patent in the second section of the twin-wire zone. Nevertheless, the danger of reflocculation is not completely eliminated in the arrangement according to said British Patent. Since the number of drainage strips there is very small, a large part of the web-forming takes place in the region of the following flat-suction boxes. They, to be sure, are of high drainage capacity so that the web-forming can be completed in the region of the last flat suction boxes (i.e. the so-called main drainage zone, in which a part of the fiber material is still in the form of a suspension, terminates in the region of the flat suction box). The flat suction boxes, however, are not able to avoid reflocculation or to break up flocculations which have already occurred.

In order to control these last-mentioned difficulties, a web-forming device known under the name of "Duoformer D" has been developed (TAPPI Proceedings 1988 annual meeting, pages 75 to 80). This known web-forming device is part of a twin-wire former which has a single-wire pre-drainage zone. In the twin-wire zone there are provided, in the one wire loop, a plurality of strips which are fixed in position but adjustably supported, namely, on the bottom of a suction box which drains in upward direction. Furthermore, a plurality of resiliently supported strips are provided in the other wire loop. By this resilience of the last-mentioned strips, the following result can be obtained: For example, upon an increase of the amount of suspension entering between the two wire belts, the flexibly supported strips can move away somewhat. In this way, the danger (which is present when only firmly supported strips are used) is eliminated of a backing up taking place in the fiber suspension in front of the strips. Such a backing up could destroy the fiber layers which have been formed up to then on the two wire belts. In other words, with this known web-forming device, a drainage pressure, once established, remains constant due to the resiliently supported strips even upon a change in the amount of suspension fed or upon a change in the drainage behavior of the fiber suspension. Therefore, automatic adaptation of the web-forming device to said changed conditions occurs.

With this known web-forming device, fiber webs of relatively good formation can also be formed. With respect to this, however, the demands have increased considerably recently, so that further improvements are desirable.

### SUMMARY OF THE INVENTION

The object of the invention is so to develop a twin-wire of the aforementioned kind that the quality of the fiber web produced is further improved, particularly with respect to its formation (cloudiness), and that the twin-wire former can easily be adapted to different operating conditions (for instance, with regard to quantity and drainage behavior of the fiber suspension).

This object is achieved by the features set forth below in particular, there is a respective drainage strip above each of the two wire belts in the second section of the twin wire zone, and at least one of the two drainage strips is supported resiliently against the respective wire belt while the other may or may not be resiliently supported, and typically is rigidly supported against the respective wire belt. Preferably, there are at least two of the drainage strips and often more against each of the wire belts. The drainage strips against one belt are offset along the path of the wire belts with

5,972,168

| 3 | 4 |

respect to the drainage strips against the other belt, providing a zig zag or staggered array, and the drainage strips against at least one of the belts are resiliently supported.

The inventors have found that a combination of known features, namely:

A. Twin-wire former without a single-wire pre-drainage zone or at least without a single-wire pre-drainage zone of any substantial length such as to cause any appreciable pre-drainage

B. Start of the drainage in the twin-wire zone at a preferably curved drainage element, for instance on a rotating forming cylinder or, even better, on a curved stationary forming shoe

C. Further drainage in the twin-wire zone between strips which are arranged along a "zig-zag" line, the strips which rest against the one wire belt being resiliently supported, leads to an extremely high increase in the quality of the finished fiber web, so that it satisfies even the highest requirements. At the same time, the twin-wire former of the invention is insensitive to changes in the amount of suspension fed and to changes in the drainage behavior of the fiber suspension. Experiments have shown that it is possible by the invention to obtain both a high increase in quality with respect to the formation and also good values with regard to the retention of fillers and fines. In contradistinction to this, in the known double-wire formers it is constantly found that there is a strong reduction in the retention upon an improvement in the formation.

It was, furthermore, found in experiments that in the second section of the twin-wire zone the number of strips can be considerably reduced as compared with the "Duoformer D". However, this number is substantially greater than in the case of the twin-wire former known from British Patent 1 125 906. It is advantageous to increase the distance between adjacent strips as compared with the "Duoformer D". In particular, the drainage strips above each one of the wire belts are of a thickness along the path of the wire belts and the spacing between adjacent strips above each wire belt is a minimum of about three times the strip thickness.

To be sure, from German OS 31 38 133, FIG. 3, a twin-wire former is known the twin-wire zone of which is provided in a first section with a curved stationary drainage element and in a second section with strips arranged along a "zig-zag" line, which strips may also be resiliently supported and there being a relatively large distance between them. However, in that case, in front of the twin-wire zone there is a single-wire pre-drainage zone in which the forming of the web starts initially only in a lower layer of the fiber suspension fed while the upper layer remains liquid and tends very strongly to flocculation. It has been found that these flakes cannot be broken up again to the desired extent in the following twin-wire zone. Another disadvantage is that the twin-wire zone is diverted by a guide roll (14b) behind the second section. This results (due to the so-called table-roll effect) in a further drainage which is uneven over the width of the web and thus in undesired variations in the quality of the web (recognizable, for instance, by disturbing longitudinal stripes).

### BRIEF DESCRIPTION OF THE DRAWINGS

Other developments of the invention will be explained below with reference to embodiments which are shown in the drawing. Each of FIGS. 1 to 5 shows-in simplified diagrammatic form-one of the different embodiments.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The twin-wire former shown in FIG. 1 has a substantially horizontally extending twin-wire zone; this zone comprises

three sections I, II and III arranged one behind the other. The endless wire belts (lower wire 11 and upper wire 12), shown only in part, travel in the direct vicinity of a headbox 10 over, in each case, a breast roll 13 and 14 respectively, so that the two wire belts together form a wedge-shaped entry slot 15 at the start of the twin-wire zone. The jet pulp discharged by the headbox 10 comes into contact with the two wire belts 11 and 12 only at the place where the lower wire 11 in the first section I of the twin-wire zone travels over a stationary curved forming shoe 16. The curved travel surface thereof is formed of several strips 16' with drainage slits present between them. The distance between the two breast rolls 13 and 14 is variable. The forming shoe 16 can be operated with or without vacuum. Additionally, although it is preferable that the forming shoe 16 be curved, a straight forming shoe may also be used in certain situations.

In the second section II of the twin-wire zone, the two wire belts 11 and 12 (with the partially still liquid fiber suspension present between them) travel between a lower drainage box 17 and an upper drainage box 18. In the lower drainage box 17 there are a row of at least two strips 27 (preferably of approximately rectangular cross section) which are pressed from below resiliently against the lower wire 11. For this purpose, they are supported, for instance, on springs 24 (or pneumatic pressure cushions) on a, preferably water-permeable, plate. It is obvious that the force of the springs (or of the pressure prevailing in the pressure cushions) is individually adjustable.

The upper drainage box 18 is suspended on both the front and rear ends on vertically displaceable support elements as indicated diagrammatically by double arrows. On its lower side, there is a row of at least three strips 28 of preferably parallelogram cross section which rest against the upper side of the upper wire 12 and are rigidly attached to the box 18. Above the strips 28, a front vacuum chamber 21 and a rear vacuum chamber 22 are present in the drainage box 18.

Each of the upper strips 28 scrapes off water from the wire 12. Accordingly, the amount of water scraped off decreases in the direction of flow of the wire 12 from strip to strip. The drainage water from each of the strips 28 except the drainage water scraped off by the first strip may be drained away jointly. However, it is disadvantageous to also include the drainage water from the first strip 28 since this generally would disturb the operation of the other strips. Accordingly, a vertical channel 21a is positioned in front of the first upper strip 28 to carry away or collect the water scraped off by the first strip 28.

In the region of the forming shoe 16, a part of the water of the fiber suspension is led off downward; another part penetrates due to the tension of the upper wire 12-upwards through the upper wire and is deflected by the furthest in front of the strips 28 into the front vacuum chamber 21. The water passing upward between the upper strips 28 enters into the rear vacuum chamber 22. The water penetrating between the lower strips 27 through the lower wire 11 is led off downward. Between adjacent upper drainage strips 28 there is a minimum distance X of about three times the thickness Y of the strips. The same is true of the lower resiliently supported strips 27. It is important that each of the strips 27 and 28 lies in the region of a space between two opposite strips so that a "zig-zag" arrangement (i.e. non-opposing relationship) is present. Also, as seen in FIG. 1, the first one of the strips 28 is located upstream of the first one of the strips 27. The two wires 11 and 12 preferably travel on a straight path through section II. Gentle curvature of this section of the path is, however, also possible; see FIGS. 2 and 5. Differing from FIG. 1, the resiliently supported strips

5,972,168

| 5 | 6 |

could also be arranged in the upper box 18 and the firmly supported strips in the lower box 17. In the third section III of the twin-wire zone, both wire belts 11 and 12 travel over another preferably curved forming shoe 23 which (as shown) is arranged preferably in the lower wire loop 11. Behind it, an additional strip 29 with vacuum chamber 30 can be arranged in the loop of the upper wire 12. Furthermore, flat suction boxes 31 can be present in the loop of the lower wire. There (as is shown by dash-dot lines) the upper wire 12 can be separated by means of a guide roll 19 from the lower wire 11 and from the fiber web formed. Lower wire and fiber web then travel over a wire suction roll 20. The guide roll 19 can, however, also lie further back, so that the upper wire 12 is separated from the lower wire 11 only on the wire suction roll 20.

It is important that two drainage boxes 17 and 18 with the alternately resiliently and firmly supported ledge strips 27 and 28 lie not in the front or the rear sections but in the middle section II of the twin-wire zone, since only here can they develop their full effect, namely, intensive drainage of the fiber suspension fed while retaining the fine flocculation-free fiber distribution. This is achieved in the manner that the corresponding wire belt is imparted a slight (scarcely visible) deflection on each strip so that turbulence is constantly produced in the still liquid part of the fiber pulp. For success it is, however, also decisive that previously, in section I, a known pre-drainage towards both sides has already taken place and that this also takes place with the greatest possible retention of the flocculation-free condition of the fiber suspension.

For this two-sided pre-drainage, a stationary preferably curved forming shoe is provided in the first section I of the twin-wire zone (in accordance with FIGS. 1 and 3–5) whenever it is a question of satisfying the highest quality demands with respect to the formation. This effect of the forming shoe is due to the fact that at least the one wire belt travels polygonally from strip to strip, each strip not only leading water away but also producing turbulence in the pulp which is still liquid. With such a forming shoe, it is, however, difficult at times to obtain a stable operating condition upon the starting of the paper machine. Therefore, it may be advantageous to provide a known forming roll 40 in accordance with FIG. 2 in Section I instead of the stationary forming shoe and the breast roll lying in front of it. This possibility will be utilized when, in particular, the highest productivity is demanded from the paper manufacturing machine.

In the third section III, the aforementioned strip 29 can serve either solely to lead away water upwards or, in addition, for the further production of turbulence (for further improvement in quality). The latter is possible if a part of the fiber pulp is still in liquid condition at this place.

In FIGS. 1 to 3, the distance between the two wires 11 and 12 in the twin-wire zone has been shown greatly exaggerated. By this, it is intended to make it clear that the two wires 11 and 12 converge towards each other over a relatively long path within the twin-wire zone. This makes it clear that the process of web-forming on the first forming shoe 16 (in Section I) commences relatively slowly and is completed only in Section III. In this connection, the end of the main drainage zone in which the two wires converge towards each other (and thus, the end of the web-forming process) can lie approximately in the center of the wrapping zone of the second forming shoe 23, as is indicated, merely by way of example, in FIGS. 1 to 3. The end of the wire convergence is symbolically indicated there by the point E; the solids content of the paper web has reached there approximately

the value of 8%. This point can, however, also lie, for example, on one of the flat suction boxes 31. Behind this point, it is attempted further to increase the solids content, if possible even before the separation of the two wires. One goal is, namely, for the separation of the wires to take place with the highest possible solids content of the web so that as few fibers as possible are torn out of the web upon the separation. The nature and number of the drainage elements necessary for this within the twin-wire zone may, however, differ greatly and is dependent, among other things, on the type of paper and the raw-material components thereof, as well as on the operating speed.

The embodiments shown in FIGS. 2 and 3 differ from the others primarily by the fact that the twin-wire zone rises substantially vertically upward in the direction of travel of the wires. In this way, the removal of the water withdrawn from the fiber suspension is simplified since the water can be discharged relatively uniformly towards both sides. No vacuum chambers are required in particular in the central section II of the twin-wire zone. To be sure, the forming roll 40 of FIG. 2 is, as a rule, developed as a suction roll. The forming shoes 16, 23, particularly those arranged in the third section III, can, if necessary, be provided with a suction device.

Further elements of the twin-wire former shown in FIG. 2 are water-collection containers 41, 42 and 43, guide plates 44 associated with the fixed strips 28, and a water removal strip 45. The other elements are provided with the same reference numbers as the corresponding elements in FIG. 1. The same is true with regard to FIG. 3. One possible modification of FIG. 3 can consist therein that, instead of the wire suction roll 20, a forming roll is provided, and instead of the guide roll 19 the wire suction roll. A similar arrangement is known from German Utility Model 88 06 036 (Voith File: P 4539). Aside from this exception and aside from the embodiment according to FIG. 2 (with forming roll 40), the invention will, however, be used whenever possible-so to design the twin-wire former that the relatively expensive forming roll (as to purchase and operation) can be dispensed with. Thus, as a rule, the wire suction roll 20 is present as the sole suction roll. Furthermore, in all embodiments of the invention it can be seen to it that no guide roll which deflects the twin-wire zone (and has the above-mentioned injurious table-roll effect) is present.

The embodiment of FIG. 4 differs from FIG. 1 among other things by the fact that, in the first section I of the twin-wire zone, a second curved stationary forming shoe 16a is arranged in the loop of the lower wire 11 behind and spaced from a first curved stationary forming shoe 16. Furthermore, in the loop of the upper wire 12 in the region between the two stationary forming shoes 16 and 16a there is provided an individual strip 50 which in known manner is part of a vacuum chamber 51. This vacuum chamber 51, similar to the upper drainage box 18 of FIG. 1, is suspended on its front and rear ends in vertically displaceable mounts. In this way, both the depth of penetration of the strip 50 into the path of travel of the upper wire 12 as well as the angle of attack of the strip 50 can be varied. With slight depth of penetration, the strip 50 serves solely for removal of water, while with greater depth of penetration it serves, in addition, for the production of turbulence in the suspension and, thus, for improvement of the formation. By the presence of two separate forming shoes 16 and 16a, the pre-drainage on both sides is temporarily interrupted; it is only continued after the strip 50 has removed from the upper wire 12 the water which has penetrated upward on the first forming shoe 16. In this way, higher operating speeds are possible.

5,972,168

7

Another difference from FIG. 1 is that, in the second section II of the twin-wire zone, the lower, flexibly supported strips 57 and the upper, firmly supported strips 58 are developed as individual strips. This means that each strip has its own supporting body 55/56. The lower strip-supporting bodies 55 are swingably mounted, the strip 57 being pressed resiliently by the force of springs 54 against support bottom of the lower wire 11. The supporting body 56 of each of the upper strips 58 is developed as vacuum chamber in the same way as that of the strip 50. The suspension of these vacuum chambers 56 corresponds to that of the vacuum chamber 51. It is important that each of the strips 57 and 58 rest with a given force of application (corresponding to the suspension pressure) against its wire belt 11 or 12. The strips 57 and 58 are adjusted in such a manner that a slight deflection of the wire belts takes place preferably on each strip. Due to the resilient supporting of the lower strips 57, the adjustment, once effected, is insensitive to changes in the quantity or quality of pulp, so that no backing up takes place in front of the strips and, nevertheless, an effective introduction of turbulence forces into the fiber suspension takes place. In contradistinction to FIGS. 1 to 3, there is the possibility of adjusting each one of the strips 57/58 individually with respect to position in height and inclination relative to the travel path of the wire. In this way, one can even better control the quality of the paper produced, with respect to both the formation and the nature of its surface (printability). Differing from FIG. 4, the upper strips 58 could be supported resiliently and the lower strips 57 stationary. Another alternative could consist therein that not only the upper strips 58 but also the lower strips 57 are fastened in vertically displaceable mounts (as shown on the vacuum chamber 51). In such case, the springs 54 might possibly be eliminated.

Another difference between FIGS. 1 and 4 resides in the fact that in FIG. 4 the twin-wire zone rises in the direction of travel of the wires upwards with an inclination of, on the average, about 20° with respect to the horizontal. In this way, it is possible to keep the entire height of the twin-wire former relatively slight. In the third section III of the twin-wire zone, a flat forming shoe 23' is provided rather than a curved one, differing from FIG. 1. The separation of the upper wire 12 from the lower wire and the fiber web formed can take place, as in FIG. 1, on one of the flat suction boxes 31. Instead of this, however, the upper wire 12 can also be conducted up to the wire suction roll 20. There, as shown, it can wrap around a small part (or, alternatively, a larger part) of the circumference of the wire suction roll and then be returned via the reversing roll 19.

In the embodiment shown in FIG. 5, the twin-wire zone, as a whole, extends substantially in horizontal direction. The individual elements are substantially the same as in the embodiment of FIG. 4. However, there is the difference that the drainage strips 57 and 58 lying in the second section II of the twin-wire zone are arranged along a downwardly curved path of the twin-wire zone. Accordingly, an upwardly curved forming shoe 16, 23 is provided in the first section I and in the third section III of the twin-wire zone. This embodiment is advisable, in particular, for the modernizing of existing Fourdrinier paper machines.

The embodiments shown have the feature in common that, in the second section II of the twin-wire zone, there are present preferably n flexibly supported strips 27/57 and n+1 rigidly supported strips. However, it is also possible to make the number of flexibly supported strips equal to or greater by one than the number of rigidly supported strips. Instead of a rigidly supported strip, a feed or discharge edge of a drainage box can also be provided. The minimum number n

8

of flexibly supported strips is two (see FIG. 4). However, three or four flexibly supported strips are preferred.

What is claimed is:

1. A method for the production of a paper web from a fiber suspension in a twin wire former comprising:

    causing first and second web forming wire belts to travel along a path together to form a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, each wire belt forming an endless loop;

    feeding the wire belts across a single forming roll at the start of the path through the twin wire zone;

    supporting the wire belts such as to form a wedge shaped entrance slot into the twin wire zone;

    supplying a fiber suspension from a headbox directly to the wedge shaped entrance slot of the twin wire zone;

    draining water from the fiber suspension by means of the forming roll in order to start the forming of the web from the fiber suspension;

    feeding the wire belts with the fiber suspension and the web being generated therebetween downstream of the forming roll between a plurality of first drainage strips, which are positioned within the loop of the first wire belt for contacting the first wire belt, and a plurality of second drainage strips, which are positioned within the loop of the second wire belt for contacting the second wire belt, the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship;

    resiliently supporting the first drainage strips against the first wire belt that the strips contact;

    rigidly supporting the second drainage strips against the second wire belt;

    feeding the wire belts with the web therebetween downstream of said drainage strips across a stationary drainage element and then across a suction roll in the twin wire zone such that as the wire belts travel over the stationary drainage element and over said suction roll, water is drained through the wire belt in contact with said stationary drainage element and with said suction roll; and

    maintaining the twin wire zone apart from said single forming roll and said suction roll free of rolls which would deflect the twin wire zone.

2. The method of claim 1, further comprising supplying a vacuum in the area of the second drainage strips.

3. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

    first and second web forming wire belts which travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

    each wire belt forming an endless loop;

    the twin wire zone having a first section which includes a single forming roll at the start of the path of the wire belts through the twin wire zone; supports which support the wire belts for forming a wedge shaped entrance slot into the first section;

    a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

5,972,168

**9**

said single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the wire belts through the twin wire zone, the single forming roll being engaged by one of the wire belts and being arranged for curving the path of both wire belts around the single forming roll after the entrance of the suspension into the entrance slot;

the twin wire zone having a second section following the first section along the path of the wire belts through the twin wire zone; in the second section, a plurality of the first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; a first strip support which resiliently supports the first drainage strips against the first wire belt that the first strips contact;

a second strip support which supports the second drainage strips rigidly against the second wire belt;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; drainage elements in the third section, for being engaged by one of the wire belts as the wire belts travel over the drainage elements, the drainage elements including at least one stationary dewatering element followed by a suction roll and having an open surface to enable water to be drained through the wire belt in contact therewith; and

the twin wire zone apart from said single forming roll and said suction roll being free of rolls which deflect the twin wire zone.

4. The twin-wire former of claim 3, further comprising a supplier of vacuum in the area of the second drainage strips.

5. A method for the production of a paper web from a fiber suspension in a twin wire former comprising:

causing first and second web forming wire belts to travel along a path together to form a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, each wire belt forming an endless loop;

feeding the wire belts across a stationary curved forming shoe at the start of the path through the twin wire zone;

supporting the wire belts such as to form a wedge shaped entrance slot into the twin wire zone;

supplying a fiber suspension from the head box directly to the wedge shaped entrance slot of the twin wire zone;

draining water from the fiber suspension by means of the forming shoe in order to start the forming of the web from the fiber suspension;

feeding the wire belts with the fiber suspension and the web being generated therebetween downstream of the forming shoe between a plurality of first drainage strips, which are positioned within the loop of the first wire belt for contacting the first wire belt, and a plurality or second drainage strips, which are positioned within the loop of the second wire belt for contacting the second wire belt, the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship;

**10**

resiliently supporting the first drainage strips against the first wire belt that the strips contact;

rigidly supporting the second drainage strips against the second wire belt;

feeding the wire belts with the web therebetween downstream of said drainage strips across a stationary drainage element and then across a suction roll in the twin wire zone such that as the wire belts travel over the stationary drainage element and the suction roll, water is drained through the wire belt in contact with said stationary drainage element and the suction roll; and

maintaining the twin wire zone apart from said suction roll free of rolls which would deflect the twin wire zone.

6. The method of claim 5, further comprising supplying a vacuum in the area of the second drainage strips.

7. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts which travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a stationary curved forming shoe at the start of the path of the wire belts through the twin wire zone; supports which support the wire belts for forming a wedge shaped entrance slot into the first section;

a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

said stationary curved forming shoe having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the wire belts through the twin wire zone, the forming shoe being engaged by one of the wire belts and being arranged for curving the path of both wire belts around the forming shoe after the entrance of the suspension into the entrance slot;

the twin wire zone having a second section following the first section along the path of the wire belts through the twin wire zone; in the second section, a plurality of the first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; a first strip support which resiliently supports the first drainage strips against the first wire belt that the first strips contact;

a second strip support which supports the second drainage strips rigidly against the second wire belt;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a stationary drainage element followed by a suction roll in the third section, for being engaged by one of the wire belts as the wire belts travel over the stationary drainage element and said suction roll, the stationary drainage element and said suction

5,972,168

11

roll having an open surface to enable water to be drained through the wire belt in contact therewith; and the twin wire zone apart from said suction roll being free of rolls which deflect the twin wire zone.

12

**8**. The twin-wire former of claim **7**, further comprising a supplier of vacuum in the area of the second drainage strips.

\* \* \* \* \*

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

**PATENT NO.** : 5,972,168
**DATED**      : October 26, 1999
**INVENTOR(S)** : Egelhof, et. al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Please correct the first name of the 7th inventor's legal representative as follows:
[75] Else Bück, legal representative

Please add the following missing priority data:
[30]    **Foreign Application Priority Data**
    August 22, 1989    [DE] Germany....P 39 27 597.3

Please correct the Related U.S. Application Data as follows:
[62] Continuation of application No. 09/023,435, Feb. 13, 1998, which is a continuation of application No. 08/556,769, Nov. 2, 1995, Pat. No. 5,718,805, which is a continuation of application No. 08/286,948, Aug. 8, 1994, Pat. No. 5,500,091, which is a continuation of application No. 08/055,918, April 29, 1993, Pat. No. 5,389,206, which is a continuation of application No. 07/773,965, Nov. 12, 1998, abandoned, **filed as application No. PCT/EP90/01313, Aug. 9, 1990**.

Signed and Sealed this

Thirtieth Day of May, 2000

Attest:

**Q. TODD DICKINSON**

Attesting Officer                    *Director of Patents and Trademarks*

# EXHIBIT C

VOITH PAPER GMBH & CO. KG      :

                                      :    Civil Action No. 07-226-jjf

         Plaintiff,          :

                                        :

             v.               :

                                        :

JOHNSONFOILS, INC.               :

                                        :

         Defendant.        :

## DEFENDANT JOHNSONFOILS, INC.'S OPENING MARKMAN BRIEF

### Exhibit C

### Comparison of U.S. Patent 5,718,805 claim 1
### to
### U.S. Patent 5,718,805 claims 2 – 5.

## Exhibit C

U.S. Patent 5,718,805 ("the '805 Patent") claim 1 is reproduced in its entirety below. The portions of claims 2 -5 that differ with respect to claim 1 are also reproduced. Unless otherwise indicated in the claim 2 – 5 columns, the text of claims 1 – 5 is identical. For clarity, the separate sections of the claims are presented in separate charts.

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising: | | | | |
| first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire | | | | |

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| predrainage zone; | | | | |
| each wire belt forming an endless loop; | | | | |

**The First Section**

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone,<br><br>means for supporting the belts for forming a wedge shaped entrance slot into the first section,<br><br>a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber | | | | ...a first section which includes a single first drainage element... |

3

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone; | | | | ...said single first drainage element in the first section being a single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the belts through the twin wire zone, the single forming roll being engaged by one of the wire belts for curving the path of the belts around the single forming roll after the entrance of the suspension into the entrance slot; |

## The Second Section

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone<br><br>in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt;<br><br>the first strips being shifted in position along the path of the wire belts with respect to the second | ...the twin wire zone;.... | ...the twin wire zone;....<br><br>...<br>a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt... | ...the twin wire zone;....<br><br>...<br>a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt... | ...the twin wire zone;....<br><br>...<br>a plurality of first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt... |

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| strips so that the first and second strips are offset and in a non-opposing relationship; | | | | |
| first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact; | ...respective ware [sic] belt... | ...the respective wire belt that the strips contact, the last one of the second drainage strips being located downstream of the last one of the first drainage strips;... | ...the respective wire belt that the strips contact, the last one of the second drainage strips being located downstream of the last one of the first drainage strips;... | |
| second support means supporting the second drainage strips rigidly against the second wire belt; | | | | |
| first means for collecting the water drained from the fiber suspension by the most upstream, one of the drainage strips; | | [Deleted] | [Deleted] | [Deleted] |

6

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and | | [Deleted] | [Deleted] | [Deleted]<br><br>... and means for supplying a vacuum in the area of the second drainage strips;... |

## The Third Section

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone;<br><br>a second drainage element in the third section for being | ...the twin wire zone;... | | | |

7

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| engaged by one of the wire belts as the wire belts travel over the second drainage element, | | ...the second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith; and | ...second drainage element; and | ...the second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith; and |

| The '805 Patent Claim 1 | The '805 Patent Claim 2 | The '805 Patent Claim 3 | The '805 Patent Claim 4 | The '805 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone being free of rolls which deflect the twin wire zone. | the twin wire zone being free of any forming rolls. | | the twin wire zone being free of any forming rolls. | the twin wire zone apart from said single forming roll being free of rolls which deflect the twin wire zone. |

# EXHIBIT D

VOITH PAPER GMBH & CO. KG       :
      :      Civil Action No. 07-226-jjf
     Plaintiff,       :
      :
      v.       :
      :
JOHNSONFOILS, INC.       :
      :
     Defendant.       :

## DEFENDANT JOHNSONFOILS, INC.'S OPENING MARKMAN BRIEF

### Exhibit D

### Comparison of U.S. Patent 5,718,805 Patent claim 1
### to
### U.S. Patent 5,972, 168 claims 3, 7, 1, and 5.

## Exhibit D

Claim 1 of U.S. Patent 5,718,805 ("the '805 Patent") is reproduced in its entirety below. Portions of Claims 3 and 7 of U.S. Patent 5,972,168 ("the '168 Patent") that differ with respect to the '805 Patent claim 1 are also reproduced. Unless otherwise indicated in the '168 Patent claim 3 and 7 columns, the text of the '805 Patent claim 1 and the '168 patent claims 3 and 7 is identical.

The '168 Patent method claims 1 and 3 are also reproduced in their entirety and in comparison to the apparatus claims (the '805 Patent claim 1 and the '168 Patent claims 3 and 7).

For clarity, the separate sections of the claims are presented in separate charts.

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising: | | | A method for the production of a paper web from a fiber suspension in a twin wire former comprising: | A method for the production of a paper web from a fiber suspension in a twin wire former comprising: |
| first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the | ... first and second web forming wire belts which travel along a path together for forming a twin wire zone... | ... first and second web forming wire belts which travel along a path together for forming a twin wire zone... | causing first and second web forming wire belts to travel along a path together to form a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel | causing first and second web forming wire belts to travel along a path together to form a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel |

2

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone; | | | along the path through the twin wire zone, | along the path through the twin wire zone, |
| each wire belt forming an endless loop; | | | each wire belt forming an endless loop; | each wire belt forming an endless loop; |

## The First Section

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, | ...a single forming roll at the start of the path of the wire belts through the twin wire zone | ...a stationary curved forming shoe at the start of the path of the wire belts through the twin wire zone; | feeding the wire belts across a single forming roll at the start of the path through the twin wire zone; | feeding the wire belts across a stationary curved forming shoe at the start of the path through the twin wire zone; |
| means for supporting the belts for forming a wedge shaped entrance slot into the first section, | supports which support the wire belts for forming a wedge shaped entrance slot into the first section;... | supports which support the wire belts for forming a wedge shaped entrance slot into the first section;... | supporting the wire belts such as to form a wedge shaped entrance slot into the twin wire zone; | supporting the wire belts such as to form a wedge shaped entrance slot into the twin wire zone; |

3

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone; | ... said single forming roll having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the wire belts through the twin wire zone, the single forming roll being engaged by one of the wire belts and being arranged for curving the path of both wire belts around the single forming roll after the entrance of the suspension into the entrance slot; | ... said stationary curved forming shoe having an open surface to enable drainage of water from the fiber suspension and being curved along the path of the wire belts through the twin wire zone, the forming shoe being engaged by one of the wire belts and being arranged for curving the path of both wire belts around the forming shoe after the entrance of the suspension into the entrance slot; | supplying a fiber suspension from a headbox directly to the wedge shaped entrance slot of the twin wire zone; | supplying a fiber suspension from the head box directly to the wedge shaped entrance slot of the twin wire zone; |
| | | | draining water from the fiber suspension by means of the forming roll in order to start the forming of the web from the fiber suspension; | draining water from the fiber suspension by means of the forming shoe in order to start the forming of the web from the fiber suspension; |

4

**The Second Section**

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone | ... along the path of the wire belts through the twin wire zone;... | ...along the path of the wire belts through the twin wire zone; | feeding the wire belts with the fiber suspension and the web being generated therebetween downstream of the forming roll between | feeding the wire belts with the fiber suspension and the web being generated therebetween downstream of the forming shoe between |
| in the second section, a plurality of first drainage strips are positioned | ... a plurality of the first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belt;... | ... a plurality of the first drainage strips are positioned within the loop of the first wire belt and are for contacting the first wire belts; | a plurality of first drainage strips, which are positioned within the loop of the first wire belt for contacting the first wire belt, and a plurality of second drainage strips, which are positioned within the loop of the second wire belt for contacting the second wire belt, | a plurality of first drainage strips, which are positioned within the loop of the first wire belt for contacting the first wire belt, and a plurality or second drainage strips, which are positioned within the loop of the second wire belt for contacting the second wire belt, |
| contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for | | | | |

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| contacting the second wire belt; | | | | |
| the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; | | | the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; | the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; |
| first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact; | a first strip support which resiliently supports the first drainage strips against the first wire belt that the first strips contact; | ... a first strip support which resiliently supports the first drainage strips against the first wire belt that the first strips contact; | resiliently supporting the first drainage strips against the first wire belt that the strips contact; | resiliently supporting the first drainage strips against the first wire belt that the strips contact; |
| second support means supporting the second drainage strips rigidly against the second wire belt; | a second strip support which supports the second drainage strips rigidly against the second wire belt; | a second strip support which supports the second drainage strips rigidly against the second wire belt;... | rigidly supporting the second drainage strips against the second wire belt; | rigidly supporting the second drainage strips against the second wire belt; |
| first means for collecting the water drained from the fiber | [Deleted] | [Deleted] | | |

6

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| suspension by the most upstream, one of the drainage strips; second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and | [Deleted] | [Deleted] | | |

## The Third Section

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one | drainage elements in the third section, for being engaged by one | ... a stationary drainage element followed by a suction roll in the | feeding the wire belts with the web therebetween downstream of said drainage strips across a stationary drainage element and then across a suction roll in | feeding the wire belts with the web therebetween downstream of said drainage strips across a stationary drainage element and then across a suction roll in |

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| engaged by one of the wire belts as the wire belts travel over the second drainage element, | of the wire belts as the wire belts travel over the drainage elements, the drainage elements including at least one stationary dewatering element followed by a suction roll and having an open surface to enable water to be drained through the wire belt in contact therewith; and | third section, for being engaged by one of the wire belts as the wire belts travel over the stationary drainage element and said suction roll, the stationary drainage element and said suction roll having an open surface to enable water to be drained through the wire belt in contact therewith; and | the twin wire zone such that as the wire belts travel over the stationary drainage element and over said suction roll, water is drained through the wire belt in contact with said stationary drainage element and with said suction roll; and | the twin wire zone such that as the wire belts travel over the stationary drainage element and the suction roll, water is drained through the wire belt in contact with said stationary drainage element and the suction roll; and |

| The '805 Patent Claim 1 | The '168 Patent Claim 3 | The '168 Patent Claim 7 | The '168 Patent Claim 1 | The '168 Patent Claim 5 |
|---|---|---|---|---|
| the twin wire zone being free of rolls which deflect the twin wire zone. | the twin wire zone apart from said single forming roll and said suction roll being free of rolls which deflect the twin wire zone. | the twin wire zone apart from said suction roll being free of rolls which deflect the twin wire zone. | maintaining the twin wire zone apart from said single forming roll and said suction roll free of rolls which would deflect the twin wire zone. | maintaining the twin wire zone apart from said suction roll free of rolls which would deflect the twin wire zone. |

# EXHIBIT E

Case 1:07-cv-00226-JJF    Document 68-6    Filed 01/16/2008    Page 2 of 5

*The Voice of Authority*



# Merriam Webster's Collegiate® Dictionary

## TENTH EDITION

**America's foremost dictionary publisher continues its 150-year tradition of excellence with this new edition of America's best-selling dictionary.**



# Merriam-Webster's Collegiate® Dictionary

## TENTH EDITION

Merriam-Webster, Incorporated
Springfield, Massachusetts, U.S.A.



## A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 1995 by Merriam-Webster, Incorporated

Philippines Copyright 1995 by Merriam-Webster, Incorporated

Library of Congress Cataloging in Publication Data
Main entry under title:

Merriam-Webster's collegiate dictionary. — 10th ed.
　　　　p.　　　cm.
　　Includes index.
　　ISBN 0-87779-708-0 (unindexed). — ISBN 0-87779-709-9 (indexed).
　— ISBN 0-87779-710-2 (deluxe). — ISBN 0-87779-707-2 (laminated cover).
　　1. English language—Dictionaries. I. Merriam-Webster, Inc.
PE1628.M36　　1995
423—dc20　　　　　　　　　　　　　　　　　94-30967
　　　　　　　　　　　　　　　　　　　　　　　CIP

Merriam-Webster's Collegiate® Dictionary, Tenth Edition principal copyright 1993

COLLEGIATE is a registered trademark of Merriam-Webster, Incorporated

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

12131415RMcN95

**452    foil ● follower**

¹foil n (15c)  1 archaic : DEFEAT  2 archaic : the track or trail of an animal

²foil n [origin unknown] (1594)  1 : a light fencing sword having a usu. circular guard and a flexible blade of rectangular section tapering to a blunted point — compare ÉPÉE, SABER  2 : the art or sport of fencing with the foil — often used in pl.

³foil vt (1611)  1 : to back or cover with foil  2 : to enhance by contrast

foiled \'foi(ə)ld\ adj (1835) : ornamented with foils (a ~ arch)

foils-man \'foi(ə)lz-mən\ n (1927) : one who fences with a foil

¹foin \'foin\ vi [ME, fr. foin fork for spearing fish, fr. MF foisne] (14c) archaic : to thrust with a pointed weapon : LUNGE

²foin n (15c) archaic : a pass in fencing : LUNGE

foi-son \'foiz-ⁿn\ n [ME, fr. L fusion-, fusio pouring, effusion — more at FUSION] (14c)  1 archaic : rich harvest  2 chiefly Scot : physical energy or strength  3 pl obs : RESOURCES

foist \'foist\ vt [prob. fr. obs. D vuisten to take into one's hand, fr. MD vuysten, fr. vuyst fist; akin to OE fÿst fist] (ca. 1587)  1 a : to introduce or insert surreptitiously or without warrant  b : to force another to accept esp. by stealth or deceit  2 : to pass off as genuine or worthy (~ costly and valueless products on the public — Jonathan Spivak)

fo-la-cin \'fō-lə-sən\ n [folic acid + -in] (1949) : FOLIC ACID

fo-late \'fō-lāt\ n (1951) : FOLIC ACID

¹fold \'fōld\ n [ME, fr. OE falod; akin to OS faled enclosure] (bef. 12c)  1 : an enclosure for sheep  2 a : a flock of sheep  b : a group of people or institutions that share a common faith, belief, activity, or enthusiasm

²fold vb (bef. 12c) : to pen up or confine (as sheep) in a fold

³fold vb [ME, fr. OE fealdan; akin to OHG faldan to fold, Gk diplasios twofold] vt (bef. 12c)  1 : to lay one part over another part of (~ a letter)  2 : to reduce the length or bulk of by doubling over (~ a tent)  3 : to clasp together : ENTWINE (~ the hands)  4 : to clasp or enwrap closely : EMBRACE  5 : to bend (as a layer of rock) into folds  6 a : to incorporate (a food ingredient) into a mixture by repeated gentle overturnings without stirring or beating  b : to incorporate closely  7 a : to concede defeat by withdrawing (one's cards) from play (as in poker)  b : to bring to an end ~ vi  1 : to become doubled or pleated  2 : to fail completely : COLLAPSE; esp : to go out of business  3 : to fold one's cards (as in poker) — fold-able \'fōl-də-bəl\ adj

⁴fold n (13c)  1 : a part doubled or laid over another part : PLEAT  2 : something that is folded together or that enfolds  3 a : a bend or flexure produced in rock by forces operative after the depositing or consolidation of the rock  b chiefly Brit : an undulation in the landscape  4 : a margin apparently formed by the doubling upon itself of a flat anatomical structure (as a membrane)  5 : a crease made by folding something (as a newspaper)

-fold \ˌfōld, ˌfōld\ adj/adv suffix [ME, fr. OE -feald; akin to OHG -falt -fold, L -plex, -plus, OE fealdan]  1 : multiplied by (a specified number)  : times — in adjectives (a sixfold increase) and adverbs (repay you tenfold)  2 : having (so many) parts (three fold aspect of the problem)

fold-away \'fōld-ə-ˌwā\ adj (1948) : designed to be folded for storage or portability (~ doors) (~ bed) (a ~ table)

fold-boat \'fōld-ˌbōt\ n [trans. of G Faltboot] (1938) : a small collapsible canoe made of rubberized sailcloth stretched over a framework

fold-er \'fōl-dər\ n (1552)  1 : one that folds  2 : a folded printed circular  3 : a folded cover or large envelope for holding or filing loose papers

fol-de-rol \'fäl-də-ˌräl\ n [fol-de-rol, a nonsense refrain in songs] (1820)  1 : a useless ornament or accessory : TRIFLE  2 : NONSENSE

fold-ing \'fōl-diŋ\ n, often attrib (1590) : a folded leaf in a publication (as a book) that is larger in one dimension than the page (a ~ map)

fo-lia-ceous \ˌfō-lē-'ā-shəs\ adj [L foliaceus, fr. folium leaf + -aceus -aceous] (1658) : of, relating to, or resembling an ordinary green leaf as distinguished from a modified leaf (as a petal, bract, or scale)

fo-liage \'fō-lē-ij\ also -līˌij; ÷'fō-lij, ÷'fō-lij\ n [MF fueillage, fr. foille leaf — more at FOIL] (1598)  1 : a representation of leaves, flowers, and branches for architectural ornamentation  2 : the aggregate of leaves of one or more plants  3 : a cluster of leaves, flowers, and branches — fo-liaged \'fō-lē-ijd also -līˌijd; ÷'fō-lijd, ÷'fō-lijd\ adj  usage The disyllabic pronunciation \'fō-lij\ is very common. Some commentators insist that foliage requires a trisyllabic pronunciation because of its spelling, but words of a similar pattern such as carriage and marriage do not fall under their prescription. The pronunciation \'fō-lij\ is disapproved below because it suggests the transposition of the l and i in the spelling. It is not as common as \'fō-lij\ and may be associated with the nonstandard spelling foliage.

foliage plant n (1862) : a plant grown primarily for its decorative foliage

fo-li-ar \'fō-lē-ər\ adj [F foliaire, fr. L folium leaf + F -aire -ar] (ca. 1859) : of, relating to, or applied to leaves (~ sprays)

fo-li-ate \'fō-lē-ət, -ˌāt\ adj [L foliatus leafy, fr. folium leaf — more at BLADE] (ca. 1658)  1 : shaped like a leaf (a ~ sponge)  2 : FOLIATED

fo-li-at-ed \-ˌāt-əd\ adj (1650)  1 : composed of or separable into layers (~ rock)  2 : ornamented with foils or a leaf design

fo-li-a-tion \ˌfō-lē-'ā-shən\ n (ca. 1623)  1 a : the process of forming into a leaf  b : the state of being in leaf c : VERNATION  2 : the numbering of the leaves of a manuscript or early printed book  3 a : ornamentation with foliage  b : a decoration resembling a leaf  4 : the enrichment of an opening by foils  5 : foliated texture

fo-lic acid \ˌfō-lik-\ n [L folium] (1941) : a crystalline vitamin C₁₉H₁₉N₇O₆ of the B complex that is used esp. in the treatment of nutritional anemias — called also pteroylglutamic acid

fo-lie à deux \ˌfō-lē-ä-'dœ, ˌfä-lē-ä-'dœr\ n [F, lit., double madness] (ca. 1892) : the presence of the same or similar delusional ideas in two persons closely associated with one another

fo-lio \'fō-lē-ō\ n, pl fo-li-os [ME, fr. L, abl. of folium] (1447)  1 a : a leaf esp. of a manuscript or book  b : a leaf number  c : a page number  d : an identifying reference in accounting used in posting  2 a : a sheet of paper folded once  b : a case or folder for loose papers  3 a : the size of a piece of paper cut two from a sheet; also : paper or a page of this size  b : a book printed on folio pages  c : a book of the

largest size, about 15 inches in height  4 : a certain number of words taken as a unit or division in a document for purposes of measurement or reference

²folio vt (1858) : to put a serial number on each leaf or page of

fo-li-ose \'fō-lē-ˌōs\ adj [L foliosus leafy] (1753) : having a flat, round, and usu. lobed thallus attached to the substratum (~ lichens) — compare CRUSTOSE, FRUTICOSE

¹folk \'fōk\ n, pl folk or folks [ME, fr. OE folc; akin to OHG folc people] (bef. 12c)  1 archaic : a group of kindred tribes forming a nation : PEOPLE  2 : the great proportion of the members of a people that determines the group character and that tends to preserve its characteristic form of civilization and its customs, arts and crafts, legends, traditions, and superstitions from generation to generation  3 pl : a certain kind, class, or group of people (old ~s) (just plain ~) (country ~) (media ~)  4 folks pl : people generally  5 folks pl : the persons of one's own family; esp : PARENTS

²folk adj (bef. 12c)  1 : originating or traditional with the common people of a country or region and typically reflecting their lifestyle (a ~ hero) (~ music)  2 : of or relating to the common people or to the study of the common people (~ sociology)

folk etymology n (1882) : the transformation of words so as to give them an apparent relationship to other better-known or better-understood words (as in the change of Spanish cucaracha to English cockroach)

folk-ie also folky \'fō-kē\ n, pl folkies (1965) : a folk singer or admirer of folk music

folk-ish \'fō-kish\ adj (1938) : FOLKLIKE — folk-ish-ness n

folk-life \'fōk-ˌlīf\ n (1864) : the traditions, activities, skills, and products (as handicrafts) of a particular people or group

folk-like \'fōk-ˌlīk\ adj (1939) : having or like the character of folklore

folk-lore \'fōk-ˌlōr, -ˌlór\ n (1846)  1 : traditional customs, tales, sayings, dances, or art forms preserved among a people  2 : a branch of knowledge that deals with folklore  3 : an often unsupported notion, story, or saying that is widely circulated — folk-lor-ic \ˌfōk-'lōr-ik, -'lór-\ adj — folk-lor-ish \-ish\ adj — folk-lor-ist \-ist\ n — folk-lor-is-tic \ˌfō-ˌklōr-'is-tik, -ˌklór-\ adj

folk mass n (1966) : a mass in which traditional liturgical music is replaced by folk music

folk medicine n (1878) : traditional medicine as practiced nonprofessionally esp. by people isolated from modern medical services and usu. involving the use of plant-derived remedies on an empirical basis

folk-moot \'fōk-ˌmüt\ or folk-mote \-ˌmōt\ n [alter. of OE folcmōt, folcgemōt, fr. folc people + mōt, gemōt meeting — more at MOOT] (12c) : a general assembly of the people (as of a shire) in early England

folk-sing-er \'fōk-ˌsiŋ-ər\ n (1884) : one who sings folk songs or sings in a style associated with folk songs — folk-sing-ing \-ˌsiŋ-iŋ\ n

folk song n (1847)  1 : a traditional or composed song typically characterized by stanzaic form, refrain, and simplicity of melody

folksy \'fōk-sē\ adj folks-i-er; -est (1852)  1 : SOCIABLE, FRIENDLY  2 : informal, casual, or familiar in manner or style (~ humor) — folks-i-ly \-sə-lē\ adv — folks-i-ness \-sē-nəs\ n

folk-tale \'fōk-ˌtāl\ n (1853) : a characteristically anonymous, timeless, and placeless tale circulated orally among a people

folk-way \'fōk-ˌwā\ n (ca. 1906)  1 : a mode of thinking, feeling, or acting common to a given group of people; esp : a traditional social custom  2 folkways pl : the behavior patterns of group life

fol-li-cle \'fä-li-kəl\ n [NL folliculus, fr. L, dim. of follis bag — more at FOOL] (1646)  1 a : a small anatomical cavity or deep narrow mouthed depression  b : a small lymph node  c : a vesicle in the mammalian ovary that contains a developing egg surrounded by a covering of cells; esp : GRAAFIAN FOLLICLE  2 : a dry dehiscent one-celled many-seeded fruit (as of the milkweed) that has a single carpel and opens along one suture — fol-lic-u-lar \fə-'li-kyə-lər, fä-\ adj

follicle mite n (1925) : any of several minute mites (genus Demodex) parasitic in hair follicles

follicle-stimulating hormone n (ca. 1943) : a hormone produced by the anterior lobe of the pituitary gland that stimulates maturation of the ovum-containing follicles in the ovary and activates sperm-forming cells

fol-lic-u-li-tis \fə-ˌli-kyə-'lī-təs\ n [NL, fr. folliculus + -itis] (ca. 1860) : inflammation of one or more follicles esp. of the hair

¹fol-low \'fä-(ˌ)lō, -lə(-w)\ vb [ME folwen, fr. OE folgian; akin to OHG folgēn to follow] vt (bef. 12c)  1 : to go, proceed, or come after (~ the guide)  2 a : to engage in as a calling or way of life : PURSUE (wheat-growing is generally ~ed here)  b : to walk or proceed along (~ a path)  3 a : to be or act in accordance with (~ directions)  b : to accept as authority : OBEY (~ed his conscience)  4 a : to pursue in an effort to overtake  b : to seek to attain (~ knowledge)  5 : to come into existence or take place as a result or consequence of (disease ~ed the blunder)  6 a : to come or take place after in time, sequence, or order  b : to cause to be followed (~ed dinner with a liqueur)  7 : to copy after : IMITATE  8 a : to watch steadily (~ed the flight of the ball)  b : to keep the mind on (~ a speech)  c : to attend closely to : keep abreast of (~ed his career with interest)  d : to understand the sense or logic of (as a line of thought) ~ vi  1 : to go or come after a person or thing in place, time, or sequence  2 : to result or occur as a consequence, effect, or inference — as follows : as comes next : used impersonally — follow suit  1 : to play a card of the same suit as the card led  2 : to proceed without plan or reflection : obey one's instincts — follow suit  1 : to play a card of the same suit as the card led  2 : to proceed without plan or reflection : obey one's instincts — follow suit  1 : to play a card of the same suit as the card led  2 : to proceed without plan or reflection : obey one's instincts — follow suit  1 : to play a card of the same suit as the card led  2 : to follow an example set  syn FOLLOW, SUCCEED, ENSUE, SUPERVENE mean to come after something or someone. FOLLOW may apply to a coming after in time, position, or logical sequence (speeches followed the dinner). SUCCEED implies a coming after immediately in a sequence determined by natural order, inheritance, election, or laws of rank (she succeeded her father as head of the business). ENSUE commonly suggests a logical consequence or naturally expected development (after the talk a general discussion ensued). SUPERVENE suggests the following or beginning of something unforeseen or unpredictable (supervening events brought unhappiness to him).  syn see in addition CHASE

²follow n (1870)  1 : the act or process of following  2 : CHARM, ENGLISH

fol-low-er \'fä-lə-wər\ n (bef. 12c)  1 : one in the service of another : RETAINER  2 : one that follows the opinions or teachings of another

# EXHIBIT F

UTILITY
SERIAL
NUMBER 08 556769    PATENT DATE FEB 17 1998    PATENT NUMBER 5718805

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | | EXAMINER |
|---|---|---|---|---|---|
| 08/556,769 | 11/02/95 | 162 | 301.000 | 173 | Kealma |

5718805

**APPLICANTS**

DIETER EGELHOF, HEIDENHEIM, FED REP GERMANY; KLAUS HENSELER, HEIDENHEIM, FED REP GERMANY; WERNER KADE, NEENAH, WI; ALBRECHT MEINECKE, HEIDENHEIM, FED REP GERMANY; WILHELM WANKE, HEIDENHEIM, FED REP GERMANY; HANS-JURGEN WULZ, HEIDENHEIM, FED REP GERMANY; RUDOLF BUCK, HEIDENHEIM, FED REP GERMANY, DECEASED; BY ELSE BUCK, HEIDENHEIM, FED REP GERMANY, LEGAL REPRESENTATIVE.

```
**CONTINUING DATA********************
VERIFIED         THIS APPLN IS A CON OF   08/286,948 08/08/94 PAT   5,500,091
                 WHICH IS A CON OF        08/055,918 04/29/93 PAT   5,389,206
                 WHICH IS A CON OF        07/773,965 11/12/91 ABN
**FOREIGN/PCT APPLICATIONS************
VERIFIED         FED REP GERMANY      P 39 27 597.3    08/22/89
                 PCT                  PCT/EP90/01313   09/08/90
```

NOTE-DISCLAIMER
The term of this patent shall not extend
beyond the expiration date
of Pat. No. 5500091

FOREIGN FILING LICENSE GRANTED 09/07/96

| Foreign priority claimed ☑ yes ☐ no | | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☑ yes ☐ no | AS FILED | DEX | 2 | 30 | 3 | $1,122.00 | P/14-363 |
| Verified and Acknowledged     Examiner's initials | | | | | | | |

**ADDRESS**

OSTROLENK FABER GERB & SOFFEN
1180 AVENUE OF THE AMERICAS
NEW YORK NY 10036-8403

**TITLE**

TWIN WIRE FORMER

U.S. DEPT. OF COMM/ PAT. & TM - PTO-436L (Rev. 1)

---

**PARTS OF APPLICATION**
**FILED SEPARATELY**

Applications Examiner

**NOTICE OF ALLOWANCE MAILED**

4/25/97

Assistant Examiner

CLAIMS ALLOWED

| Total Claims | Print Claim |
|---|---|
| 5 | |

**ISSUE FEE**

| Amount Due | Date Paid |
|---|---|
| 1090 | 7/28/97 |

FORM PTO-1267    U.S. Department of Commerce
(Rev. 11-92)    Patent and Trademark Office

Primary Examiner

DRAWING

| Sheets Drwg. | Figs. Drwg. | Print Fig. |
|---|---|---|
| 2 | 5 | |

ISSUE
BATCH
NUMBER

**DISCLAIMER LABEL**

Application No.
08/556769

A terminal disclaimer has been entered and
recorded under 35 U.S.C. 253 in this file.
DO NOT DESTROY

Form PTO-436A
(Rev. 8/92)

**PREPARED FOR ISSUE**

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

JFI0204629

**PATENT APPLICATION**

| | | |
|---|---|---|
| 08 556769 | ‖‖‖‖‖‖‖‖‖‖‖ 08556769 | APPROVED FOR LICENSE ☐<br>INT'LS JAN 0 6 9 6 2 5 |

| Date<br>Entered<br>or<br>Counted | **CONTENTS** | Date<br>Received<br>or<br>Mailed |
|---|---|---|
| | 1. Application _____ papers. | |
| | 2. ltrre nodeel | 2-12-96 |
| | 3. pre-amendment ot | 2-12-96 |
| | 4. G.O.T / decl Surcharge | 6-14-96 |
| 9/25/96 | 5. Corrected filing receipt | |
| | 6. | 4-4-96 |
| | 7. | |
| | 8. | |
| | 9. Terminal Disclaimer | 3-7 |
| 4-25-97 | 10. Interview | |
| | 11. Ex.r Am A.C | 4-25-97 |
| 7-18-97 | 12. Amdt D (NB 312) | 6-20-97 |
| | 13. Letter of Entry | |
| | 14. PTO Grant NOV 18 1997 | |
| | 15. PTO Grant FEB 17 1998 | |
| | 16. Prior Art | 12-15-98 |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 24. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

(FRONT)

JFI0204630

Staple Issue Slip Here

| POSITION | ID NO. | DATE |
|---|---|---|
| CLASSIFIER | | /-C |
| EXAMINER | E4R0 | 2/2/90 |
| TYPIST | 343 | 6/25/96 |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | 451 | 1-24-96 |
| FILE MAINT. | 452 | 2-8-96 |
| DRAFTING | | |

## INDEX OF CLAIMS

| Final | Original | Claim | | Date | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | | | | | |
| | | 2 | | | | | |
| | | 3 | | | | | |
| | | 4 | | | | | |
| | | 5 | | | | | |
| | | 6 | | | | | |
| | | 7 | | | | | |
| | | 8 | | | | | |
| | | 9 | | | | | |
| | | 10 | | | | | |
| | | 11 | | | | | |
| | | 12 | | | | | |
| | | 13 | | | | | |
| | | 14 | | | | | |
| | | 15 | | | | | |
| | | 16 | | | | | |
| | | 17 | | | | | |
| | | 18 | | | | | |
| | | 19 | | | | | |
| | | 20 | | | | | |
| | | 21 | | | | | |
| | | 22 | | | | | |
| | | 23 | | | | | |
| | | 24 | | | | | |
| | | 25 | | | | | |
| | | 26 | | | | | |
| | | 27 | | | | | |
| | | 28 | | | | | |
| | | 29 | | | | | |
| | | 30 | | | | | |
| | | 31 | | | | | |
| | | 32 | | | | | |
| | | 33 | | | | | |
| | | 34 | | | | | |
| | | 35 | | | | | |
| | | 36 | | | | | |
| | | 37 | | | | | |
| | | 38 | | | | | |
| | | 39 | | | | | |
| | | 40 | | | | | |
| | | 41 | | | | | |
| | | 42 | | | | | |
| | | 43 | | | | | |
| | | 44 | | | | | |
| | | 45 | | | | | |
| | | 46 | | | | | |
| | | 47 | | | | | |
| | | 48 | | | | | |
| | | 49 | | | | | |
| | | 50 | | | | | |

| Final | Original | Claim | | Date | | | |
|---|---|---|---|---|---|---|---|
| | | 51 | | | | | |
| | | 52 | | | | | |
| | | 53 | | | | | |
| | | 54 | | | | | |
| | | 55 | | | | | |
| | | 56 | | | | | |
| | | 57 | | | | | |
| | | 58 | | | | | |
| | | 59 | | | | | |
| | | 60 | | | | | |
| | | 61 | | | | | |
| | | 62 | | | | | |
| | | 63 | | | | | |
| | | 64 | | | | | |
| | | 65 | | | | | |
| | | 66 | | | | | |
| | | 67 | | | | | |
| | | 68 | | | | | |
| | | 69 | | | | | |
| | | 70 | | | | | |
| | | 71 | | | | | |
| | | 72 | | | | | |
| | | 73 | | | | | |
| | | 74 | | | | | |
| | | 75 | | | | | |
| | | 76 | | | | | |
| | | 77 | | | | | |
| | | 78 | | | | | |
| | | 79 | | | | | |
| | | 80 | | | | | |
| | | 81 | | | | | |
| | | 82 | | | | | |
| | | 83 | | | | | |
| | | 84 | | | | | |
| | | 85 | | | | | |
| | | 86 | | | | | |
| | | 87 | | | | | |
| | | 88 | | | | | |
| | | 89 | | | | | |
| | | 90 | | | | | |
| | | 91 | | | | | |
| | | 92 | | | | | |
| | | 93 | | | | | |
| | | 94 | | | | | |
| | | 95 | | | | | |
| | | 96 | | | | | |
| | | 97 | | | | | |
| | | 98 | | | | | |
| | | 99 | | | | | |
| | | 100 | | | | | |

SYMBOLS
√ .......................... Rejected
— .......................... Allowed
– (Through numeral) .......................... Canceled
+ .......................... Restricted
N .......................... Non-elected
I .......................... Interference
A .......................... Appeal
O .......................... Objected

(LEFT INSIDE)

JFI0204631



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 162 | 203 | | |
| | 300 | | |
| | 30) | | |
| | 303 | | |
| | 348 | | |
| | 352 | | |
| | | 9-96 | pmo |
| | | To date | |
| | | 4-97 | kmk |

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| v'ed parent files | 9-96 | kmk |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 162 | wkol | 4-97 | pmo |

(RIGHT OUTSIDE)

BAR CODE LABEL

## U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/556,769 | 11/02/95 | 140 | 3201 |

**APPLICANT**

DIETER EGELHOF, HEIDENHEIM, FED REP GERMANY; KLAUS HENSELER, HEIDENHEIM, FED REP GERMANY; WERNER KADE, NEENAH, FED REP GERMANY; ALBRECHT MEINECKE, HEIDENHEIM, FED REP GERMANY; WILHELM WANKE, HEIDENHEIM, FED REP GERMANY; HANS-JURGEN WULZ, HEIDENHEIM, FED REP GERMANY; RUDOLF BUCK, HEIDENHEIM, FED REP GERMANY, DECEASED; BY ELSE BUCK, HEIDENHEIM, FED REP GERMANY, LEGAL REPRESENTATIVE.

```
**CONTINUING DATA********************
   VERIFIED     THIS APPLN IS A CON OF   08/286,948 08/08/94 PAT    5,500,091
                WHICH IS A CON OF   08/055,918 04/29/93 PAT    5,389,206
                WHICH IS A CON OF   07/773,965 11/12/91


**FOREIGN/PCT APPLICATIONS***********
   VERIFIED     FED REP GERMANY    P 39 27 597.3    08/22/89
```

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| DEX | 2 | 30 | 3 | $1,122.00 | P/14-363 |

**ADDRESS**

OSTROLENK FABER GERB & SOFFEN
1180 AVENUE OF THE AMERICAS
NEW YORK NY 10036-8403

**TITLE**

TWIN WIRE FORMER

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                                    Certifying Officer

JFI0204633

PATENT APPLICATION SERIAL NO. 08/556769

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

310 CS 12/15/95 08556769
1 101    970.00 CK P/14-363

PTO-1556
(5/87)

JFI0204634



OSTROLE  , FABER, GERB & SOFFEN, LLP

08/556769

Attorneys at Law

1180 Avenue of the Americas
New York, New York 10036-8403

Telex
23 6925

--------------

(212) 382-0700
November 2, 1995

Facsimile
(212) 382-0888

Express Mail #TB832125415US

Cable
Ostrofaber New York

Hon. Commissioner of Patents and Trademarks
Washington, DC  20231

OFGS File No. : P/14-363  1-00
Inventor       : Rudolf BUCK et al.
Title          : TWIN WIRE FORMER
Assignee       : J.M. Voith GmbH

Enclosed herewith please find the following documents in the above-identified
application for United States Letters Patent:

XX     Abstract
13     Pages of Specification
30     Numbered Claims Calculated as 30 Claims for Fee Purposes
2      Sheets of Drawing Containing Figures  1  to  5 .
       Declaration and Power of Attorney
XX     Priority is Claimed under 35 U.S.C. §119:
Convention Date  August 22, 1989  for  German  Appln. S.N.  P 39 27 597.3
       Certified Priority Application
       Verified Statement Claiming Small Entity Status under 37 C.F.R. §1.27.
       Assignment
XX     Return-Addressed Post Card
OFGS Check No. 5327, which includes the fee of $970.00, calculated as
follows:
       Basic Filing Fee: . . . . . . . . . . . . . . . . . . . .   $ 750.00
       Additional Filing Fees:
          Total Number of Claims in Excess of 20, times $22: . . . .   220.00
          Number of Independent Claims in Excess of 3, times $78. . .
          One or More Multiple Dependent Claims:  Total $250. . . . .
       Total Filing Fees or . . . . . . . . . . . . . . . . . . . .
       Total Filing Fee Reduced 50% for Small Entity: . . . . . . .
       Assignment Recording Fee:  $40 . . . . . . . . . . . . . . .
       TOTAL Filing Fee and Assignment Recording Fee: . . . . . . .   $ 970.00

In the event the actual fee is greater than the payment submitted or is
inadvertently not enclosed, or if any additional fee during the prosecution of
this case is not paid, the Patent and Trademark Office is authorized to charge
the underpayment to Deposit Account No. 15-0700.

EXPRESS MAIL CERTIFICATE

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
Express Mail Post Office to Addressee (mail label
#TB832125415US) in an envelope addressed to:
Commissioner of Patents and Trademarks, Washing-
ton, D.C. 20231, on November 2, 1995:
          Dorothy Jenkins
Name of Person Mailing Correspondence

Dorothy Jenkin
Signature
November 2, 1995
Date of Signature

Respectfully submitted,

Martin Pfeffer
Registration No.:  20,808
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036-8403
Telephone:  (212) 382-0700

TRAN\135065

JFI0204635

08/556767

ABSTRACT OF THE DISCLOSURE

In a twin-wire former for the production of a paper
web, two wire belts (11 and 12) together form a twin-wire zone
which is divided into three sections (I, II and III). In the
first section (I) the two wires (11, 12) travel over a curved
forming shoe (16). They form there a wedge-shaped inlet slot (15)
with which a headbox (10) is directly associated. In the second
section (II), several resiliently supported strips (27) rest
against the lower wire (11) and between each of said strips (27)
a rigidly mounted strip (28) rests against the upper wire (12).
In the third section (III) both wire belts (11, 12) pass over
another curved forming shoe (23).

5

10

-22-

SPEC\132870

JFI0204636



270-101 A

08/556769

P/14-363

TWIN WIRE FORMER

## RELATED APPLICATIONS

This is a continuing application of, and hereby
5    incorporates by reference the entire disclosure of, application
Serial No. 08/286,948, filed August 8, 1994 now pending, which is
a continuing application Serial No. 08/055,918, filed April 29,
1993, issued February 14, 1995 as Patent 5,389,206, which is a
continuing application Serial No. 07/773,965, filed November 12,
10   1991, now abandoned.

*U.S. Patent No. 5,500,091*

## BACKGROUND OF THE INVENTION

The present invention relates to a twin-wire former for
the production of a fiber web, in particular a paper web, from a
fiber suspension. The invention proceeds from the basis of the
15   twin-wire former known from British Patent 1 125 906. The
features indicated in the patent include a twin wire former for
producing a fiber web and particularly a paper web from a fiber
suspension. Two web forming wire belts, in the form of endless
loops, travel together to form a twin wire zone. The web travels
20   between and along the path of the wire belts through the twin
wire zone. The twin wire zone has three sections and the elements
in those three sections are described below. The patent describes
features that state, in other words, that the forming of the
fiber web from the pulp suspension fed from the headbox takes
25   place exclusively between two wire belts. Thus, there is no
so-called single-wire pre-drainage path. In a first section of
the twin-wire zone, the two wire belts together form a
wedge-shaped inlet slot; a jet of pulp slurry coming from the
headbox discharges into it. The jet strikes the two wire belts at
30   a place where they pass over a curved drainage element; in the
case of the aforementioned British patent, this is a stationary,
curved forming shoe. Its curved wire guide surface is formed of a
plurality of strips with drainage slots between them. This

SPBC\132870

JFI0204637

forming shoe is followed (in a second section of the twin-wire
zone) by a drainage strip arranged in the other wire loop and,
behind the latter, by a drainage strip arranged in the
first-mentioned wire loop (and formed by a first suction box).

5      Finally, in a third section of the twin-wire zone there are a
plurality of stationary drainage elements developed as flat
suction boxes.

It has been attempted for decades with twin-wire
formers of the known type to produce fiber webs (in particular,

10     paper webs) of the highest possible quality with relatively high
operating speeds. Due to the forming of the web between two
wires, the result, in particular, is obtained that the final
fiber web has substantially the same properties on both sides
(little "two-sidedness"). However, it is difficult to obtain as

15     uniform as possible a distribution of the fibers in the final
fiber web. In other words, it is difficult to obtain a good
"formation" since while the web is formed, there is always the
danger that fibers will agglomerate and form flocculations.
Therefore, it is attempted to form a jet of pulp slurry which

20     pulp slurry is as free as possible of flocculations in the
headbox (for instance, by means of a turbulence producer). It is,
furthermore, endeavored so to influence the drainage of the fiber
suspension during the web-forming that "reflocculation" is
avoided as far as possible or that, after possible flocculation,

25     a "deflocculation" (i.e. a breaking up of the flocculations)
takes place.

It is known that a curved drainage element arranged in
the first section of the twin-wire zone and, in particular, a
stationary curved forming shoe developed in accordance with the

30     aforementioned British Patent 1 125 906 counteracts the danger of
reflocculation. This is true also of the drainage strips arranged
in the British Patent in the second section of the twin-wire
zone. Nevertheless, the danger of reflocculation is not
completely eliminated in the arrangement according to said

35     British Patent. Since the number of drainage strips there is very
small, a large part of the web-forming takes place in the region

JFI0204638

of the following flat-suction boxes. They, to be sure, are of
high drainage capacity so that the web-forming can be completed
in the region of the last flat suction boxes (i.e. the so-called
main drainage zone, in which a part of the fiber material is
5    still in the form of a suspension, terminates in the region of
the flat suction box). The flat suction boxes, however, are not
able to avoid reflocculation or to break up flocculations which
have already occurred.

In order to control these last-mentioned difficulties,
10   a web-forming device known under the name of "Duoformer D" has
been developed (TAPPI Proceedings 1988 annual meeting, pages 75
to 80). This known web-forming device is part of a twin-wire
former which has a single-wire pre-drainage zone. In the
twin-wire zone there are provided, in the one wire loop, a
15   plurality of strips which are fixed in position but adjustably
supported, namely, on the bottom of a suction box which drains in
upward direction. Furthermore, a plurality of resiliently
supported strips are provided in the other wire loop. By this
resilience of the last-mentioned strips, the following result can
20   be obtained: For example, upon an increase of the amount of
suspension entering between the two wire belts, the flexibly
supported strips can move away somewhat. In this way, the danger
(which is present when only firmly supported strips are used) is
eliminated of a backing up taking place in the fiber suspension
25   in front of the strips. Such a backing up could destroy the fiber
layers which have been formed up to then on the two wire belts.
In other words, with this known web-forming device, a drainage
pressure, once established, remains constant due to the
resiliently supported strips even upon a change in the amount of
30   suspension fed or upon a change in the drainage behavior of the
fiber suspension. Therefore, automatic adaptation of the
web-forming device to said changed conditions occurs.

With this known web-forming device, fiber webs of
relatively good formation can also be formed. With respect to
35   this, however, the demands have increased considerably recently,
so that further improvements are desirable.

SPEC\132870                          -3-

SUMMARY OF THE INVENTION

The object of the invention is so to develop a
twin-wire of the aforementioned kind that the quality of the
fiber web produced is further improved, particularly with respect
5    to its formation (cloudiness), and that the twin-wire former can
easily be adapted to different operating conditions (for
instance, with regard to quantity and drainage behavior of the
fiber suspension).

This object is achieved by the features set forth
10   below. In particular, there is a respective drainage strip above
each of the two wire belts in the second section of the twin wire
zone, and at least one of the two drainage strips is supported
resiliently against the respective wire belt while the other may
or may not be resiliently supported, and typically is rigidly
15   supported against the respective wire belt. Preferably, there are
at least two of the drainage strips and often more against each
of the wire belts. The drainage strips against one belt are
offset along the path of the wire belts with respect to the
drainage strips against the other belt, providing a zig zag or
20   staggered array, and the drainage strips against at least one of
the belts are resiliently supported.

The inventors have found that a combination of known
features, namely:

A.          Twin-wire former without a single-wire pre-drainage
25              zone or at least without a single-wire pre-drainage
               zone of any substantial length such as to cause any
               appreciable pre-drainage

B.          Start of the drainage in the twin-wire zone at a
               preferably curved drainage element, for instance on a
30              rotating forming cylinder or, even better, on a curved
               stationary forming shoe

C.          Further drainage in the twin-wire zone between strips
               which are arranged along a "zig-zag" line, the strips
               which rest against the one wire belt being resiliently
35              supported,

JFI0204640

leads to an extremely high increase in the quality of the
finished fiber web, so that it satisfies even the highest
requirements. At the same time, the twin-wire former of the
invention is insensitive to changes in the amount of suspension
5    fed and to changes in the drainage behavior of the fiber
suspension. Experiments have shown that it is possible by the
invention to obtain both a high increase in quality with respect
to the formation and also good values with regard to the
retention of fillers and fines. In contradistinction to this, in
10   the known double-wire formers it is constantly found that there
is a strong reduction in the retention upon an improvement in the
formation.

It was, furthermore, found in experiments that in the
second section of the twin-wire zone the number of strips can be
15   considerably reduced as compared with the "Duoformer D". However,
this number is substantially greater than in the case of the
twin-wire former known from British Patent 1 125 906. It is
advantageous to increase the distance between adjacent strips as
compared with the "Duoformer D". In particular, the drainage
20   strips above each one of the wire belts are of a thickness along
the path of the wire belts and the spacing between adjacent
strips above each wire belt is a minimum of about three times the
strip thickness.

To be sure, from German OS 31 38 133, FIG. 3, a
25   twin-wire former is known the twin-wire zone of which is provided
in a first section with a curved stationary drainage element and
in a second section with strips arranged along a "zig-zag" line,
which strips may also be resiliently supported and there being a
relatively large distance between them. However, in that case, in
30   front of the twin-wire zone there is a single-wire pre-drainage
zone in which the forming of the web starts initially only in a
lower layer of the fiber suspension fed while the upper layer
remains liquid and tends very strongly to flocculation. It has
been found that these flakes cannot be broken up again to the
35   desired extent in the following twin-wire zone. Another
disadvantage is that the twin-wire zone is diverted by a guide

JFI0204641

roll (14b) behind the second section. This results (due to the
so-called table-roll effect) in a further drainage which is
uneven over the width of the web and thus in undesired variations
in the quality of the web (recognizable, for instance, by
5      disturbing longitudinal stripes).

BRIEF DESCRIPTION OF THE DRAWINGS
        Other developments of the invention will be explained
below with reference to embodiments which are shown in the
drawing. Each of FIGS. 1 to 5 shows in simplified diagrammatic
10     form one of the different embodiments.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS
        The twin-wire former shown in FIG. 1 has a
substantially horizontally extending twin-wire zone; this zone
comprises three sections I, II and III arranged one behind the
15     other. The endless wire belts (lower wire 11 and upper wire 12),
shown only in part, travel in the direct vicinity of a headbox 10
over, in each case, a breast roll 13 and 14 respectively, so that
the two wire belts together form a wedge-shaped entry slot 15 at
the start of the twin-wire zone. The jet pulp discharged by the
20     headbox 10 comes into contact with the two wire belts 11 and 12
only at the place where the lower wire 11 in the first section I
of the twin-wire zone travels over a stationary curved forming
shoe 16. The curved travel surface thereof is formed of several
strips 16' with drainage slits present between them. The distance
25     between the two breast rolls 13 and 14 is variable. The forming
shoe 16 can be operated with or without vacuum. Additionally,
although it is preferable that the forming shoe 16 be curved, a
straight forming shoe may also be used in certain situations.
        In the second section II of the twin-wire zone, the two
30     wire belts 11 and 12 (with the partially still liquid fiber
suspension present between them) travel between a lower drainage
box 17 and an upper drainage box 18. In the lower drainage box 17
there are a row of at least two strips 27 (preferably of
35     approximately rectangular cross section) which are pressed from

JFI0204642

below resiliently against the lower wire 11. For this purpose, they are supported, for instance, on springs 24 (or pneumatic pressure cushions) on a, preferably water-permeable, plate. It is obvious that the force of the springs (or of the pressure

5    prevailing in the pressure cushions) is individually adjustable.

The upper drainage box 18 is suspended on both the front and rear ends on vertically displaceable support elements as indicated diagrammatically by double arrows. On its lower side, there is a row of at least three strips 28 of preferably

10    parallelogram cross section which rest against the upper side of the upper wire 12 and are rigidly attached to the box 18. Above the strips 28, a front vacuum chamber 21 and a rear vacuum chamber 22 are present in the drainage box 18.

Each of the upper strips 28 scrapes off water from the

15    wire 12. Accordingly, the amount of water scraped off decreases in the direction of flow of the wire 12 from strip to strip. The drainage water from each of the strips 28 except the drainage water scraped off by the first strip may be drained away jointly. However, it is disadvantageous to also include the drainage water

20    from the first strip 28 since this generally would disturb the operation of the other strips. Accordingly, a vertical channel 21a is positioned in front of the first upper strip 28 to carry away or collect the water scraped off by the first strip 28.

In the region of the forming shoe 16, a part of the

25    water of the fiber suspension is led off downward; another part penetrates due to the tension of the upper wire 12-upwards through the upper wire and is deflected by the furthest in front of the strips 28 into the front vacuum chamber 21. The water passing upward between the upper strips 28 enters into the rear

30    vacuum chamber 22. The water penetrating between the lower strips 27 through the lower wire 11 is led off downward. Between adjacent upper drainage strips 28 there is a minimum distance X of about three times the thickness Y of the strips. The same is true of the lower resiliently supported strips 27. It is

35    important that each of the strips 27 and 28 lies in the region of a space between two opposite strips so that a "zig-zag"

SPEC\132870                    -7-

JFI0204643

arrangement (i.e. non-opposing relationship) is present. Also, as seen in FIG. 1, the first one of the strips 28 is located upstream of the first one of the strips 27. The two wires 11 and 12 preferably travel on a straight path through section II..
5    Gentle curvature of this section of the path is, however, also possible; see FIGS. 2 and 5. Differing from FIG. 1, the resiliently supported strips could also be arranged in the upper box 18 and the firmly supported strips in the lower box 17. In the third section III of the twin-wire zone, both wire belts 11
10   and 12 travel over another preferably curved forming shoe 23 which (as shown) is arranged preferably in the lower wire loop 11. Behind it, an additional strip 29 with vacuum chamber 30 can be arranged in the loop of the upper wire 12. Furthermore, flat suction boxes 31 can be present in the loop of the lower wire.
15   There (as is shown by dash-dot lines) the upper wire 12 can be separated by means of a guide roll 19 from the lower wire 11 and from the fiber web formed. Lower wire and fiber web then travel over a wire suction roll 20. The guide roll 19 can, however, also lie further back, so that the upper wire 12 is separated from the
20   lower wire 11 only on the wire suction roll 20.

It is important that two drainage boxes 17 and 18 with the alternately resiliently and firmly supported ledge strips 27 and 28 lie not in the front or the rear sections but in the middle section II of the twin-wire zone, since only here can they
25   develop their full effect, namely, intensive drainage of the fiber suspension fed while retaining the fine flocculation-free fiber distribution. This is achieved in the manner that the corresponding wire belt is imparted a slight (scarcely visible) deflection on each strip so that turbulence is constantly
30   produced in the still liquid part of the fiber pulp. For success it is, however, also decisive that previously, in section I, a known pre-drainage towards both sides has already taken place and that this also takes place with the greatest possible retention of the flocculation-free condition of the fiber suspension.
35   For this two-sided pre-drainage, a stationary preferably curved forming shoe is provided in the first section I

SPEC\132870                    -8-

of the twin-wire zone (in accordance with FIGS. 1 and 3-5)
whenever it is a question of satisfying the highest quality
demands with respect to the formation. This effect of the forming
shoe is due to the fact that at least the one wire belt travels
5      polygonally from strip to strip, each strip not only leading
water away but also producing turbulence in the pulp which is
still liquid. With such a forming shoe, it is, however, difficult
at times to obtain a stable operating condition upon the starting
of the paper machine. Therefore, it may be advantageous to
10     provide a known forming roll 40 in accordance with FIG. 2 in
Section I instead of the stationary forming shoe and the breast
roll lying in front of it. This possibility will be utilized
when, in particular, the highest productivity is demanded from
the paper manufacturing machine.

15         In the third section III, the aforementioned strip 29
can serve either solely to lead away water upwards or, in
addition, for the further production of turbulence (for further
improvement in quality). The latter is possible if a part of the
fiber pulp is still in liquid condition at this place.

20         In FIGS. 1 to 3, the distance between the two wires 11
and 12 in the twin-wire zone has been shown greatly exaggerated.
By this, it is intended to make it clear that the two wires 11
and 12 converge towards each other over a relatively long path
within the twin-wire zone. This makes it clear that the process
25     of web-forming on the first forming shoe 16 (in Section I)
commences relatively slowly and is completed only in Section III.
In this connection, the end of the main drainage zone in which
the two wires converge towards each other (and thus, the end of
the web-forming process) can lie approximately in the center of
30     the wrapping zone of the second forming shoe 23, as is indicated,
merely by way of example, in FIGS. 1 to 3. The end of the wire
convergence is symbolically indicated there by the point E; the
solids content of the paper web has reached there approximately
the value of 8%. This point can, however, also lie, for instance,
35     on one of the flat suction boxes 31. Behind this point, it is
attempted further to increase the solids content, if possible

SPEC\132870                        -9-

JFI0204645

even before the separation of the two wires. One goal is, namely,
for the separation of the wires to take place with the highest
possible solids content of the web so that as few fibers as
possible are torn out of the web upon the separation. The nature
5    and number of the drainage elements necessary for this within the
twin-wire zone may, however, differ greatly and is dependent,
among other things, on the type of paper and the raw-material
components thereof, as well as on the operating speed.

10    The embodiments shown in FIGS. 2 and 3 differ from the
others primarily by the fact that the twin-wire zone rises
substantially vertically upward in the direction of travel of the
wires. In this way, the removal of the water withdrawn from the
fiber suspension is simplified since the water can be discharged
relatively uniformly towards both sides. No vacuum chambers are
15    required in particular in the central section II of the twin-wire
zone. To be sure, the forming roll 40 of FIG. 2 is, as a rule,
developed as a suction roll. The forming shoes 16, 23,
particularly those arranged in the third section III, can, if
necessary, be provided with a suction device.

20    Further elements of the twin-wire former shown in FIG.
2 are water-collection containers 41, 42 and 43, guide plates 44
associated with the fixed strips 28, and a water removal strip
45. The other elements are provided with the same reference
numbers as the corresponding elements in FIG. 1. The same is true
25    with regard to FIG. 3. One possible modification of FIG. 3 can
consist therein that, instead of the wire suction roll 20, a
forming roll is provided, and instead of the guide roll 19 the
wire suction roll. A similar arrangement is known from German
Utility Model 88 06 036 (Voith File: P 4539). Aside from this
30    exception and aside from the embodiment according to FIG. 2 (with
forming roll 40), the invention will, however, be used whenever
possible-so to design the twin-wire former that the relatively
expensive forming roll (as to purchase and operation) can be
dispensed with. Thus, as a rule, the wire suction roll 20 is
35    present as the sole suction roll. Furthermore, in all embodiments
of the invention it can be seen to it that no guide roll which

JFI0204646

deflects the twin-wire zone (and has the above-mentioned
injurious table-roll effect) is present.

The embodiment of FIG. 4 differs from FIG. 1 among
other things by the fact that, in the first section I of the

5    twin-wire zone, a second curved stationary forming shoe 16a is
arranged in the loop of the lower wire 11 behind and spaced from
a first curved stationary forming shoe 16. Furthermore, in the
loop of the upper wire 12 in the region between the two
stationary forming shoes 16 and 16a there is provided an

10   individual strip 50 which in known manner is part of a vacuum
chamber 51. This vacuum chamber 51, similar to the upper drainage
box 18 of FIG. 1, is suspended on its front and rear ends in
vertically displaceable mounts. In this way, both the depth of
penetration of the strip 50 into the path of travel of the upper

15   wire 12 as well as the angle of attack of the strip 50 can be
varied. With slight depth of penetration, the strip 50 serves
solely for removal of water, while with greater depth of
penetration it serves, in addition, for the production of
turbulence in the suspension and, thus, for improvement of the

20   formation. By the presence of two separate forming shoes 16 and
16a, the pre-drainage on both sides is temporarily interrupted;
it is only continued after the strip 50 has removed from the
upper wire 12 the water which has penetrated upward on the first
forming shoe 16. In this way, higher operating speeds are

25   possible.

Another difference from FIG. 1 is that, in the second
section II of the twin-wire zone, the lower, flexibly supported
strips 57 and the upper, firmly supported strips 58 are developed
as individual strips. This means that each strip has its own

30   supporting body 55/56. The lower strip-supporting bodies 55 are
swingably mounted, the strip 57 being pressed resiliently by the
force of springs 54 against the bottom of the lower wire 11. The
supporting body 56 of each of the upper strips 58 is developed as
vacuum chamber in the same way as that of the strip 50. The

35   suspension of these vacuum chambers 56 corresponds to that of the
vacuum chamber 51. It is important that each of the strips 57 and

SPEC\132870                         -11-

JFI0204647

58 rest with a given force of application (corresponding to the
suspension pressure) against its wire belt 11 or 12. The strips
57 and 58 are adjusted in such a manner that a slight deflection
of the wire belts takes place preferably on each strip. Due to
5    the resilient supporting of the lower strips 57, the adjustment,
once effected, is insensitive to changes in the quantity or
quality of pulp, so that no backing up takes place in front of
the strips and, nevertheless, an effective introduction of
turbulence forces into the fiber suspension takes place. In
10   contradistinction to FIGS. 1 to 3, there is the possibility of
adjusting each one of the strips 57/58 individually with respect
to position in height and inclination relative to the travel path
of the wire. In this way, one can even better control the quality
of the paper produced, with respect to both the formation and the
15   nature of its surface (printability). Differing from FIG. 4, the
upper strips 58 could be supported resiliently and the lower
strips 57 stationary. Another alternative could consist therein
that not only the upper strips 58 but also the lower strips 57
are fastened in vertically displaceable mounts (as shown on the
20   vacuum chamber 51). In such case, the springs 54 might possibly
be eliminated.

Another difference between FIGS. 1 and 4 resides in the
fact that in FIG. 4 the twin-wire zone rises in the direction of
travel of the wires upwards with an inclination of, on the
25   average, about 20° with respect to the horizontal. In this way,
it is possible to keep the entire height of the twin-wire former
relatively slight. In the third section III of the twin-wire
zone, a flat forming shoe 23' is provided rather than a curved
one, differing from FIG. 1. The separation of the upper wire 12
30   from the lower wire and the fiber web formed can take place, as
in FIG. 1, on one of the flat suction boxes 31. Instead of this,
however, the upper wire 12 can also be conducted up to the wire
suction roll 20. There, as shown, it can wrap around a small part
(or, alternatively, a larger part) of the circumference of the
35   wire suction roll and then be returned via the reversing roll 19.

In the embodiment shown in FIG. 5, the twin-wire zone,

SPEC\132870                          -12-

as a whole, extends substantially in horizontal direction. The
individual elements are substantially the same as in the
embodiment of FIG. 4. However, there is the difference that the
drainage strips 57 and 58 lying in the second section II of the

5    twin-wire zone are arranged along a downwardly curved path of the
twin-wire zone. Accordingly, an upwardly curved forming shoe 16,
23 is provided in the first section I and in the third section
III of the twin-wire zone. This embodiment is advisable, in
particular, for the modernizing of existing Fourdrinier paper

10    machines.

The embodiments shown have the feature in common that,
in the second section II of the twin-wire zone, there are present
preferably n flexibly supported strips 27/57 and n + 1 rigidly
supported strips. However, it is also possible to make the number

15    of flexibly supported strips equal to or greater by one than the
number of rigidly supported strips. Instead of a rigidly
supported strip, a feed or discharge edge of a drainage box can
also be provided. The minimum number n of flexibly supported
strips is two (see FIG. 4). However, three or four flexibly

20    supported strips are preferred.

JFI0204649

CLAIMS

What is claimed is:

1. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for

5   forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone of a substantial length;

each wire belt forming an endless loop;

10   the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and

15   directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin

20   wire zone; in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted

25   in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt, that the strips contacts;

30   second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream one of the drainage strips;

JFI0204650

second means separate from the first means for
35   collecting the water drained from the fiber suspension by all of
the other drainage strips; and
        the twin wire zone having a third section following the
second section along the path of the wire belts through the twin
wire zone; a second drainage element in the third section for
40   being engaged by one of the wire belts as the wire belts travel
over the second drainage element.

        2.  The twin wire former of claim 1, wherein the first
drainage element is stationary.

        3.  The twin wire former of claim 2, wherein the first
45   drainage element is curved and is engaged by one of the wire
belts for curving the path of the belts around the curved
drainage element after the entrance of the suspension into the
entrance slot.

        4.  The twin wire former of claim 3, wherein the first
drainage element has an open surface to enable drainage of water
from the fiber suspension.

        5.  The twin wire former of claim 1, wherein the twin
wire zone is free of rolls which deflect the twin wire zone.

        6.  The twin wire former of claim 1, wherein the twin
wire zone is free of any forming rolls.

        7.  The twin wire former of claim 1, wherein the first
drainage strips are located within the same wire belt loop as the
first drainage element and the second drainage strips are located
within the other wire belt group.

        8.  The twin wire former of claim 7, wherein the first
one of the second drainage strips is located upstream of the
first one of the first drainage strips and the last one of the

JFI0204651

second drainage strips is located downstream of the last one of the first drainage strips.

9.    The twin wire former of claim 1, further comprising means for supplying a vacuum in the area of the second drainage strips.

10.    The twin wire former of claim 1, wherein each of the drainage strips has a respective thickness in the direction along the path through the twin wire zone; neighboring ones of the first drainage strips are spaced a minimum distance of about three times the respective first strip thickness, and neighboring ones of the second drainage strips are also spaced a minimum distance of about three times the respective second strip thickness.

11.    The twin wire former of claim 1, wherein the support means for the second drainage strips include means enabling adjustment of the position of the second drainage strips relative to the second wire belt to set the initial rigid position thereof.

12.    The twin wire former of claim 11, wherein the support means for the second drainage strips comprise a support body to which the second drainage strips are supported, and bearings on which the support body is supported for enabling displacement of the support body across the path of the wire belts through the second section.

13.    The twin wire former of claim 1, wherein the first and second support means comprise a respective individual support body supporting each of at least one of the first and second drainage strips individually, and means supporting the respective support body for each strip to be displacable for enabling displacement of the respective strip transverse to the direction of the path of the wire belts.

JFI0204652

14. The twin wire former of claim 1, wherein the first and second support means comprise a respective individual support body supporting each of the first and second drainage strips individually and means further supporting the respective support body of at least one of the first and second strips for enabling said at least one strip to be moved transverse to the direction of the path of the wire belts.

15. The twin wire former of claim 1, further comprising a curved stationary forming shoe in the first section of the twin wire zone and following after and spaced from the curved drainage element along the path of the wire belts through the first section;

a first section strip disposed at the second wire belt and in the space between the curved drainage element and the curved stationary forming shoe in the first section of the twin wire zone along the path of the wire belts through the twin wire zone for enabling removal of water from the second wire belt.

16. The twin wire former of claim 1, wherein the second drainage element in the third section of the twin wire zone is stationary.

17. The twin wire former of claim 16, wherein the second drainage element is curved.

18. The twin wire former of claim 17, wherein the second drainage element has a curvature that is curved in the same direction as the curvature of the curved drainage element in the first section of the twin wire zone.

19. The twin wire former of claim 18, further comprising an additional strip in the third section of the twin wire zone following the second drainage element and disposed against the other wire belt than the stationary drainage element.

SPEC\132870                          -17-

JFI0204653

20. The twin wire former of claim 18, wherein the first drainage element in the first section of the twin wire zone and the second drainage element in the third section of the twin wire zone are arranged against the same one of the first and second wire belts.

21. The twin wire former of claim 1, further comprising a suction roll at one of the wire belts and located after the first drainage element along the path of the wire belts; both of the wire belts being wrapped about part of the circumference of the suction roll

22. The twin wire former of claim 1, wherein the means for directing the wire belts are positioned so that the twin wire zone rises substantially vertically upwardly in the path of travel of the wire belts through the twin wire zone.

23. The twin wire former of claim 1, wherein the means for directing the wire belts are positioned so that the twin wire zone rises gradually upwardly along the path of travel of the wire belts through the twin wire zone at an incline with respect to the horizontal in the range of about 10° to 30°.

24. The twin wire former of claim 1, wherein the first and the second drainage strips in the second section of the twin wire zone are both arranged one after the other along the path of the wire belts through the twin wire zone so as to define a curvature for the path of the wire belts through the second section.

25. The twin wire former of claim 24, wherein the first and second drainage strips are positioned in the second section of the twin wire zone to define a curvature for the path of the wire belts through the second section of the twin wire zone that is opposite the curvature of the curved drainage element in the first section of the twin wire zone.

SPEC\132870                                              -18-

26. The twin wire former of claim 1, wherein the means for directing the wire belts are positioned so that the twin wire zone extends substantially horizontally;

the first drainage element in the first section of the twin wire zone being generally curved upwardly for giving the path of the wire belts through the first section of the twin wire zone a generally upward curve; the first and second drainage strips in the second section of the twin wire zone being so positioned as to give the wire belts a generally downward curvature through at least part of the second section of the twin wire zone and the stationary drainage element in the third section of the twin wire zone is curved in a direction to give the wire belts passing through the third section of the twin wire zone a generally upward curvature.

27. The twin wire former of claim 1, wherein the ~~stationary~~ *second* drainage element is curved.

28. The twin wire former of claim 1, wherein the ~~stationary~~ *second* drainage element includes means for providing suction thereto to facilitate drainage of water.

29. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone of a substantial length;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and

SPEC132870                              -19-

JFI0204655

15    directed for delivering fiber suspension from the headbox to the
      wedge shaped entrance slot of the first section of the twin wire
      zone;

            the twin wire zone having a second section following
      the first section along the path of the belts through the twin
20    wire zone; in the second section, a plurality of first drainage
      strips are positioned within the loop of the first wire belt and
      are for contacting the first wire belt; in the second section, a
      plurality of second drainage strips are positioned within the
      loop of the second wire belt and are for contacting the second
25    wire belt; the first strips being shifted in position along the
      path of the wire belts with respect to the second strips so that
      the first and second strips are offset and in a non-opposing
      relationship; first support means for resiliently supporting the
      first drainage strips against the respective wire belt that strips
30    contacts, the last one of the second drainage strips being
      located downstream of the last one of the first drainage strips;
            second support means supporting the second drainage
      strips rigidly against the second wire belt;
            the twin wire zone having a third section following the
35    second section along the path of the wire belts through the twin
      wire zone; a drainage element in the third section for being
      engaged by one of the wire belts as the wire belts travel over
      the drainage element, the drainage element having an open surface
      to enable water to be drained through the wire belt in contact
40    therewith; and
            the twin wire zone being free of rolls which deflect
      the twin wire zone.

            30.  A twin-wire former for the production of a paper
      web from a fiber suspension, the twin wire former comprising:
            first and second web forming wire belts, means for
      directing the wire belts to travel along a path together for
5     forming a twin wire zone of the twin wire former, with the web
      between the wire belts as the wire belts travel along the path

SPEC\132870                        -20-

through the twin wire zone, neither wire belt defining a single
wire predrainage zone of a substantial length;

each wire belt forming an endless loop;

10      the twin wire zone having a first section which
includes a first drainage element at the start of the path
through the twin wire zone, means for supporting the belts for
forming a wedge shaped entrance slot into the first section, a
fiber suspension supplying headbox having an outlet placed and

15      directed for delivering fiber suspension from the headbox to the
wedge shaped entrance slot of the first section of the twin wire
zone;

the twin wire zone having a second section following
the first section along the path of the belts through the twin

20      wire zone; in the second section, a plurality of first drainage
strips are positioned within the loop of the first wire belt and
are for contacting the first wire belt; in the second section, a
plurality of second drainage strips are positioned within the
loop of the second wire belt and are for contacting the second

25      wire belt; the first strips being shifted in position along the
path of the wire belts with respect to the second strips so that
the first and second strips are offset and in a non-opposing
relationship; first support means for resiliently supporting the
first drainage strips against the respective wire belt that strip

30      contacts, the last one of the second drainage strips being
located downstream of the last one of the first drainage strips;

second support means supporting the second drainage
strips rigidly against the second wire belt;

the twin wire zone having a third section following the

35      second section along the path of the wire belts through the twin
wire zone; a drainage element in the third section for being
engaged by one of the wire belts as the wire belts travel over
the stationary drainage element; and

the twin wire zone being free of any forming rolls.

SPEC\132870                    -21-

JFI0204657

08/556769

5718805

Fig.1



Fig.2

Fig.3



JFI0204658

00/556769



Fig.4



Fig.5

JFI0204659

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/556769



Fig.1

Fig.2

Fig.3

JFI0204660

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/556769



Fig.4



Fig.5

JFI0204661

P/14-363

<u>INVENTORS DESIGNATION SHEET</u>

TITLE:  TWIN WIRE FORMER

PRIORITY CLAIMED UNDER 35 U.S.C. §119:  Convention Date August
22, 1989 for German Appln. S.N. P 39 27 597.3


INVENTOR #1:        Rudolf BUCK
RESIDENCE:          D-7920 Heidenheim
P.O. ADDRESS:       Schlosshaustr. 53
                    D-7920, Heidenheim, Germany
CITIZENSHIP:        Germany


INVENTOR #2:        Dieter Egelhof
RESIDENCE:          D-7920 Heidenheim
P.O. ADDRESS:       Lucas-Cranach-Str. 15
                    D-7920 Heidenheim, Germany
CITIZENSHIP:        Germany


INVENTOR #3:        Klaus HENSELER
RESIDENCE:          D-7920 Heidenheim
P.O. ADDRESS:       Wildstr. 20
                    D-7920 Heidenheim, Germany
CITIZENSHIP:        Germany


INVENTOR #4:        Werner KADE
RESIDENCE:          Neenah, Wisconsin 54956
P.O. ADDRESS:       521 Harbor Light Court
                    Heenah, Wisconsin 54956, USA
CITIZENSHIP:        Germany


INVENTOR #5:        Albrecht MEINECKE
RESIDENCE:          D-7920 Heidenheim
P.O. ADDRESS:       Hans-Holbein-Str. 39
                    D-7920 Heidenheim, Germany
CITIZENSHIP:        Germany


INVENTOR #6:        Wilhelm WANKE
RESIDENCE:          D-7920 Heidenheim
P.O. ADDRESS:       Donauschwabenstr. 47
                    D-7920 Heidenheim, Germany
CITIZENSHIP:        Germany


MISC\135076

JFI0204662

<u>INVENTORS DESIGNATION SHEET Cont.</u>

| | |
|---|---|
| INVENTOR #7: | Hans-Jurgen WULZ |
| RESIDENCE: | D-7920 Heidenheim |
| P.O. ADDRESS: | Inselstr. 11 |
| | D-7920 Heidenheim, Germany |
| CITIZENSHIP: | Germany |

SEND CORRESPONDENCE TO:

<u>OSTROLENK, FABER, GERB & SOFFEN</u>
1180 Avenue of the Americas
New York, New York  10036-8403

Telephone No.:  212-382-0700

Attention:  <u>Martin Pfeffer</u>
            Registration No. 20,808

MISC\135076

JFI0204663

# EXHIBIT G



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/556,769 | 11/02/95 | EGELHOF | | P/14-363 |

|  | EXAMINER |
|---|---|
|  | HASTINGS, K |
| ART UNIT | PAPER NUMBER |

13M1/1004

OSTROLENK FABER GERB & SOFFEN
1180 AVENUE OF THE AMERICAS
NEW YORK NY 10036-8403

1303
**DATE MAILED:**

10/04/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on *Prelim Amdt* 9-19-96    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.           2. ☒ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.               4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _____1 - 31_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _____1 - 31_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☒ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☒ been filed in parent application, serial no. 055919; filed on 4/29/93    *PCR*

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other \

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

JFI0204698

Serial Number: 08/556,769                                    -2-

Art Unit: 1303

Claims 1-31 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claim 1, 29, 30 line 8 "of a substantial length" is relative and thus indefinite; how long/short may be length be to be substantial/not substantial?  This phrase must be deleted. Furthermore the original specification teaches "without a single wire predrainage zone"  The addition of "at least without... of any substantial length is deemed to be new matter not supported by the original specification, thus WO 91/02842 is available as prior art against these claims.

Claim 1 it is unclear which strips first and second means for collecting water is meant for, all of the first and second drainage strips are implied in the current language, yet that is not clear nor supported by the specification.  It appears that --second-- should be inserted before "drainage" on line 33 and line 36 of claim 1 to be clear and consistent with the specification.

Claim 10 line 2 delete the quotation marks as unnecessary.

The non-statutory double patenting rejection, whether of the obviousness-type or non-obviousness-type, is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or

JFI0204699

Serial Number: 08/556,769                                    -3-

Art Unit: 1303

improper timewise extension of the "right to exclude" granted by a patent. *In re Thorington,* 418 F.2d 528, 163 USPQ 644 (CCPA 1969); *In re Vogel,* 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Van Ornum,* 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Longi,* 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); and *In re Goodman,* 29 USPQ2d 2010 (Fed. Cir. 1993).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(b) and (c) may be used to overcome an actual or provisional rejection based on a non-statutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.78(d).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 1-31 are rejected under the "judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-18 and claims 1, 2 of U.S. Patent No. 5,389,206 and 5,500,091, respectively. Although the conflicting claims are not identical, they are not patentably distinct from each other because the instant claims are merely of slightly differing scope from those of the two patents; for example it would have been prima facie obvious to eliminate the stationary feature of claim 1, of '206 patent or to use first and second means for collecting water as claimed in claim 1 of this case as such is conventional and well known to the artisan and in any event this feature was disclosed in both '206 and '091 specification and could have been claimed in those cases.

Claims 1-31 are rejected under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as

Serial Number: 08/556,769                                          -4-

Art Unit: 1303

obvious over WO 91/02842 or under 35 USC 103 as obvious over WO

842 in view of Halme et al.

    Each independent claim contains a limitation not disclosed

in the parent specification re: "neither wise belt defining a

single wire predrainage zone of a substantial length" (emphasis

provided) Applicants are therefore only entitled to the instant

filing date of Nov 25, 1995 for these claims and WO '842 is

available as prior art.  See In re Van Langehoven 173 USPQ 426.

    WO 842 teaches everything in these claims except there is no

single wire predrainage zone which is encompassed by the

language.  However the language also encompasses that there can

be a predrainage zone and if necessary Halme et al is cited as

teaching the alternative of a gap former with no single wire

predrainage zone or having such a zone.  Thus it would have been

prima facie obvious to have such a zone in WO '842 as a known

alternative configuration in this art.

    Claims 1-4, 7-28 and 31 are rejected under 35 U.S.C. § 103

as being unpatentable over Tissari or Koski in view of DE '133,

further in view of Nyman or WO 86/04368 or Nevalainen et al.

    Tissari, especially Fig 6, shows almost every feature of

claim 1 except it does not specify that strips 44 are resiliently

supported or first/second means for collecting water.

JFI0204701

Serial Number: 08/556,769                                    -5-

Art Unit: 1303

    Likewise Koski shows almost every feature of claim 1 except resilient support of strips 17 or 37 (note one can view Koski either roll 21 or roll 15 as curved drainage element and then strips 17 or 37 respectively as strips in same belt loop as curved drainage element) and first and second means for collecting water.

    However the artisan is well aware of the option and advantages of resiliently supported strips means for collecting water, and vacuum means (claim 9) as evidenced by DE '133. Thus it would have been prima facie obvious to resiliently support at least one or more of the appropriate strips in either reference for the known advantages of same. Furthermore to use vacuum means (claim 9) for the well known advantage of increased dewatering is also prima facie obvious to the artisan and is simply suggested by both DE '133 and Tissari or Koski when viewed as a whole; see for example Tissari col 7 line 59 to col 8 line 2. Note DE '133 Fig 3 can have suction in both the upper and/or lower box to aid dewatering.

    In addition, when using vacuum for the second upper drainage strips especially, it is well known and conventional to use a separate collecting means for the first strip versus all the other strips - see for example Nyman's first slot for first strip

JFI0204702

Serial Number: 08/556,769                                    -6-

Art Unit: 1303


versus subsequent collecting means, WO 86/04368 also depicts this

feature as well as Nevalainen et al.  Also to have individual

water collectors for each strip is suggested by Tissari Fig 5

element 40.

    Furthermore, even without a reference, providing means to

collect water stripped off by dewatering elements is conventional

in this art, and absent evidence of unexpected results or

criticality, to optimize how many and where the means for

collecting water are located would have been prima facie obvious.

    Claims 5 and 6 would be allowable if rewritten to overcome

*and the obvious type patenting rejection*

the rejection under 35 U.S.C. 112 ˄ and to include all of the

limitations of the base claim and any intervening claims.

*(Claims 29, 30 are allowable, if a terminal disclaimer is filed to overcome obv type double patenting rejection)*

    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Exr.
Hastings whose telephone number is (703) 308-0470.  The examiner
can normally be reached on Monday-Thursday from 6:30 AM to 5:00
PM.

    If attempts to reach the examiner by telephone are
unsuccessful, the examiner's supervisor, Mr. Don Czaja, can be
reached on (703) 308-3852.  The fax phone number for this Group
is (703) 305-7115.

    Any inquiry of a general nature or relating to the status of
this application or proceeding should be directed to the Group
receptionist whose telephone number is (703) 308-0651.


Exr Hastings/krb
October 3, 1996

                     HASTINGS
                  PR    EXAMINER
                  ART UNIT 133

            10-4-96

JFI0204703

# EXHIBIT H



P/14-363

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of    New York, New York
Rudolf BUCK et al.        Date:  March 4, 1997
Serial No.:  08/556,769    Group Art Unit:  1303
Filed:  November 2, 1995   Examiner:  K. Hastings
For:  TWIN WIRE FORMER

---------------------------------------------------------

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

AMENDMENT

Sir:

      Responsive to the Office Action dated October 4, 1996,
please amend the above-identified application as follows:

IN THE CLAIMS:

      Please cancel claims 1-4, 7-28 and 31 without
prejudice.

      Please amend the claims as follows:

     1 5.  (Amended) A twin-wire former for the production of
a paper web from a fiber suspension, the twin wire former
comprising:
      first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone;
      each wire belt forming an endless loop;
      the twin wire zone having a first section which
includes a first drainage element at the start of the path

AMDT\192257

JFI0204707

through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section; a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element. [The twin wire former of claim 1, wherein] the twin wire zone being [is] free of rolls which deflect the twin wire zone.

26. (Amended)    A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

JFI0204708

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire zone;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, a plurality of first drainage strips are positioned for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact;

second support means supporting the second drainage strips rigidly against the second wire belt;

first means for collecting the water drained from the fiber suspension by the most upstream one of the drainage strips;

second means separate from the first means for collecting the water drained from the fiber suspension by all of the other drainage strips; and

the twin wire zone having a third section following the second section along the path of the wire belts through the twin

JFI0204709



<u>wire zone; a second drainage element in the third section for
being engaged by one of the wire belts as the wire belts travel
over the second drainage element,</u> [The twin wire former of claim
1, wherein] the twin wire zone <u>being</u> [is] free of any forming
rolls.

29.    (Twice Amended)  A twin-wire former for the
production of a paper web from a fiber suspension, the twin wire
former comprising:

first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone [of a substantial length];

each wire belt forming an endless loop;

the twin wire zone having a first section which
includes a first drainage element at the start of the path
through the twin wire zone, means for supporting the belts for
forming a wedge shaped entrance slot into the first section, a
fiber suspension supplying headbox having an outlet placed and
directed for delivering fiber suspension from the headbox to the
wedge shaped entrance slot of the first section of the twin wire
zone;

the twin wire zone having a second section following
the first section along the path of the belts through the twin
wire zone; in the second section, a plurality of first drainage
strips are positioned within the loop of the first wire belt and
are for contacting the first wire belt; in the second section, a
plurality of second drainage strips are positioned within the
loop of the second wire belt and are for contacting the second
wire belt; the first strips being shifted in position along the
path of the wire belts with respect to the second strips so that
the first and second strips are offset and in a non-opposing
relationship; first support means for resiliently supporting the
first drainage strips against the respective wire belt that the

JFI0204710

strips contact, the last one of the second drainage strips being
located downstream of the last one of the first drainage strips;

    second support means supporting the second drainage
strips rigidly against the second wire belt;

    the twin wire zone having a third section following the
second section along the path of the wire belts through the twin
wire zone; a second drainage element in the third section for
being engaged by one of the wire belts as the wire belts travel
over the second drainage element, the second drainage element
having an open surface to enable water to be drained through the
wire belt in contact therewith; and

    the twin wire zone being free of rolls which deflect
the twin wire zone.

    70. (Twice Amended)  A twin-wire former for the
production of a paper web from a fiber suspension, the twin wire
former comprising:

    first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone [of a substantial length];

    each wire belt forming an endless loop;

    the twin wire zone having a first section which
includes a first drainage element at the start of the path
through the twin wire zone, means for supporting the belts for
forming a wedge shaped entrance slot into the first section, a
fiber suspension supplying headbox having an outlet placed and
directed for delivering fiber suspension from the headbox to the
wedge shaped entrance slot of the first section of the twin wire
zone;

    the twin wire zone having a second section following
the first section along the path of the belts through the twin
wire zone; in the second section, a plurality of first drainage
strips are positioned within the loop of the first wire belt and

JFI0204711

are for contacting the first wire belt; in the second section, a plurality of second drainage strips are positioned within the loop of the second wire belt and are for contacting the second wire belt; the first strips being shifted in position along the path of the wire belts with respect to the second strips so that the first and second strips are offset and in a non-opposing relationship; first support means for resiliently supporting the first drainage strips against the respective wire belt that the strips contact, the last one of the second drainage strips being located downstream of the last one of the first drainage strips;

second support means supporting the second drainage strips rigidly against the second wire belt;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section for being engaged by one of the wire belts as the wire belts travel over the second drainage element; and

the twin wire zone being free of any forming rolls.

Please add the following new claims 32 and 33:

32. A twin-wire former for the production of a paper web from a fiber suspension, the twin wire former comprising:

first and second web forming wire belts, means for directing the wire belts to travel along a path together for forming a twin wire zone of the twin wire former, with the web between the wire belts as the wire belts travel along the path through the twin wire zone, neither wire belt defining a single wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which includes a _single_ first drainage element at the start of the path through the twin wire zone, means for supporting the belts for forming a wedge shaped entrance slot into the first section, a fiber suspension supplying headbox having an outlet placed and directed for delivering fiber suspension from the headbox to the wedge shaped entrance slot of the first section of the twin wire

AMDT\192257

JFI0204712

zone; a curved drainage element in the first section, the curved
drainage element having an open surface to enable drainage of
water from the fiber suspension and being curved along the path
of the belts through the twin wire zone, the curved drainage
element being engaged by one of the wire belts, for curving the
path of the belts around the curved drainage element after the
entrance of the suspension into the entrance slot;

the twin wire zone having a second section following
the first section along the path of the belts through the twin
wire zone; in the second section, a plurality of first drainage
strips are positioned within the loop of the first wire belt and
are for contacting the first wire belt; in the second section, a
plurality of second drainage strips are positioned within the
loop of the second wire belt and are for contacting the second
wire belt; the first strips being shifted in position along the
path of the wire belts with respect to the second strips so that
the first and second strips are offset and in a non-opposing
relationship; first support means for resiliently supporting the
first drainage strips against the respective wire belt that the
strips contact;

second support means supporting the second drainage
strips rigidly against the second wire belt; and

means for supplying a vacuum in the area of the second
drainage strips;

the twin wire zone having a third section following the
second section along the path of the wire belts through the twin
wire zone; a second drainage element in the third section, for
being engaged by one of the wire belts as the wire belts travel
over the second drainage element, the second drainage element
having an open surface to enable water to be drained through the
wire belt in contact therewith; and

the twin wire zone being free of ~~gu~~ rolls which
deflect the twin wire zone ~~and which cause a table roll effect~~.

33. A twin-~~wire~~ former for the production of a paper
web from a fiber suspension, the twin wire former comprising:





first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone;

each wire belt forming an endless loop;

the twin wire zone having a first section which
includes a first drainage element at the start of the path
through the twin wire zone, means for supporting the belts for
forming a wedge shaped entrance slot into the first section, a
fiber suspension supplying headbox having an outlet placed and
directed for delivering fiber suspension from the headbox to the
wedge shaped entrance slot of the first section of the twin wire
zone; a curved drainage element in the first section, the curved
drainage element having an open surface to enable drainage of
water from the fiber suspension and being curved along the path
of the belts through the twin wire zone, the curved drainage
element being engaged by one of the wire belts, for curving the
path of the belts around the curved drainage element after the
entrance of the suspension into the entrance slot;

the twin wire zone having a second section following
the first section along the path of the belts through the twin
wire zone; in the second section, a plurality of first drainage
strips are positioned within the loop of the first wire belt and
are for contacting the first wire belt; in the second section, a
plurality of second drainage strips are positioned within the
loop of the second wire belt and are for contacting the second
wire belt; the first strips being shifted in position along the
path of the wire belts with respect to the second strips so that
the first and second strips are offset and in a non-opposing
relationship; first support means for resiliently supporting the
first drainage strips against the respective wire belt that the
strips contact;

second support means supporting the second drainage
strips rigidly against the second wire belt; and



JFI0204714

means for supplying a vacuum in the area of the second drainage strips;

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a second drainage element in the third section, for being engaged by one of the wire belts as the wire belts travel over the second drainage element, the second drainage element having an open surface to enable water to be drained through the wire belt in contact therewith;

the twin wire zone being free of solid rolls which deflect the twin wire zone and which cause a table roll effect.--

<u>REMARKS</u>

Applicants gratefully appreciate the allowability of claims 5, 6, 29 and 30.

Claims 5, 6, 29 and 30 have been amended to address the Examiner's rejection thereof under 35 U.S.C. §112 and, in the case of claims 5 and 6, to place these claims in independent form.  With respect to the rejection under 35 U.S.C. §112 concerning lines 33 and 36 of claim 1, applicants respectfully submit that the present language is clear.  Since it does not matter whether the most upstream one of the drainage strips is a first drainage strip or a second drainage strip, the interpretation given to the language by the Examiner is correct and is the intended meaning.

Claims 1-4, 7-28 and 31 have been cancelled and claims 32 and 33 have been added to more adequately protect applicants' invention.

With respect to the double patenting rejection, although applicants do not agree that this is well taken, in order to expedite prosecution of this application, applicants are enclosing herewith Terminal Disclaimers, one relating to U.S. Patent No. 5,389,206 and the other relating to U.S. Patent No. 5,500,091.  Accordingly, it is respectfully requested that the rejection of claims 1-31 under the judicially created doctrine of obviousness type double patenting be withdrawn.

AMDT\192257                                    -9-

JFI0204715

Claims 1-31 stand rejected under 35 U.S.C. §102(b) as anticipated by or, in the alternative, under 35 U.S.C. §103 as being obvious over WO91/02842 or 35 U.S.C. §103 as obvious over WO '842 in view of Halme et al. (U.S. Patent No. 3,994,774). Claims 5, 6, 29 and 30 have been amended to delete the phrase "of a substantial length". Accordingly, WO '842 is not available as prior art against claims 5, 6, 29 and 30. Applicants, therefore, request withdrawal of the rejection of claims 5, 6, 29 and 30 on this ground.

Claims 1-4, 7-28 and 31 were rejected under 35 U.S.C. §103 as being unpatentable over Tissari or Koski in view of DE '133, further in view of Nyman or WO 86/04368 or Nevalainen et al. All of these claims have been cancelled. Accordingly, this rejection is now moot.

With respect to new claims 32 and 33, it is respectfully submitted that these claims are patentable for the same reasons as claims 5, 6, 29 and 30. More specifically, claim 32 specifies that the twin wire zone is free of guide rolls which deflect the twin wire zone and which causes a table roll affect. Support for this limitation may be found on page 5, lines 32 to page 6.

With respect to claim 33 this is the same as claim 32 except "guide rolls" have been changed to "solid rolls". It is believed that this language is supported by the disclosure of a guide roll which, as is well known, has a smooth surface as compared to other rolls, such as forming rolls or suction rolls whose surfaces are generally perforated. Accordingly, it is respectfully submitted that the disclosure of the single species of a guide roll is sufficient support for applicants claim of a solid roll in claim 33. In this connection see MPEP §2164.03 which states:

> A single embodiment may provide broad enablement in cases involving predictable factors, such as mechanical or electrical elements. In re Vickers, 141 F.2d 522, 61 USPQ 122 (CCPA 1944); In re Cook, 439 F.2d 730, 169 USPQ 298 (CCPA 1971).

AMDT\192257                    -10-

JFI0204716

Vickers was also cited as support for a predecessor of Section 2164.03 which stated that: "In mechanical cases, broad claims may properly be supported by a single form of an apparatus or structure". See In re Cook, supra at p. 301. Both Vickers and Cook further hold that the basis for this proposition is that in mechanical cases it is obvious from the disclosure of one species that other species will work, whereas the same is not true in non-predictable arts, such as chemical cases.

In view of the foregoing, it is respectfully submitted that this application is now in condition for allowance. Accordingly, reconsideration and allowance of the application are respectfully requested.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on March 4, 1997.

Martin Pfeffer

Name of applicant, assignee or Registered Representative

Signature

March 4, 1997

Date of Signature

MP:rdj:arr
Enclosures

Respectfully submitted,

Martin Pfeffer
Registration No.:  20,808
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036-8403
Telephone:  (212) 382-0700

JFI0204717

# EXHIBIT I

#15 F/BM
/12-1-93

FA-1875 CONT (14-285)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of          New York, New York
       Rudolf Buck et al.          Date:  November 10, 1993
Serial No.:   08/055,918          Group Art Unit:  1303
Filed:   April 29, 1993          Examiner:  Karen Hastings
For:          TWIN WIRE FORMER
----------------------------------------------------------------

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.   20231

AMENDMENT

Sir:

       In response to the Office Action mailed July 15, 1993,
please reconsider the above-identified application amended as
follows:

IN THE SPECIFICATION:

       Page 5, line 18, delete "(claim 2)".

       Page 8, line 1, after "present" insert as a new
sentence:  --Also, as seen in Fig. 1, the first one of the strips
28 is located upstream of the first one of the strips 27.--



IN THE CLAIMS:

       13.  (Thrice Amended)  A twin-wire former for the
production of a paper web from a fiber suspension, the twin wire
former comprising:

5
       first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone [of a substantial length];

10
       each wire belt forming an endless loop;

AMDT\58980

JFI0204471

the twin wire zone having a first section at the start
of the path through the twin wire zone, means for supporting the
belts for forming a wedge shaped entrance slot into the first
section, a fiber suspension supplying headbox having an outlet

15  placed and directed for delivering fiber suspension from the
headbox to the wedge shaped entrance slot of the first section of
the twin wire zone; a curved drainage element in the first
section, the curved drainage element <u>having an open surface to
enable drainage of water from the fiber suspension and</u> being

20  curved along the path of the belts through the twin wire zone,
the curved drainage element being engaged by one of the wire
belts, for curving the path of the belts around the curved
drainage element after the entrance of the suspension into the
entrance slot;

25      the twin wire zone having a second section following
the first section along the path of the belts through the twin
wire zone; in the second section, [at least two] <u>a plurality of</u>
first drainage strips are positioned within the loop of the first
wire belt and are for contacting the first wire belt; in the

30  second section, [at least one] <u>a plurality of</u> second drainage
[strip] <u>strips</u> [which is] <u>are</u> positioned within the loop of the
second wire belt and [is] <u>are</u> for contacting the second wire
belt; [one of] the first [and second] strips being shifted in
position along the path of the wire belts with respect to the

35  [other of the first and] second strips so that the first and
second strips are <u>not in an opposing</u> [in a staggered]
relationship; first support means for resiliently supporting the
first drainage strips against the respective wire belt that strip
contacts;

40      second support means supporting the [at least one]
second drainage [strip] <u>strips</u> rigidly against the second wire
belt;

        the first drainage strips being located within the same
wire belt loop as the curved drainage element and the second

45  drainage strips being located within the other wire belt loop;

JFI0204472

the first one of the second drainage strips being located
upstream of the first one of the first drainage strips;

    means for supplying a vacuum in the area of the second
drainage strips;

50    the twin wire zone having a third section following the
second section along the path of the wire belts through the twin
wire zone; a stationary drainage element in the third section,
for being engaged by one of the wire belts as the wire belts
travel over the stationary drainage element, the stationary
55  drainage element having an open surface to enable water to be
drained through the wire belt in contact therewith.

    Claim 18, line 1, change "17" to --13--.

    Claim 21, line 6, after "said" insert --at least--.

    Please cancel claim 14 and add the following new
claims:

    34.  The twin wire former of claim 13, wherein the twin
wire zone is free of rolls which deflect the twin wire zone.

    35.  The twin wire former of claim 13, wherein the
stationary drainage element is curved.

    36.  The twin wire former of claim 13, wherein the
stationary drainage element includes means for providing suction
thereto to facilitate drainage of water.

    Claim 16, line 1, change "14" to --34--.

<u>REMARKS</u>

    The specification has been amended to delete an
inappropriate reference.  The specification has also been amended
to describe that the first one of the drainage strips is located
upstream of the first one of the first drainage strips, as

AMDT\58980         - 3 -

JFI0204473

suggested by the Examiner. Claim 13 has been amended to better
define applicants' invention. Additionally, claim 13 has been
amended to incorporate the substance of claim 14 therein as
suggested by the Examiner, and claim 14 cancelled. Claims 18 and
21 have been amended to address the Examiner's comments with
respect to those claims. New claims 34-36 have been added to
more adequately protect applicants' invention. The dependency of
claim 16 has been changed from claim 14 to new claim 34 for
reasons which will be further discussed below. Reconsideration
of the application as amended is respectfully requested.

   The specification has been objected to as failing to
provide proper antecedent basis for the claimed subject matter in
view of the amendment to the specification, it is believed that
this objection has been fully overcome and, accordingly, it is
respectfully requested that it be withdrawn.

   Claims 13, 14, 16, 18-21, 23-33 stand rejected under
35 USC § 112, second paragraph, as being indefinite. It is
believed that the amendments to claims 13, 18 and 21 address all
of the Examiner's § 112, second paragraph, rejections, and,
accordingly, that the claims now fully comply with 35 USC § 112.
Accordingly, it is respectfully requested that the rejection of
the claims on this ground be withdrawn.

   Claims 13, 14, 16, 18-21 and 23-33 stand rejected under
35 USC § 103 as being unpatentable over Koski (U.S. Patent No.
4,925,531) or Tissari (U.S. Patent No. 4,609,435) each in view of
German Patent Document DE 3,138,133 (DE '133). Applicants
respectfully traverse such rejections as applied to the amended
claims.

   Claim 13, as amended, now specifies that the drainage
element in the first section has an open surface to enable
drainage of water therethrough. Neither Tissari nor Koski
disclose such a curved drainage element.

AMDT\58980                          - 4 -

Thus, Tissari in Figure 6 discloses a forming deck 43 having a closed surface. See column 6, line 49. Koski, on the other hand, teaches several deflectors 24 at a location similar to the one where the curved drainage element in the first section of claim 13 appears. Such deflectors are not drainage elements. Assuming arguendo that they may be considered to constitute a drainage element, they do not present a curved surface and, therefore, do not constitute a curved drainage element.

It should also be noted that claim 13 further distinguishes over Tissari by specifying that the stationary drainage element in the third section has an open surface to enable water to be drained therethrough. In contrast, Tissari teaches a rib deck 48 (see column 6, lines 55 and 56) which is not disclosed as having an open surface, as set forth in claim 13, or as being curved, as set forth in claim 35, or as having means for providing suction, as set forth in claim 36.

In addition to the changes discussed above further defining the curved drainage element in the first section as differentiating over Koski and Tissari, and the definition of this stationary drainage element in the third section as differentiating over Tissari, applicants reiterate the arguments set forth in the amendment dated March 30, 1993 that it is not obvious to modify Tissari and Koski so that the drainage elements in one bank are resiliently supported while those in the other bank are originally the support.

In view of the foregoing, applicants respectfully submits that claim 13 now clearly distinguishes over the references and is in allowable condition, which action is respectfully requested. Claims 16, 18-21 and 23-36 are all dependent, either directly or indirectly, from claim 13 and therefore believed allowable for the same reasons.

JFI0204475

In addition, claim 34 now sets forth that the twin wire zone is free of rolls which deflect the twin wire zone. Such arrangement is neither taught nor suggested by DE '133. Accordingly, even assuming that the Examiner's combination of Tissari, Koski and DE '33 is suggested by the art (and applicants do not agree that it is), there is still no teaching or suggestion that the twin wire zone should be free of rolls which deflect the twin wire zone. It is respectfully submitted, therefore, that, regardless of the patentability of claim 13, claim 34 is independently patentable over the references because of such limitation.

Claim 16 has been made dependent from claim 34 so that claim 16 now recites all of the limitation which the Examiner indicated would constitute an allowable claim.

In view of the foregoing, this application is now believed to be in condition for allowance, which action is respectfully requested.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on November 10, 1993:

Martin Pfeffer
Name of Registered Representative

Signature
November 10, 1993
Date of Signature

MP:ss

Respectfully submitted,

Martin Pfeffer
Registration No.: 20,808
OSTROLENK, FABER, GERB & SOFFEN
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700

AMDT\58980                                    - 6 -

JFI0204476

# EXHIBIT J

# United States Patent [19]

## Koski

[11] Patent Number: **4,925,531**

[45] Date of Patent: **May 15, 1990**

[54] **TWIN WIRE FORMER FOR A PAPER MACHINE**

[75] Inventor: **Erkki Koski**, Jyväskylä, Finland

[73] Assignee: **Valmet Paper Machinery Inc.**, Finland

[21] Appl. No.: **355,180**

[22] Filed: **May 22, 1989**

[30] **Foreign Application Priority Data**

May 23, 1988 [FI]   Finland ..................................... 882422

[51] Int. Cl.⁵ ................................................. D21F 1/00
[52] U.S. Cl. ..................................... **162/301**; 162/303; 162/352
[58] Field of Search ............... 162/300, 301, 303, 348, 162/352

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,209,360 | 6/1980 | Stenberg | 162/301 |
| 4,417,950 | 11/1983 | Bubik et al. | 162/300 |
| 4,532,008 | 7/1985 | Creagan et al. | 162/301 |

### FOREIGN PATENT DOCUMENTS

3222428 12/1983  Fed. Rep. of Germany ...... 162/301

1119796  6/1986  Japan ..................................... 162/348

*Primary Examiner*—Karen M. Hastings
*Attorney, Agent, or Firm*—Steinberg Raskin

[57]     **ABSTRACT**

A twin-wire former for a paper machine having a lower wire and an upper wire. The former has a twin-wire forming zone which has forming members and forming zones situated in a specific sequence as follows. A downwardly curved forming zone is confined to a sector of a large-diameter forming roll mounted on a frame of a lower wire unit, the magnitude of this sector being within the range of <90°. A second forming roll then follows which is preferably provided with a hollow face and onto which the wires arrive from the first forming roll. The twin-wire forming zone is curved within a certain sector of less than 90° on the second forming roll so as to become horizontal. A forming shoe is provided with a ribbed deck and fitted after the second forming roll inside the lower wire loop, this forming shoe having a relatively large curve radius after which the twin-wire forming zone ends and the web is arranged to follow along with the lower wire.

**16 Claims, 1 Drawing Sheet**





4,925,531

| 1 | 2 |

## TWIN WIRE FORMER FOR A PAPER MACHINE

### BACKGROUND OF THE INVENTION

The present invention concerns a twin-wire former for a paper machine, in particular for rebuilding of existing fourdrinier wire parts. The twin-wire former comprises a lower wire and an upper wire, these wires being guided by guide rolls, by forming rolls, and by a web-forming member. The former comprises a first forming roll at which the lower wire which runs over the first forming roll together with the upper wire, defining a forming gap in connection with the first forming roll, into which a slice part of a headbox feeds a pulp suspension jet.

With respect to the prior art related to the present invention, reference is made to a twin-wire former marked by Valmet under the trademark SPEED-FORMER HHS, which is a gap former principally intended for rebuilding of existing fourdrinier wire parts. A first object of the present invention is to provide a new former concept principally for the same purposes as this SPEED-FORMER HHS.

A starting point of the present invention is a so-called gap former in which, in a gap area, a forming roll or cylinder or relatively large diameter is used.

With respect to further prior art most closely related to the present invention, reference is made to FI Patent Application No. 851035 (Beloit Corporation), corresponding to U.S. Pat. No. 4,209,360 as well as to U.S. Pat. No. 4,209,360 corresponding to SE Pat. No. 7800775-4 (AB Karlstads Mek. Verkstad). The objectives of the present invention are partially the same as those of U.S. Pat. No. 4,209,360.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the present invention to provide a new type of former which is well-suitable for rebuilding of existing fourdrinier wire parts, i.e. for conversion of such formers to twin-wire formers so that the frame structures, the rolls, and the draining equipment of the old wire unit can be retained to as great an extent as possible.

It is a further object of the present invention to provide a twin-wire former by means of which good retention and formation are obtained and in which unequal-sidedness of the web to be formed is avoided, i.e. the paper web to be produced can be made as symmetric as possible, and such that the web has adequate internal bond strength.

These and other objects are attained by the present invention which is directed to a twin-wire former for a paper machine having a twin-wire forming zone comprising, in the following sequence of twin-wire run,

(i) a downwardly-curved forming zone confined to a sector of a first forming roll,

(ii) a second forming roll situated after the first forming roll, being situated at a lower level than the first forming roll, and also arranged to curve the twin-wire zone thereabout to become

(a) substantially horizontal,

(b) slightly upwardly inclined, or

(c) slightly downwardly inclined, and

(iii) a third forming element fitted after said second forming roll, after which the twin-wire forming zone ends.

More specifically, the first forming roll has a large diameter and the second forming roll has a diameter substantially smaller than the diameter of the first forming roll, with the first forming roll being mounted on a frame of a lower wire unit, and magnitude of the sector of the first forming roll being less than about 90°. The first forming roll also comprises a suction zone situated within the sector thereof, with the second forming roll also having a sector for the curving of the twin-wire zone thereabout, which is less than about 90°. Furthermore, the third forming element is

(1) a forming shoe fitted inside a lower wire loop, mounted on the frame of the lower wire unit, and having a ribbed deck with a relatively large curve radius, or

(2) a combination of deflectors situated in an upper wire loop and in the lower wire loop.

The twin wire zone is preferably arranged to direct a web formed therein upon a lower wire forming the lower wire loop after the twin-wire zone ends. Preferably, the second forming roll comprises a hollow-face, and the first and second forming rolls are arranged with respect to one another to direct the twin-wire zone as a substantially straight downward run from the first forming roll to the second forming roll. The former comprises a lower wire and an upper wire guided by guide rolls, with the lower and upper wires being arranged to both run over the first forming roll and define a forming gap thereat, into which a slice part of a head box is arranged to feed a pulp suspension jet.

Accordingly, in view of achieving the objects stated above and those which will become apparent below, the present invention is principally characterized by a former comprising a twin-wire forming zone, which comprises the forming members and forming zones situated in the sequence give below:

(a) a downwardly curved forming zone, which is confined to the sector of a large-diameter forming roll mounted on the frame of the lower wire unit, the magnitude of this sector being within the range of a<90° and the suction zone of the first forming roll being situated within the area of this sector;

(b) a second forming roll which is preferably provided with a hollow face, and onto which the wires arrive from the first forming roll preferably as a straight downwardly run, with the diameter of the second forming roll being substantially smaller than the diameter of the first forming roll, the second forming roll being placed at a lower level than the first forming roll, and the twin-wire forming zone being curved on the second forming roll within a certain sector thereof of less than 90° so as to become substantially horizontal or slightly upwardly or downwardly inclined; and

(c) a forming shoe provided with a ribbed deck and fitted after the second forming roll inside the lower-wire loop, mounted on the frame construction of the lower wire unit, this forming shoe having a relatively large curve radius, or a corresponding deflector combination after which the twin-forming zone ends and the web is arranged to follow along with the lower wire.

A number of advantages of different directions are carried into effect at the same time by means of the present invention. In the invention, the first forming roll can be supported and journaled on the frame of the lower wire unit, in the case of rebuilding of the existing fourdrinier wire part on the frame, which is an essential advantage as compared, e.g., with the construction of the SPEED-FORMER HHS, in which the corresponding forming roll is supported on the upper wire unit.

4,925,531

| 3 | 4 |

In the construction in accordance with the present invention, the first forming roll is not susceptible to being flooded, because its suction area is on an upper sector of the roll.

The footing constructions of the headbox must be made higher in the case of renewals with the present invention, there being usually adequate space available.

In addition to the principal constructional advantages noted above, the above process-technical objects related to web formation and dewatering are also obtained by means of the present invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will be described in greater detail below with reference to an advantageous exemplary embodiment of the invention illustrated in the accompanying figure, in which

FIG. 1 is a schematic side view of a twin-wire former in accordance with the present invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The paper machine former illustrated in FIG. 1 comprises an upper wire unit and a lower wire unit. The upper-wire unit includes an upper wire 10 guided by guide rolls 11, 12, 13 and by forming rolls 21, 15, as well as by a deck 26 of a forming shoe 25. The upper-wire unit further includes frame constructions (not illustrated) and water draining troughs 14, 16.

The lower-wire unit includes a lower wire 20 guided by the forming rolls 21, 15, by the forming shoe 25, and by dewatering members 27, 28 and guide rolls 29 and 32. The lower-wire unit includes a frame, of which a frame part 35 is illustrated in FIG. 1. Bearing supports 23 of the first forming roll 21 are attached on the frame part 35.

When the present invention is applied to modernizing existing fourdrinier formers, it is to a very great extent possible to make use of the existing frame part of the fourdrinier wire, of the draining equipment at the rear end thereof, of rolls 29 and 32, as well as of pick-up roll 30. In the present invention, the forming roll 21 is expressly supported and journalled on the frame part 35 by means of the bearing supports 23, such construction being considerably more advantageous than a construction in which a roll corresponding to the roll 21 would have to be supported and journalled in conjunction with the upper-wire unit.

The upper wire 10 and the lower wire 20 define a twin-forming zone A-B between the same, with water being removed out of the web W that is being formed within this zone through both wires 10 and 20.

After the twin-wire forming zone A-B, starting from a suction box 27 or equivalent, the web W follows the lower wire 20 which thus acts as a so-called carrying wire and carries the web W over a suction zone $29a$ of the roll 29 to a detaching point P, where the web W is transferred onto a suction zone $30a$ of the pick-up roll 30 and onto a pick-up felt 31 which carries the web W further to a press section (not illustrated).

The twin-wire forming zone A-B is preceded by a forming gap G which is defined from below by an upper quarter of the forming roll 21 over which the lower wire 20 runs, as well as by a straight run $10a$ of the upper wire 10 which runs from the guide roll 11 onto the forming roll 21 and onto a pulp web that is being formed. A pulp jet J is fed into the forming gap G

through a slice part 42 of a head box 41 situated on a stand 40.

After the forming gap G, the twin-wire zone A-B is curved downwardly on a sector a of the forming roll 21. A suction zone $21a$ of the forming roll 21 is situated substantially within this sector a, this suction zone $21a$ being defined by laths 22 of a suction chamber which operate against an inner face of the perforated roll mantle. Dewatering takes place mostly through the upper wire 10 on the sector a of the roll 21. Pressure formed between the wires is maintained at an equilibrium by the upper-wire tensioning pressure $p = 2T_1/D_1$ ($T_1 =$ tensioning of the wire 10). The centrifugal force promotes the draining of water towards the trough 14. Some water may also drain through the lower wire 20 towards the suction zone $21a$, partly because of the negative pressure prevailing therein. The amount of this latter dewatering depends upon the level of negative pressure in the suction zone $21a$. This level can be regulated to a suitable level so as to adjust ratios of dewatering taking place through the upper wire 10 and the lower wire 20 on the sector a, in view of optimizing the formation of the web W.

The forming sector a is formed by a joint downwardly inclined run of the wires 10 and 20 onto the forming roll 15. On this run and inside a loop of the lower wire 20, there is one or several deflectors 24 which remove water out of the web W that is being formed.

The second forming roll 15 situated inside the loop of the upper wire 10, is a hollow-faced 15' (diameter $D_2$) roll 15 on whose sector b the run of the wires 10, 20 and of the pulp web situated between the same, is turned and becomes substantially horizontal. On the sector b the water is drained by the effect of the lower-wire 20 tensioning pressure $p = 2D_2/T_2$ ($T_2 =$ tension of the wire 20) and aided by the centrifugal force, the water being drained substantially through the lower wire 20 and to a certain extent also into the hollow face 15' of the forming roll 15 from which the water is thrown into the trough 16.

The forming roll 15 is followed by a forming shoe 25 situated inside a loop of the lower wire 20, the forming shoe being most appropriately provided with a ribbed deck 26. In the direction of running of the wire 10, 20, the deck 26 has a relatively large curve radius R whose center of curvature is at a side of the lower wire 20 as illustrated.

The ribbed deck 26 of the forming shoe 25 is followed by a suction box 27 with a curved deck situated within the loop of the lower wire 20 and ensuring that the web W follows along with the lower wire 20. After the point B of detaching of the web W from the upper wire 10, there may be deflectors 28, dry suction boxes, or other corresponding dewatering members inside the loop of the lower wire 20.

The forming shoe 25 may be substituted with a corresponding deflector combination. Of such possible deflectors, deflector 17 situated inside the upper-wire loop 10 and deflectors 37 situated inside the lower wire loop 20 are illustrated by means of dashed lines in the figure. The deflector 17 and 37 can be alternatingly situated, preferably so that the twin-wire forming zone guided by the same runs along a very gently meandering, substantially sine-shaped path.

When a forming shoe 25 is used, water is drained principally by the effect of the curve radius R through the upper wire 10 into the trough 16, as well as to a

4,925,531

| 5 | 6 |

certain extent towards the ribbed deck 26 of the shoe 25 being aided by gravity and, if necessary, by suction. The ribbed deck 26 gives the web pressure impulses which improve its formation.

Concerning the different dimensional proportions of the former described above, it can be ascertained that the forming roll 21 or corresponding cylinder has quite a large diameter $D_1$, which is as a rule within a range of $D_1$=about 800–2000 mm., most appropriately within a range of $D_1$=about 1200–1600 mm.

The forming roll 15 that follows after the forming roll 21 has a diameter $D_2$ which is considerably smaller than the diameter $D_1$. The diameter $D_2$ of the roll 15 is as a rule within the range of $D_2$=about 700–1200 mm., most appropriately within the range of $D_2$=about 900–1000 mm.

The twin-wire zone sector a defined on the forming roll 21 in accordance with the present invention, has a width of a < about 90°, preferably a=about 40°–70° and most preferably a=about 60°. The turning sector b of the forming roll 15 provided with a hollow fac 15′ is substantially equally as large as the sector a of the first forming roll 21 which, as a rule, means that the sector a begins at a topmost point of the roll 21, and the twin-wire zone continues on from the roll 15 to the forming shoe 25 as substantially horizontal.

After the roll 15, the forming zone is substantially horizontal additionally because in this manner it is possible to utilize the frame constructions and the draining equipment of the existing wire part as advantageously as possible. Thus, it is preferred that in the case of rebuilding, the plane of the wire in an existing fourdrinier former joins the plane T-T illustrated in the accompanying FIG. 1. This construction is also advantageous from the point of view that bearing supports 23 of the first forming roll 21 can be mounted on the frame constructions of the existing wire part, most advantageously so that the entire roll 21 is situated above the plane T-T. In such a manner, the stand 40 of the head box 41 must be substantially raised by the dimension of the diameter $D_1$ of the roll 21.

The curve radius R of the forming shoe 25 is, as a rule, within a range of R=about 2000–5000 mm., most appropriately R=about 3000 mm. The length of the twin-wire zone A-B is as a rule within a range of about 5–8 m.

An axis of rotation of the forming roll 15 is most appropriately at a level somewhat lower than an axis of rotation of the forming roll 21. The forming roll 21 is not susceptible to being flooded, because its suction sector 21a is situated on the upper half of the roll 21.

The overall geometry of the former is most appropriately such that the pulp jet J is discharged from the slice part 42 of the head box 41 as slightly upwardly inclined or substantially horizontally, and such that after the end point B of the twin-wire zone, the run of the lower wire 20 is substantially horizontal.

Various details of the present invention may vary within the scope of the inventive concepts set forth above which have been presented for the sake of example only. In other words, the preceding description of the present invention is merely exemplary, and is not intended to limit the scope thereof in any way.

What is claimed is:

1. A twin-wire former for a paper machine, having a twin-wire forming zone comprising, in the following sequence of twin-wire run,

(i) a downwardly curved forming zone confined to a sector of a first forming roll,

(ii) said twin wire run comprising a lower wire loop unit and an upper wire loop unit guided by guide rolls, the lower and upper wires being arranged to both run over said first forming roll and define a forming gap thereat, into which a slice part of a headbox is arranged to feed a pulp suspension jet,

(iii) a second forming roll situated after said first forming roll, being situated at a lower level than said first forming roll, and also arranged to curve the twin-wire run thereabout to become either

(a) substantially horizontal,

(b) slightly upwardly inclined, or

(c) slightly downwardly inclined, and

(iv) a third forming element fitted after said second forming roll,

said third forming element being either

(1) a forming shoe fitted inside the lower wire loop, mounted on the frame of the lower wire unit, and having a ribbed deck with a relatively large curved radius, or

(2) a combination of deflectors situated in the upper wire loop and in the lower wire loop

after which the twin-wire forming zone ends and wherein said first forming roll has a large diameter and said second forming roll has a diametet substantially smaller than the diameter of said first forming roll,

said first forming roll is mounted on a frame of the lower wire unit and is located within the lower wire unit,

magnitude of said sector of said first forming roll is less than about 90° , and

said second forming roll has a sector for the curving of the twin-wire zone which is less than about 90°.

2. The twin-wire former of claim 1, wherein said first forming roll comprises a suction zone situated within said sector thereof,

and

said twin-wire zone is arranged to direct a web formed therein upon the lower wire forming the lower wire loop after said twin-wire zone ends.

3. The twin-wire former of claim 2, wherein said second forming roll comprises a hollow-face, and

said first and second forming rolls are arranged with respect to one another to direct the twin-wire zone as a substantially straight downward run from said first forming roll to said second forming roll.

4. The twin-wire former of claim 1, wherein said twin-wire zone is arranged to start in an area of a top-most point on said first forming roll.

5. The twin-wire former of claim 2, wherein the magnitude of said sector of said first forming roll is from about 40° to 70°, and

the magnitude of said sector of said second forming roll is substantially equal to said first forming roll sector magnitude.

6. The twin-wire former of claim 5, wherein the magnitude of said first forming roll sector is about 60°.

7. The twin-wire former of claim 2, wherein the diameter of said first forming roll is about 800–2,000 mm. and the diameter of the said second forming roll is about 700–1200 mm.

8. The twin-wire former of claim 7, wherein the diameter of said first forming roll is about 1200–1600 mm.,

4,925,531

7

and the diameter of said second forming roll is about 900–1000 mm.

9. The twin-wire former of claim 2, wherein said third forming element is said forming shoe with said curve radius of said ribbed deck thereof being about 2000 to 5000 mm

10. The twin-wire former of claim 9, wherein said radius is about 3,000 mm.

11. The twin-wire former of claim 3, additionally comprising

at least one dewatering deflector situated adjacent said substantially straight downward run from said first forming roll to said second forming roll.

12. The twin-wire former of claim 11, wherein said at least one deflector is situated within the lower wire loop.

13. The twin-wire former of claim 2, wherein said third forming element is said deflectors which are ar-

8

ranged to guide said twin-wire zone along a gently-meandering, sine-shaped path.

14. The twin-wire former of claim 2, wherein

the frame of the lower wire unit is a frame of a four-drinier wire unit,

additionally comprising draining equipment situated within the lower wire loop which is draining equipment of the fourdrinier wire unit, and

said twin-wire zone is arranged to end such that a plane of the lower wire subsequently carrying the web substantially joins a plane of an upper run of a fourdrinier wire of the fourdrinier unit,

said former constituting a rebuilding of existing four-drinier wire parts.

15. The twin-wire former of claim 14, wherein said first forming roll is journaled and supported upon the frame by means of bearing supports.

16. The twin-wire former of claim 15, wherein said first forming roll is journaled to remain entirely above the plane of the upper run of the fourdrinier wire.

* * * * *

# EXHIBIT K

*130-122*    *1303*

*#18/BA 6-14-94*

FA-1875 CONT (14/285)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent Application of | New York, New York |
| Rudolf Buck et al. | Date: May 23, 1994 |
| Serial No.: 08/055,918 | Group Art Unit: 1303 |
| Filed: April 29, 1993 | Examiner: Karen Hastings |
| For: TWIN WIRE FORMER | |

---------------------------------------------------------------

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C. 20231

<u>INFORMATION DISCLOSURE STATEMENT</u>

Sir:

Pursuant to 37 C.F.R. §§1.97 and 1.98, applicants are
submitting the following patent documents for consideration by
the Examiner:

RECEIVED
94 JUN 14 AM 8:31
GROUP 130

<u>Patent Documents</u>

1. European A 0 296 135
2. US A 4 532 008
3. German A 3 321 406
4. European A 0 306 759
5. US A 4 769 111
6. German A 3 628 282
7. German A 3 329 833
8. WO 86/04368
9. European A 0 289 445

090 BA 06/09/94 08055918

These documents were cited in an opposition proceeding
in the European Patent Office regarding a counterpart of the
above-identified application.

The relevance of the documents as alleged by the
opposer is as follows:

AMDTV79677

JFI0204482

1.   Patent document 1 has been cited to show a twin
wire former in which in the first section of the twin wire zone
the wires 10 and 20 travel over a rotating forming cylinder 21.
Dewatering strips or battens 111 and 112 rest against the wire 20
in the upper wire loop and battens 101, 102 and 103 rest against
the belt in the lower wire loop.  Although the battens can be
adjusted perpendicular to the plane of the wire, the battens are
rigidly and not flexibly supported.  In the third section of the
twin zone the wire belts travel over stationary dewatering
components constituted by a forming shoe 14 and a flatbox 16.
     Among the differences recognized by the opposer are a)
that the suspension in the twin wire former which is the subject
of the above-identified application is fed directly into the
intake gap whereas in patent document 1, a single wire
preliminary dewatering part is provided upstream of this gap
(i.e., the former in patent document 1 is a hybrid former), and
b) the dewatering battens in one of the two wire belts of the
invention of the present application are flexibly supported
whereas no such flexible support is present in the former
disclosed in patent document 1.
     2.   Patent document 2 was cited for the same reasons
advanced above in connection with patent document 1 and has the
same deficiencies.  In particular, in patent document 2 in the
first section of the twin wire zone two wires travel over a
dewatering element ("foil box") 22' with a curved top.  In this
section, the wire belts create a wedge-shaped intake gap.  In the
second section of the twin wire zone, several dewatering battens
52 with positions that can be adjusted rest against a wire belt
in the upper wire loop and several dewatering battens 50 rest
against the wire belt in the lower wire loop.  The upper and
lower dewatering battens are mutually displaced along the wire.
In the third section of the twin wire zone, the belts travel over
a dewatering component formed of a flat box ("suction box") 85.
     Again, as in the case of patent document 1, patent
document 2 discloses a hybrid twin wire former in which there is
a single wire preliminary dewatering section upstream of the twin

AMDT\79677                              -2-

JFI0204483

wire zone and also discloses rigidly supported battens or
dewatering strips.

3.    Patent document 3 was cited to show a twin wire
former in which the stock is introduced into an intake gap.

4.    Patent documents 4, 5 and 6 have been cited to
show flexibly supported battens in a twin wire former.  The
battens, however, are not displaced as set forth in applicants'
invention.  Additionally, the twin wire formers of documents 4, 5
and 6 are hybrid twin wire formers having respective single wire
dewatering sections upstream of the twin wire zone.

5.    Patent documents 7, 8 and 9 were cited as showing
the state of the art.  However, it is noted that the
characteristic of direct introduction of suspension to the wedge-
shaped intake gap from the head box is missing, as is any
disclosure regarding use of battens and of course, any disclosure
regarding the positioning or flexibility of the battens.

<u>Additional Information</u>

In addition to the patent documents noted above,
opposer also cited the machine shown in Attachments A and B which
opposer alleges was manufactured by opposer, Valmet Paper
Machinery, Inc. of Helsinki, Finland and shipped to the James
River Corporation of Clatskanie, Oregon.  According to opposer,
the twin wire former illustrated in Attachments A and B was
operated for the first time on February 1, 1989.  The various
components of the twin wire former in Attachment B and C are
assigned the same reference numerals used to specify the
allegedly similar components of the embodiments set forth in
applicants' application.  Attachment B illustrates in larger
scale the detail designated X of Attachment A.

The characteristics of the twin-wire former illustrated
in Attachments A and B according to opposer are as follows:

"Two wire belts 11 and 12 together constitute a twin-
wire part.

In the first section of the twin-wire part is a curved
dewatering component in the form of a rotating cylinder 40, which

JFI0204484

wire belts 11 and 12 travel over.  Between the two wire belts 11
and 12 in this first section is a wedge-shaped stock-intake gap
15.  Upstream of stock-intake gap 15 is a headbox 10, which
introduces the suspension directly into gap 15.

In another section downstream of the first section, two
dewatering battens 27 rest against wire belt 11.  Many dewatering
battens 28 also rest against wire belt 12 in the second section
of the twin-wire part.  The more upstream batten 27 rests against
the wire belt 11 between facing battens 28.  The more downstream
batten 27 rests against belt 11 downstream of the most downstream
batten 28.  Battens 27 and 28 are accordingly mutually displaced
along the wire.

In a third section of the twin-wire part, wire belts 11
and 12 travel over three stationary dewatering components in the
form of flatboxes 31.

The structure of and means of support for battens 27 is
illustrated in detail in Attachment B.  Batten 27 is secured to a
support that pivots on a component secured to the overall device.
Between that component and the support is a pneumatically
pressurized hose.  The forces transmitted to the support by the
hose, downward in Attachment B, shift batten 27 into the position
represented by the dot-and-dash lines.  From this position the
batten can be raised into the position represented by the
continuous lines in opposition to the force exerted by the hose.
Batten 27 is accordingly flexibly supported.  This is true of
both the battens 27 illustrated i Attachment A."

In connection with the former illustrated in
Attachments A and B, applicants would like to point out that of
the two upper battens 27, the first batten 27 lies opposite the
lower batten 28 in the lower wire loop and at least partly
overlaps.  Accordingly, the battens 27 and 28 are not offset and
not in opposing relationship.  The second batten 27 is located so
far away from the bank of battens 28 that there is no cooperation
between the second batten 27 and the bank of battens 28.  Indeed,
the second batten 27 is so far removed from the lower battens 28

JFI0204485

that in effect one could consider it to be located outside of the second section as defined in applicants' claims.

In addition, it is proposed to amend applicants' claims to specify that the last one of the second drainage strips (the fixed strips 28) are located downstream of the last one of the first drainage strips (i.e. the flexibly supported strips 27). In contrast, assuming _arguendo_ that the second batten 27 or alleged flexible strip of the former of Attachments A and B is considered to be part of the second section, it is located downstream of the last one of the fixed battens 28 and, therefore, does not meet this added limitation of applicants' claims but, instead, teaches away therefrom.

Turning now to the question of whether the twin wire former of Attachments B and C is prior art, applicants note that other than opposer's allegation, no proof has been offered nor is presently available to applicants regarding whether the twin wire former shown in Attachments A and B is the same as the twin wire former which it is alleged was put into use by James River Corporation on February 1, 1989, nor are there any facts available to applicants from which applicants can determine that such use was either a public use or that such wire former had been sold or was on sale. In any event, applicants believe that they patentably distinguishes over the twin former in Attachments A and B as discussed above. In addition, there is no teaching in the wire former of Attachments A and B of the thickness or spacing of the draining strips as set forth in applicants' claim 16.

## Certification

I certify that each item of information contained in this Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of this statement.

JFI0204486

<u>Petition</u>

Applicants hereby petition pursuant to 37 C.F.R. §1.97(d)(1)(ii) that this Information Disclosure Statement be considered. A check in the amount of $130 is enclosed for the petition fee required by 37 C.F.R. §1.97(d)(1)(iii) and §1.17(i)(1). If any additional fees are due, you are authorized to charge the same to the undersigned's deposit Account No. 15-0700.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on May 23, 1994:

Martin Pfeffer
—————————————————————
Name of applicant, assignee or
Registered Representative

—————————————————————
Signature
May 23, 1994
—————————————————————
Date of Signature

MP/lrc/ss

Respectfully submitted,

Martin Pfeffer
Registration No.: 20,808
OSTROLENK, FABER, GERB & SOFFEN
1180 Avenue of the Americas
New York, New York  10036-8403
Telephone:  (212) 382-0700

JFI0204487

ATTACHMENT A

JFI0204488

ATTACHMENT B

# EXHIBIT L

# United States Patent [19]

## Nevalainen et al.

[11] **Patent Number:** **4,769,111**

[45] **Date of Patent:** **Sep. 6, 1988**

[54] **SUPPORT APPARATUS FOR A DEWATERING UNIT IN THE WEB FORMING SECTION OF A PAPER MACHINE**

[75] Inventors: **Taisto A. Nevalainen**, Imatra; **Tapani E. Nyman**, Karhula, both of Finland

[73] Assignee: **A. Ahlstrom Corporation**, Karhula, Finland

[21] Appl. No.: **69,145**

[22] Filed: **Jul. 2, 1987**

[30] **Foreign Application Priority Data**

Jul. 2, 1986 [FI]   Finland ................................. 862809

[51] Int. Cl.⁴ ................................................. D21F 1/36
[52] U.S. Cl. ........................................ **162/351**; 162/300; 162/301; 162/352; 162/354; 162/374
[58] Field of Search ............... 162/272, 352, 374, 365, 162/366, 354, 355, 300, 301, 351

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,017,930 | 1/1962 | Dunlap | 162/352 |
| 3,104,223 | 9/1963 | Kasuya | 162/374 |
| 3,864,207 | 2/1975 | Ekberg | 162/365 |
| 3,994,774 | 11/1976 | Halme et al. | 162/273 |
| 4,523,978 | 6/1985 | Pullinen | 162/352 |
| 4,559,105 | 11/1985 | Sennett et al. | 162/352 |
| 4,623,429 | 11/1986 | Tissari | 162/352 |

### FOREIGN PATENT DOCUMENTS

3406217 10/1985 Fed. Rep. of Germany .
69885 12/1985 Finland .

*Primary Examiner*—David L. Lacey
*Assistant Examiner*—K. M. Hastings
*Attorney, Agent, or Firm*—Nixon & Vanderhye

[57] **ABSTRACT**

The present invention relates to a support apparatus of a dewatering unit (30) below a bottom wire of the twin wire forming section of a paper or board machine.

The problem in known, corresponding arrangements has been insufficient crosswise stiffness of the dewatering unit and lack of adjustability.

The above-mentioned disadvantages have been eliminated or minimized by a support arrangement, characterized in that the dewatering unit (30) is supported on beams (36) transversely in view of the machine direction by means of a hose-like pressure-medium filled elements (37), which also allow a longitudinal adjustment of the dewatering unit by means of an adjusting element (38).

**8 Claims, 2 Drawing Sheets**





FIG.1

FIG.3



FIG. 2

4,769,111

1

## SUPPORT APPARATUS FOR A DEWATERING UNIT IN THE WEB FORMING SECTION OF A PAPER MACHINE

The present invention relates to support apparatus for a dewatering unit in the web-forming section of a paper machine and especially to the supporting of a dewatering unit below a bottom wire, said unit being used in connection with a twin wire former. This supporting method allows a wide range of adjustments to be made.

There are several known shoe constructions for the forming section of a twin wire former, most of which are stationary and quite stiff. Some vertically adjustable constructions have, however, been disclosed, for example in U.S. Pat. No. 3,994,774, FI Pat. No. 69885 and DE Pat. No. 3406217.

U.S. Pat. No. 3,994,774, although it relates to a so-called gap former, discloses vertical adjustment of the lower dewatering unit by means of pressure-medium filled cylinders disposed in the corners of said lower unit. Such arrangement enables stepless adjustment of the inclination of the lower dewatering unit.

FI Pat. No. 69885 discloses a forming shoe for a twin wire forming section in a paper machine, said shoe comprising a number of pivoted blade rows disposed transversely with respect to the forming shoe. The height of each forming shoe is separately adjustable in order to provide a leading surface of a desired form. Articulation of the blade rows allows forming of a curved leading surface comprising several partial plane-like surfaces.

In DE Pat. No. 3406217, the cover of a dewatering unit below a bottom wire is formed of lists, each of which is adjustable to compress the web against the dewatering unit above the bottom wire at pressure unequal to that of other rows. In the embodiment disclosed in said patent, the rows are attached to a flexible membrane, below which a desired pressure prevails. Dividing the pressurized space below the membrane into separate chambers makes it possible to change the state of pressure in the chambers, which enables the comprssive effect on the web to be adjusted. The more chambers the pressurized space is divided into, the greater the number of unequal compressive pressures that can be read.

The above described, relatively advanced arrangements have some disadvantages that cannot be eliminated because of their constructions. Neither is it possible to apply the newst technique in them such as, for example, provision of dewatering elements, disposed on different side of the web, that are adjustable with respect to one another in the longitudinal direction of the web.

Although the arrangement as disclosed in U.S. Pat. No. 3,994,774 allows vertical adjustment in the lower dewatering unit, such arrangement is not readily applicable to said unit. Disposition of pressure-medium filled cylinders in the corners of the lower unit also sets too high demands on the stiffness of said unit, at least if the width of the unit exceeds five meters.

Although every blade can be vertically adjusted independently of each other if FI Pat. No. 69885, it seems unlikely that such an adjustment could be made during operation or that such a unit would be adjustable in the direction of the web. Furthermore, in view of a wide paper machine, lack of stiffness constitutes a problem

2

also in this arrangement if said type of shoe is used as a counterpart of the upper dewatering unit.

Thirdly, the apparatus as disclosed in DE Pat. No. 34062127 has some disadvantages even though it is highly developed. Due to a complicated pressure-medium chamber and especially due to its adjustment and feed equipment, it is hard to imagine said apparatus being transferable in the direction of the web. It is also highly probable that if said arrangement were applied as a counterunit of a suction box, the cover of which is formed of foils, it would not function reliably because of a flexible attachment of the foils to the membrane covering the pressure-medium filled chamber. In that case, the foil/foils would most probably vibrate due to pressure pulses, thus not achieving the advantages that can be reached by means of stationary, fixed lists.

It is an object of the present invention to provide a dewatering unit and means of supporting thereof, which together eliminate or minimize the defects discovered in known arrangements. The result of the invention is a dewatering unit with means of support, which unit is readily and in a diversified manner adjustable, and is simple and reliable in operation, characterized in that the dewatering unit below the bottom wire is supported by hose-like pressure elements on beams disposed transversely with respect to the machine direction, said pressure elements enabling the dewatering unit to be adjusted both vertically and horizontally. Other characteristics of the apparatus are disclosed in the accompanying claims.

The apparatus will be further described, by way of example, with reference to the accompanying drawings, in which

FIG. 1 is an overall schematic elevational view of the wet end of a paper machine to which the support apparatus according to the invention is applied; and

FIG. 2 is a detailed side view of the apparatus in accordance with the invention which may be regarded as an enlarged fragmentary detail of FIG. 1.

FIG. 3 is an end elevational view of the support apparatus hereof.

The apparatus according to the invention is primarily intended to be used in a fourdrinier machine 1, as shown in FIG. 1. In its simplest form, the wet end of the fourdrinier machine 1 comprises a headbox 2 and a fourdrinier wire section 3, said wire section comprising and endless mesh loop or "wire" 4, breast rool 5, other rolls and rollers 6 and dewatering elements 7. The rear or downstream end of the fourdrinier wire section 3, i.e. a so-called web forming section 8, comprises an upper or "on-top" unit 9 above the web and a dewatering unit 30 below the fourdrinier wire or lower wire 3.

In the arrangement as shown in FIG. 2, the dewatering unit 30 of the web-forming section of the paper machine comprises two covers 34 and 35 formed by a row of rod-like elements 32 and 33 extending transversely of the wires, said covers being united by a joint 31. The covers 34 and 35 are supported on beams 36, said beams extending transversely with respect to the direction of extension of the machine and being attached to the machine frame through pressure-medium (compressed air, hydraulic fluid) filled expansible, flexible vessel means of hose-like elements 37 so as to enable longitudinal adjustment of the angular position of the covers 34 and 35 with respect to the machine. In other words, the pressure exerted by the covers 34 and 35 on the bottom wire 4 can be changed. The adjustability is achieved by the pressure adjustment of each hose-like

4,769,111

| 3 | 4 |

pressure element 37 being independent of other elements 37. Furthermore, to improve the adjustability of the dewatering unit 30, the covers 34 and 35 are displaceably engaged or supported by an adjustable means of element 38 adjustable longitudinally with respect to the direction of extension of the machine, said element being attached to the machine frame at one end and to the cover 34 at its other end. Any other elements for the longitudinal adjustment are unnecessary because hose-like elements 37 provide a sufficient adjusting allowance both horizontally and vertically. if required, distances between various covers may be adjusted.

The advantage of hose-like elements 37 is that, even though the beams 36, disposed transversely with regard to the manchine, become bent due to the load on them, the hose-like elements 37 may be adjusted to keep the covers 34 and 35 in plane-like disposition. The hoses 37 also allow the covers 34 and 35 to be lowered to such an extent that, for example, changing of the rod-like elements 32 or 33 is facilitated. Furthermore, it is possible to make the hose-like elements 37 from a plurality of parts in the longitudinal direction of the beam 36, i.e. divide the hoses into a plurality of shorter parts, each of which can be independently pressure-adjusted. For example, as illustrated in FIG. 3, hose 37 is divided into a plurality of compartments 37a–37d in its longitudinal direction transverse to the direction of paper extension. Each compartment 37a–37d is a separate inlet pressurized fluid line under control of a discrete independently adjustable control valve 40a–40d. In this way, it is easier to adapt the form of the lower dewatering unit to that of the upper one.

If necessary, the pass of covers 34 and 35 can be limited by means of special limit plates 39 that prevent moving of the hose-like pressure element 37 from the top of the beam 36 during adjustments. Transverse movement of the covers 34 and 35 can be limited in many ways. It is possible, for example, to arrange slide surfaces on the side of the covers, said surfaces only allowing movement in the longitudinal direction with respect to the machine. Even though the above description illustrates a two-part cover of the dewatering unit 30, said cover can alternatively be made from one part or be assembled of several parts by joining them together. Also, even though the above description discloses the covers being composed of rod-like dewatering elements, they can be of any appropriate type. Furthermore, supporting of the sides adjacent to the covers 34 and 35 can be made so as to affect or achieve the joint between the covers.

Although in FIG. 2, the adjustable means 38 is illustrated as a pressure-medium filled cylinder, it may alternatively be a manual screw adjuster or any other appropriate adjusting device.

As can be seen from the above, by a simple construction and reliable operation the invention makes up a unit or whole, meeting all the objects required of. The above only discloses one preferred embodiment of the invention and is not intended to limit the invention from what is claimed in the accompanying claims.

We claim:

1. In a dewatering unit of a paper machine extending in a longitudinal direction, said dewatering unit positioned below a lower endless mesh web of the paper machine and including first and second longitudinally spaced covers, each cover formed of dewatering elements, each cover having opposite ends spaced one from the other in the longitudinal direction of the machine extension, a support apparatus for said covers comprising:

a plurality of first means for supporting said first cover along its opposite ends thereof spaced longitudinally one from the other with each first supporting means extending transversely with respect to the direction of the extension of the paper machine; and

a plurality of second means for supporting said second cover along its opposite ends thereof spaced longitudinally one from the other with each said second supporting means extending transverse with respect to the direction of the extension of the paper machine, each said first and second supporting means including expansible flexible wall vessel means containing fluid under pressure and a beam disposed transversely with respect to the direction of extension of said paper machine, the expansible flexible wall vessel means of each end of said covers being supported on the corresponding beam; and joint means for joining said first and second covers one to the other, said expansible flexible wall vessel means supporting said covers through said joint means.

2. Apparatus according to claim 1 wherein each of said vessel means is divided into several compartments in a transverse direction.

3. Apparatus according to claim 2 including means for independently adjusting the pressure in each compartment of said vessel means.

4. Apparatus according to claim 1 wherein one of said vessel means is positioned on its corresponding beam to enable displacement of one of said covers longitudinally with respect to the direction of extension of the machine, said apparatus further including a stationary frame, and means connecting between said stationary frame and said one cover for displacing said one cover longitudinally.

5. Apparatus according to claim 4 wherein said displacing means is structured for being operable to displace both said first and second covers relative to said stationary frame.

6. Apparatus according to claim 5 wherein each of said vessel means is divided in a transverse direction into several parts.

7. Apparatus according to claim 6 including means for independently adjusting the pressure in each part of said vessel means.

8. Apparatus according to claim 1 wherein each of said first and second covers has four corners, said flexible wall vessel means being disposed adjacent each of the four corners of each said first and second cover, and means for adjusting the pressure of each said flexible wall vessel means adjacent each corner independently of one another.

* * * * *

65

# EXHIBIT M

07/773965

09 Rec'd PCT/PTO    1 2 NOV 1991 -9175 (PCT) (14-228)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of                    Date: November 12, 1991
Buck, Rudolf et al.
Serial No.:                                    Group Art Unit:
Filed: October   , 1991                        Examiner:
For:  TWIN WIRE FORMER
------------------------------------------------------------------
Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

PRELIMINARY AMENDMENT

Sir:

          Preliminary to the examination of the above-application
and at the filing of this application, please amend the above
application as follows:

IN THE SPECIFICATION

          Page 1, before line 2, insert --BACKGROUND OF THE
                    INVENTION--;

          line  7, delete the entire line and substitute
                    --the patent include a twin wire former for
                    producing a fiber web and particularly a
                    paper web from a fiber suspension.  Two web
                    forming wire belts, in the form of endless
                    loops, travel together to form a twin wire
                    zone.  The web travels between and along
                    the path of the wire belts through the twin
                    wire zone.  The twin wire zone has three
                    sections and the elements in those three
                    sections are described below.  The patent
                    describes features that--.

          Page  4, before line 9, insert --SUMMARY OF THE
                    INVENTION--;

08 Rec'd PCT/PTO    0 6 1991 MAR

# BUNDESREPUBLIK DEUTSCHLAND

PCT / E P 90 / 01 313

07/773965

REC'D 0 8 OCT 1990
WIPO PCT



**PRIORITY DOCUMENT**

## Bescheinigung

Die J.M. Voith GmbH in 7920 Heidenheim hat eine Patent-
anmeldung unter der Bezeichnung

"Doppelsieb-Former"

am 22. August 1989 beim Deutschen Patentamt eingereicht.

Die angehefteten Stücke sind eine richtige und genaue
Wiedergabe der ursprünglichen Unterlagen dieser Patent-
anmeldung.

Die angeheftete Zusammenfassung, die der Anmeldung beizu-
fügen, aber kein Bestandteil der Anmeldung ist, stimmt mit
dem am 22. August 1989 eingereichten Original überein.

Die Anmeldung hat im Deutschen Patentamt vorläufig die
Symbole D 21 F 1/00 und D 21 F 9/02 der Internationalen
Patentklassifikation erhalten.

München, den 31. August 1990
Der Präsident des Deutschen Patentamts
Im Auftrag

zeichen: P 39 27 597.3

R. Konvalin

A 9161.1

JFI0204412

#3

| Robert C. Faber<br>Ostrolenk, Faber, Gerb & Soffen<br>1180 Avenue of the Americas<br>New York, New York 10036-8403 | UNITED STATES DESIGNATED/ELECTED<br>OFFICE (DO/EO/US)<br>NOTIFICATION OF ACCEPTANCE OF<br>APPLICATION UNDER 35 U.S.C. 371<br>AND 37 CFR 1.494 OR 1.495 |
|---|---|
| | Date of Mailing **3 0 MAY 1992** |
| | File Reference<br>F-9175 PCT |

### IDENTIFICATION OF THE INTERNATIONAL APPLICATION

| International application Number | International filing date | Priority date claimed |
|---|---|---|
| PCT/EP90/01313 | 09 August 1990 | 22 August 1989 |

Applicant for DO/EO/US

Rudolf, Buck et al.

### NOTIFICATION

The applicant is hereby advised that the Unites States Patent and Trademark Office in its capacity as a ☒ Designated Office, ☐ Elected Office, has determined that the above identified international application has met the requirements of 35 U.S.C. 371 and 37 CFR ☒ 1.494, ☐ 1.495 and is ACCEPTED for national patentability examination in the United States Patent and Trademark Office.

The United States Serial Number assigned to the application and the relevant dates are:

*07/773965      12 Nov 91      12 Nov 91*

U.S. NATIONAL SERIAL NO.    35 U.S.C. 102(e) DATE    DATE OF RECEIPT 35 U.S.C.
                                                       371 REQUIREMENTS

☒ A request for immediate examination under 35 U.S.C. 371 (f) was received on
*12 Nov 91*_____ and the application will be examined in turn.

☐ No request for immediate examination under 35 U.S.C. 371(f) was received. The application will not be processed or examined before the time limit set forth in either
☐ PCT Article 23 (Chapter I of the PCT), or ☐ PCT Article 40 (Chapter II of the PCT) whichever is applicable.

### UNITED STATES DESIGNATED/ ELECTED OFFICE

| ADDRESS ONLY:<br>COMMISSIONER OF PATENTS AND TRADEMARKS<br>Box PCT, Attn. DO/EO/US<br>Washington, D.C. 20231 | AUTHORIZED OFFICER<br><br>**REGINA WHITE** *Regina White*<br>**INTERNATIONAL DIVISION** |
|---|---|

Form PCT/DO/EO/903 (U.S. Version) (April 1987)      U.S. DEPARTMENT OF COMMERCE - PTO
sdj

JFI0204413

line 17, delete entire line and substitute

--forth below.  In particular, there is a
respective drainage strip above each of the
two wire belts in the second section of the
twin wire zone, and at least one of the two
drainage strips is supported resiliently
against the respective wire belt while the
other may or may not be resiliently sup-
ported, and typically is rigidly supported
against the respective wire belt.  Prefer-
ably, there are at least two of the
drainage strips and often more against each
of the wire belts.  The drainage strips
against one belt are offset along the path
of the wire belts with respect to the
drainage strips against the other belt,
providing a zig zag or staggered array, and
the drainage strips against at least one of
the belts are resiliently supported.--

Page  5, line 18, delete "Claim 2";

at the end of the line insert --In
particular, the drainage strips above each
one of the wire belts are of a thickness
along the path of the wire belts and the
spacing between adjacent strips above each
wire belt is a minimum of about three times
the strip thickness.--

Page  6, before line 7, insert --BRIEF DESCRIPTION OF
THE DRAWINGS--;

before line 12, insert --DETAILED DESCRIPTION OF
THE PREFERRED EMBODIMENTS--

Page  8, line  9, change "12 and 13" to --11 and 12--;

IN THE CLAIMS:

Please cancel claims 1-12.

Please add claims 13-33 as follows:

#3946                          -2-

JFI0204414

-13. A twin-wire former for the production of
a paper web from a fiber suspension, the twin wire former
comprising:

first and second web forming wire belts, means
5  for directing the wire belts to travel along a path
together for forming a twin wire zone of the twin wire
former, with the web between the wire belts as the wire
belts travel along the path through the twin wire zone;

the twin wire zone having a first section at
10  the start of the path through the twin wire zone, means
for supporting the belts for forming a wedge shaped
entrance slot into the first section, the slot being
adapted for receiving suspension directly from a head
box; a curved drainage element in the first section, the
15  curved drainage element being curved along the path of
the belts through the twin wire zone, the curved drainage
element being engaged by one of the wire belts, for
curving the path of the belts around the curved drainage
element after the entrance of the suspension into the
20  entrance slot;

the twin wire zone having a second section
following the first section along the path of the belts
through the twin wire zone; in the second section, at
least one first drainage strip which is positioned at the
25  side of the first wire belt away from the second wire
belt and is for contacting the first wire belt; in the
second section, at least one second drainage strip which
is positioned at the side of the second wire belt away
from the first wire belt and is for contacting the second
30  wire belt; one of the first and second strips being
shifted in position along the path of the wire belts with
respect to the other of the first and second strips;
means for resiliently supporting at least one of the
first and second drainage strips against the respective
35  wire belt that that strip contacts;

-3-

JFI0204415

the twin wire zone having a third section
following the second section along the path of the wire
belts through the twin wire zone; a stationary drainage
element in the third section, for being engaged by one of
40    the wire belts as the wire belts travel over the
stationary drainage element.

14.  The twin wire former of claim 13, wherein
in the second section of the twin wire zone, there are at
least two of the first drainage strips at the first wire
belt and spaced from each other along the path of the
5     wire belts and there are at least two of the second
drainage strips at the second wire belt and spaced from
each other along the path of the wire belts, with the
first drainage strips being shifted along the wire belt
path with respect to the second drainage strips such that
10    the first and second drainage strips alternate along the
path of the wire belts;
at least one of the first drainage strips being
resiliently supported against the first wire belt.

15.  The twin wire former of claim 14, wherein
each of the first and second wire belts is in the form of
a respective endless wire loop; means guiding the wire
loops to define the twin wire zone;
5     the first drainage strips being arranged in the
first wire loop and the second drainage strips being
arranged in the second wire loop.

2 16.  The twin wire former of claim 14, wherein
each of the drainage strips has a respective thickness in
the direction along the path through the twin wire zone;
neighboring ones of the first drainage strips are spaced
5     a minimum distance of about three times the respective
first strip thickness, and neighboring ones of the second

-4-

#9946

JFI0204416

drainage strips are also spaced a minimum distance of
about three times the respective second strip thickness.

17.   The twin wire former of claim 14, further
comprising means supporting each of the first drainage
strips resiliently against the first wire belt; and
support means supporting the second drainage
strips rigidly against the second wire belt.

18.   The twin wire former of claim 17, wherein
the support means for the second drainage strips include
means enabling adjustment of the position of the second
drainage strips relative to the second wire belt to set
the initial rigid position thereof.

19.   The twin wire former of claim 18, wherein
the support means for the second drainage strips comprise
a support body to which the second drainage strips are
supported, and bearings on which the support body is
supported for enabling displacement of the support body
across the path of the wire belts through the second
section.

20.   The twin wire former of claim 14, further
comprising a respective individual support body
supporting each of at least one of the first and second
drainage strips individually, and means supporting the
respective support body for each strip to be displacable
for enabling displacement of the respective strip
transverse to the direction of the path of the wire
belts.

21.   The twin wire former of claim 14, further
comprising a respective individual support body
supporting each of the first and second drainage strips
individually and means further supporting the respective

-5-

5    support body of at least one of the first and second
strips for enabling those strips to be moved transverse
to the direction of the path of the wire belts.

22. In combination, the twin wire former of
claim 13 and a fiber suspension supplying headbox having
an outlet placed and directed for delivering fiber
suspension from the headbox to the wedge shaped entrance
5    slot of the first section of the twin wire zone.

23. The twin wire former of claim 13, further
comprising a curved stationary forming shoe in the first
section of the twin wire zone and following after and
spaced from the curved drainage element along the path of
5    the wire belts through the first section;
a first section strip disposed at the second
wire belt and in the space between the curved drainage
element and the curved stationary forming shoe in the
first section of the twin wire zone along the path of the
10   wire belts through the twin wire zone for enabling
removal of water from the second wire belt.

24. The twin wire former of claim 16, wherein
the stationary drainage element in the third section of
the twin wire zone has a curvature that is curved in the
same direction as the curvature of the curved drainage
5    element in the first section of the twin wire zone.

25. The twin wire former of claim 24, further
comprising an additional strip in the third section of
the twin wire zone following the stationary drainage
element and disposed against the other wire belt than the
5    stationary drainage element.

26. The twin wire former of claim 24, wherein
the curved drainage element in the first section of the

#9946                            - 6 -

JFI0204418

twin wire zone and the stationary drainage element in the
third section of the twin wire zone are arranged against
the same one of the first and second wire belts.

27.  The twin wire former of claim 13, wherein
the region of the twin wire zone following the entrance
slot in the first section of the twin wire zone and
extending approximately to the stationary drainage
element in the third section of the twin wire zone is
free of rolls which curve the twin wire zone.

28.  The twin wire former of claim 13, further
comprising a suction roll at one of the wire belts and
located after the stationary drainage element along the
path of the wire belts; both of the wire belts being
wrapped about part of the circumference of the suction
roll.

29.  The twin wire former of claim 13, wherein
the means for directing the wire belts are positioned so
that the twin wire zone rises substantially vertically
upwardly in the path of travel of the wire belts through
the twin wire zone.

30.  The twin wire former of claim 13, wherein
the means for directing the wire belts are positioned so
that the twin wire zone rises gradually upwardly along
the path of travel of the wire belts through the twin
wire zone at an incline with respect to the horizontal in
the range of about 10° to 30°.

31.  The twin wire former of claim 13, wherein
the first and the second drainage strips in the second
section of the twin wire zone are both arranged one after
the other along the path of the wire belts through the

JFI0204419

twin wire zone so as to define a curvature for the path
of the wire belts through the second section.

15 72.  The twin wire former of claim 11, wherein
the first and second drainage strips are positioned in
the second section of the twin wire zone to define a
curvature for the path of the wire belts through the
second section of the twin wire zone that is opposite the
curvature of the curved drainage element in the first
section of the twin wire zone.

16 73.  The twin wire former of claim 15, wherein
the means for directing the wire belts are positioned so
that the twin wire zone extends substantially
horizontally;

the curved drainage element in the first
section of the twin wire zone being generally curved
upwardly for giving the path of the wire belts through
the first section of the twin wire zone a generally
upward curve; the first and second drainage strips in the
second section of the twin wire zone being so positioned
as to give the wire belts a generally downward curvature
through at least part of the second section of the twin
wire zone and the stationary drainage element in the
third section of the twin wire zone is curved in a
direction to give the wire belts passing through the
third section of the twin wire zone a generally upward
curvature.--

<u>REMARKS</u>

Specification changes add section headings, correct
typographical errors in element numbers which appeared in the
original German language text and replace references to claim
numbers with the applicable content of the claims named in the
specification.

- 8 -

JFI0204420

The original claims have been replaced with a new set of claims to improve the claim form for U.S. practice, to eliminate multiple dependent claims and to reduce the fees payable for the claims to the amount of the fee paid upon the filing of this application.

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail Post Office Addressee (mail label #624862909US) in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on November 12, 1991
        Wilbert Brown
Name of applicant, assignee or Registered Representative

_Wilbert Brown_
November 12, 1991
Date of Signature

Respectfully submitted,

Robert C. Faber
Registration No.: 24,322
OSTROLENK, FABER, GERB & SOFFEN
1180 Avenue of the Americas
New York, New York  10036-8403
Telephone:  (212) 382-0700

RCF:cfr

JFI0204421

# EXHIBIT N



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/773,965 | 11/12/91 | BUCK | R | F-9175-PCT |

EXAMINER
HASTINGS.K

OSTROLENK, FABER, GERB AND SOFFEN
1180 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8403

| ART UNIT | PAPER NUMBER |
|---|---|
| 1303 | 5 |

DATE MAILED: 09/14/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

(Prelim. Amendment)
11-12-91

☒ This application has been examined   ☒ Responsive to communication filed on 11-12-91   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims 13-33 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims 1-12 _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims 13-33 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☒ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☒ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____   *PCT*

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

JFI0204422

Serial No. 773,965                               -2-

Art Unit   1303

Claims 13-16, 20-33 are rejected under 35 U.S.C. § 112, first paragraph, as the disclosure is enabling only for claims limited to two (2) flexibly supported strips located opposite rigidly supported strips in a zig-zag line.   Note page 15 "The minimum number of flexibly supported strips is two" (emphasis provided_. Note also page 4, C.  Therefore, the limitations of claims 14 and 17 should be put into claim 13.  Furthermore, the claim 13 needs to be positively limited to a gap twin wire former without predrainage on a single wire - note page 4 lines 20-21.  Thus the limitation of claim 22 should be placed into claim 13 and claim 13 amended to recite --, neither wire belt defines a single wire predrainage zone-- on line 8 after "zone".  See M.P.E.P. §§ 706.03(n) and 706.03(z).

Claims 13-33 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claim 13 is indefinite to failing to positively recite a twin wire zone with no single wire predrainage.  Claim 13, line 13 "adapted" should be amended to --structured and arranged for--. Claim 13 needs to recite at least two resiliently mounted drainage strips in a zig-zag line with other strips to be commensurate in

JFI0204423

Serial No. 773,965                          -3-

Art Unit   1303

scope with the specification.

It is not clear what claim 21 intends to claim versus claim

22. In claim 22 what does "those strips" refer to? Correction is

necessary.

Claim 27 line 3 "second" should be --section--.

The following is a quotation of the appropriate paragraphs of
35 U.S.C. § 102 that form the basis for the rejections under this
section made in this Office action:

A person shall be entitled to a patent unless --
(b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the date
of application for patent in the United States.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section 102
of this title, if the differences between the subject matter
sought to be patented and the prior art are such that the
subject matter as a whole would have been obvious at the time
the invention was made to a person having ordinary skill in
the art to which said subject matter pertains. Patentability
shall not be negatived by the manner in which the invention
was made.

Subject matter developed by another person, which qualifies as
prior art only under subsection (f) or (g) of section 102 of
this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

Claims 13-17, 28-30 are rejected under 35 U.S.C. § 102(b) as

Serial No. 773,965                    -4-

Art Unit   1303

anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over German DE 3138133.

Fig. 3 of DE '133 shows every structural element claimed absent <u>positive</u> recitations of a headbox location <u>and</u> no single wire predrainage zone.  Any differences that may be gleaned are obvious.  Claim 22 is rejected under 35 U.S.C. § 103 as being unpatentable over DE '133 as applied to claim 13 above, and further in view of Armstrong et al which shows obviousness of a second headbox <u>15</u> before twin wire zone.  Thus it would have been prima facie obvious to modify DE '133 to include a second headbox to deposit a second fiber ply onto the first fiber ply for the known advantages of multiply webs.

*new paragraph*

Claims 13-33 are rejected under 35 U.S.C. § 103 as being unpatentable over Tissari or Koski in view of DE '133.

Tissari, especially at Fig. 6, shows every feature claimed of claim 13+ <u>except</u> it does not specify that at least one of the strips 45 or 44 are "resiliently supported".  Likewise Koski's sole Figure shows every feature of claim 13+ except at least one or more of deflectors <u>17</u>, <u>37</u> being "resiliently mounted".  However the artisan is well aware of the option and advantages of resiliently supported dewatering ribs/strips as evidenced by DE 3138133.  Thus it would have been prima facie obvious to resiliently support at

JFI0204425

Serial No. 773,965                                    -5-

Art Unit   1303

least one or more of the strips 44, 45 of Tissari or 17, 37 of

Koski for the known advantages of same.

    All dependent claims are shown or are prima facie obvious

modifications to one of ordinary skill in the art.  For example,

the alternatives of individually mounting the drainage strips or mounting them in group is well

known in the art.  Providing adjustability in any or all directions

of drainage elements is also well known in the art.  Providing more

drainage elements and/or strips (claim 23) would have been prima

facie obvious for the known advantage of increased dewatering.

    The prior art made of record and not relied upon is considered

pertinent to applicant's disclosure.

    Schiel et al teaches in col. 1, Background that a typical twin

wire former has resilient ledges.

    Any inquiry concerning this communication should be directed

to K. Hastings at telephone number (703) 308-0470.


                                        KAREN M. HASTINGS
                                        PRIMARY EXAMINER
                                        ART UNIT 133

Hastings/ad
September 11, 1992                       9-14-92

JFI0204426

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 08/055978 773965 | GROUP ART UNIT 1303 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S)

Buck et al

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 3994744 | 11-76 | Halmi et al | 162 | 352 | ✓ |
| | B | 4425187 | 1-84 | Armstrong et al | 162 | 300 | |
| | C | 4609435 | 9-86 | Tissari | 162 | 352 | |
| | D | 4917766 | 4-90 | Koivuranta et al | 162 | 301 | 6-88 |
| | E | 4925531 | 5-90 | Koski | 162 | 301 | 5-84 |
| | F | 5078835 | 1-92 | Schiel et al | 162 | 352 | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | 88 06 03 66 | 6-88 | Germany | — | 162 | 301 | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| Hasty | 9-92 |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

JFI0204427

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 773965 | GROUP ART UNIT 1303 | ATTACHMENT TO PAPER NUMBER 5 |
| --- | --- | --- | --- | --- |
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Buck et al | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | A | 3 9 9 4 7 4 | 11-76 | Halm et al | 162 | 352 | |
| | B | 4 4 2 5 1 8 7 | 1-84 | Armstrong et al | 162 | 306 | |
| | C | 4 6 0 9 4 3 5 | 9-86 | Tissari | 162 | 357 | |
| | D | 4 9 1 7 7 6 6 | 4-90 | Koivurunta et al | 162 | 301 | 6-88 |
| | E | 4 9 2 5 5 3 1 | 5-90 | Kask | 162 | 301 | 5-84 |
| | F | 5 0 7 8 8 3 5 | 1-92 | Schiel et al | 162 | 352 | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | L | 88 06 03 6 | 6-88 | Germany | — | 117 | 301 | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
| --- | --- |
| R | |
| S | |
| T | |
| U | |

| EXAMINER Hash | DATE 9-92 |
| --- | --- |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).).

JFI0204428

# EXHIBIT O

#6 B/BM 12-3-92

BM 12-3-92

F-9175 PCT (14-228)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of
R. Buck, D. Egelhop et. al.          Date: November 19, 1992
Serial No.: 07/773,965               Group Art Unit: 1303
Filed: November 12, 1991             Examiner: Hastings, K.
For: TWIN-WIRE FORMER
------------------------------------------------------
Hon. Commissioner of Patents
and Trademarks
Washington, D.C.  20231

AMENDMENT

Sir:

        In response to the Office Action mailed September 14,
1992, please amend the above-identified application as follows:

IN THE CLAIMS:

        Cancel claims 1 and 22.

        Please amend the claims as follows:

        13.  (Amended)  A twin-wire former for the production
of a paper web from a fiber suspension, the twin wire former
comprising:

        first and second web forming wire belts, means for
directing the wire belts to travel along a path together for
forming a twin wire zone of the twin wire former, with the web
between the wire belts as the wire belts travel along the path
through the twin wire zone, neither wire belt defining a single
wire predrainage zone;

        the twin wire zone having a first section at the start
of the path through the twin wire zone, means for supporting the
belts for forming a wedge shaped entrance slot into the first
section, a fiber suspension supplying headbox having an outlet
placed and directed for delivering fiber suspension from the



AMDT\30466

JFI0204434

headbox to the wedge shaped entrance slot of the first section of the twin wire zone [the slot being adapted for receiving suspension directly from a head box]; a curved drainage element in the first section, the curved drainage element being curved along the path of the belts through the twin wire zone, the curved drainage element being engaged by one of the wire belts, for curving the path of the belts around the curved drainage element after the entrance of the suspension into the entrance slot;

the twin wire zone having a second section following the first section along the path of the belts through the twin wire zone; in the second section, at least <u>two</u> [one] first drainage <u>strips are</u> [strip which is] positioned at the side of the first wire belt away from the second wire belt and <u>are</u> [is] for contacting the first wire belt; in the second section, at least one second drainage strip which is positioned at the side of the second wire belt away from the first wire belt and is for contacting the second wire belt; one of the first and second strips being shifted in position along the path of the wire belts with respect to the other of the first and second strips; <u>first support</u> means for resiliently supporting [at least one of] the first [and second] drainage strips against the respective wire belt that that strip contacts;

<u>second support means supporting the at least one second drainage strip rigidly against the second wire belt;</u>

the twin wire zone having a third section following the second section along the path of the wire belts through the twin wire zone; a stationary drainage element in the third section, for being engaged by one of the wire belts as the wire belts travel over the stationary drainage element.

14.  (Amended) The twin wire former of claim 13, wherein [in the second section of the twin wire zone, there are at least two of the first drainage strips at the first wire belt and spaced from each other along the path of the wire belts and] there are at least two of the second drainage strips at the

JFI0204435

second wire belt [and] spaced from each other along the path of the wire belts, with the first drainage strips being shifted along the wire belt path with respect to the second drainage strips such that the first and second drainage strips alternate along the path of the wire belts; _and wherein_
_the second support means supports the at least two_ _second drainage strips rigidly against the second wire belt_ [at least one of the first drainage strips being resiliently supported against the first wire belt].

21. (Amended) The twin wire former of claim 14 _wherein the first and second support means comprise_ [further comprising] a respective individual support body supporting each of the first and second drainage strips individually and means further supporting the respective support body of at least one of the first and second strips for enabling _said one strip_ [those strips] to be moved transverse to the direction of the path of the wire belts.

Claim 21, line 3, change "second" to --section--.

## REMARKS

Claims 13, 14, 21 and 27 have been amended to address the Examiner's rejection thereof under 35 U.S.C. §112. Claims 17 and 22 have been cancelled. Reconsideration of the application in view of the foregoing amendments and the following remarks is respectfully requested.

Claims 13-16, 20, 21 and 23-33 stand rejected under 35 U.S.C. §112, first paragraph. As noted, claims 13, 14, 21 and 27 have been amended and it is believed that the amendments have addressed all of the areas noted by the Examiner with one exception. Claim 13 has not been amended to require at least two rigidly supported strips. While the Examiner is correct that applicants' specification indicates on page 15 that the minimum number of flexibly supported strips is 2, it is also indicated on page 14, lines 29-31 that it is possible to make the number of

JFI0204436

flexibly supported strips equal to or greater by one than the
number of rigidly supported strips.  Thus, while two flexibly
supported strips are required, only one rigidly supported strip
is required.  In view of the foregoing, it is believed that the
rejection under 35 U.S.C. §112, first paragraph has been overcome
and it is respectfully requested that this rejection be
withdrawn.

     Claims 13-16 and 28-30 stand rejected under 35 U.S.C.
§102(b) as being anticipated by, or in the alternative, under 35
U.S.C. §103 as being obvious over German DE 3138133 ("DE '133").
Applicants respectfully traverse such rejection.

     Claim 13, as amended, is now positively directed to a
twin-wire former which includes a head box having an outlet
placed and directed for delivering fiber suspension to the wedge
shaped entrance slot of a first section of a twin wire zone of
the former and positively recites that neither wire belt defines
a single wire for pre-drainage zone.

     In contrast, DE '133 includes, as noted on page 5, line
27 of applicants' specification, and as recognized by the
Examiner, a single wire pre-drainage zone position in front of
the twin-wire zone.  As a result of the pre-drainage zone,
forming of the web starts initially only in the lower layer of
the fiber suspension while the upper layer remains liquid with
the strong tendency to flocculation, and the resultant flakes
cannot be broken up again to the desired extent in the following
twin-wire zone.

     While the Examiner recognizes that DE '133 has a single
wire predrainage zone, the Examiner contends that the elimination
thereof in DE '133 would be obvious.  However, no support is
offered for such assertion and applicants assert that such is not
the case.  Accordingly, it is respectfully submitted that DE '133
neither discloses nor suggests the twin-wire former set forth in
claim 13 and that claim 13 is therefore patentable over DE '133.

     Claims 14-16 and 28-30 are dependent either directly or
indirectly from claim 13 and are therefore similarly patentable.
In addition, these claims recite features such as the thickness

AMDT\30466                    -4-

JFI0204437

and spacing of the drainage strips, which are neither disclosed nor suggested by DE '133. In view of the foregoing, it is respectfully requested that the rejection of claims 13-16 and 28-30 on the basis of DE '133 be withdrawn.

Claims 13-16, 18-21 and 23-33 stand rejected under 35 U.S.C. §103 as being unpatentable over Tissari (U.S. Patent No. 4,609,435) or Koski (U.S. Patent No. 4,925,531) in view of DE '133. Applicants respectfully traverse such rejections.

As noted by the Examiner, both Tissari and Koski are each deficient in not disclosing resilient support. Thus, in Tissari, neither the strips 45 or 44 are resiliently supported and in the case of Koski neither of the deflectors 17 or 37 are resiliently supported.

The Examiner alleges that the artisan is well aware of the option and advantages of resiliently supporting the watering ribs/strips as evidenced by DE '133. However, as noted on page 4, line 18, et seq., of applicants' specification, applicants are not claiming that any of the specific features are new. What applicants are claiming however is that they are the first to have combined these features as specified in claim 1 and that such combination provides unforeseeable improvements in the resultant product, to wit, the combination of claim 1 results in extremely high increase in the quality of the finished fiber web while at the same time being insensitive to changes in the amount of suspension fed and to changes in the drainage behavior of the fiber suspension. Thus it is possible to obtain both a high increase in quality with respect to the formation and also good values with regard to the retention of fillers and fines. In contrast, in the twin-wire formers of the prior art, it is found that there is a strong reduction in the retention of fillers and fines. Neither Tissari nor Koski disclose or suggest that the dewatering ribs/strips employed therein should have one set which is resiliently mounted and the other set rigidly mounted. In view of the foregoing, applicants respectfully submit that claim 13 is patentable over Tissari, Koski and DE '133, either considered singly or in combination.

AMDT130466                    -5-

JFI0204438

Claims 14-16, 18-21 and 23-33 are dependent either directly or indirectly from claim 13 and are therefore believed similarly allowable. In addition, these claims define additional features of the invention not disclosed or suggested in the reference, and in particular none of the references disclose the thickness and spacing of the drainage strips as claimed in claim 16.

With respect to the citation by the Examiner of Schiel, et al. (U.S. Patent No. 5,078,835), applicants respectfully point out that Schiel's effective date of reference is its U.S. filing date of June 6, 1991. Applicants' priority date, however, is August 22, 1989 and accordingly Schiel et al. is not prior art against this application.

With respect to the rejection of claim 22 as being unpatentable over DE '133, and further in view of Armstrong et al. (U.S. Patent No. 4,425,187), claim 22 has been cancelled and so this rejection is deemed moot. Applicant also wishes to point out that there is only one headbox employed in applicants' twin-wire former.

In view of the foregoing, this application is now believed to be in condition for allowance, which action is respectfully requested.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on November 19, 1992.

Martin Pfeffer
Name of applicant, assignee or
Registered Representative

Signature
November 19, 1992
Date of Signature

Respectfully submitted,

Martin Pfeffer
Registration No.: 20,808
OSTROLENK, FABER, GERB & SOFFEN
1180 Avenue of the Americas
New York, New York  10036-8403
Telephone:  (212) 382-0700

MP:rdj:ss

AMDT\30466

—6—

JFI0204439

# EXHIBIT P



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office ·
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | EGELHOF FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

13M1/0425

OSTROLENK FABER GERB & SOFFEN
1180 AVENUE OF THE AMERICAS
NEW YORK NY 10036-8403

| EXAMINER |
|---|
| HASTINGS, K |

| ART UNIT | PAPER NUMBER |
|---|---|
| | 04/25/97 / C |

DATE MAILED:

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☑ This communication is responsive to *Amdt+B + Terminal Disclaimer*

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are *5, 6, 29, 30, 32 (renumbered 1-5)*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. _____ filed on _____

6. ☑ Note the attached Examiner's Amendment.

7. ☑ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____ . CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
- Examiner's Amendment
- Examiner Interview Summary Record, PTOL-413
- Reasons for Allowance
- Notice of References Cited, PTO-892
- Information Disclosure Citation, PTO-1449

- Notice of Informal Application, PTO-152
- Notice re Patent Drawings, PTO-948
- Listing of Bonded Draftsmen
- Other

PTOL-37 (REV. 4-89) *

Serial Number: 08/556,769                                                    Page 2

Art Unit:

1:      An examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312.

To ensure consideration of such an amendment, it MUST be submitted no later than the payment

of the issue fee.

        Authorization for this examiner's amendment was given in a telephone interview with Mr.

Pfeffer on 4-23-97.

2:      The application has been amended as follows:

        Claim 33 has been canceled.

        Claim 32, line 11 --single-- has been inserted before "first" , and on the penultimate line

after "zone" ,apart from said first drainage element which is a single forming roll,  has been

inserted, and "guide" has been deleted, and last line "and which....effect" has been deleted.


3:      Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Exr Hastings whose telephone number is (703) 308-0470.


kmh

April 24, 1997

KAREN M. HASTINGS
PRIMARY EXAMINER
ART UNIT 133

4-24-97

<u>**CERTIFICATE OF SERVICE**</u>

I, Patricia P. McGonigle, Esquire, hereby certify that on this 16th day of January 2008, I electronically filed the foregoing pleading with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.  Further, I caused a copy of the foregoing pleading to be served upon the following counsel as noted


<u>**Via Hand Delivery**</u>
Adam W. Poff, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899

<u>**Via Email**</u>
Neil F. Greenblum, Esquire
Neal Goldberg, Esquire
Michael J. Fink, Esquire
Greenblum & Bernstein, PLC
1950 Roland Clarke Place
Reston, Virginia  20191


/s/  *Patricia P. McGonigle*
_____
Patricia P. McGonigle (ID No. 3126)
pmcgonigle@svglaw.com

62910 v1