IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VOITH PAPER GMBH & CO. KG          :
                                   :      Civil Action No. 07-226-JJF
          Plaintiff,               :
                                   :
     v.                            :
                                   :
JOHNSONFOILS, INC.                 :
                                   :
          Defendant.               :

**OPENING BRIEF IN SUPPORT OF DEFENDANT JOHNSONFOILS, INC.'S
MOTION TO STRIKE DECLARATION OF MICHAEL H. WALLER IN SUPPORT
OF PLAINTIFF'S OPENING MARKMAN BRIEF OR IN THE ALTERNATIVE
FOR AN ORDER DIRECTING MICHAEL H. WALLER TO APPEAR AT THE
JANUARY 30, 2008 MARKMAN HEARING TO ALLOW DEFENDANT THE
OPPORTUNITY TO CROSS-EXAMINE**

George H. Seitz, III (DE #667)
Patricia Pyles McGonigle (DE #3126)
Kevin A. Guerke (DE#4096)
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

-and-

Anthony S. Volpe
John J. O'Malley
Ryan W. O'Donnell
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400

*Attorneys for Defendant
JohnsonFoils, Inc.*

63089v1

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................i

TABLE OF AUTHORITIES ........................................................ iii

I.    NATURE AND STAGE OF THE RELEVANT PROCEEDINGS ..................... 1

II.   SUMMARY OF ARGUMENT ................................................... 2

III.  STATEMENT OF RELEVANT FACTS ........................................... 3

IV.   ARGUMENT ................................................................. 4

      A.    Legal Standards ................................................... 4

      B.    The Waller Declaration Should Be Stricken ........................... 7

            1.    Declaration Is In Direct Conflict With The
                  Intrinsic Record Of The Patents-In-Suit And
                  Must Be Rejected .......................................... 7

            2.    The Waller Declaration Is Unreliable And
                  Inadmissible ............................................. 12

                  a.    The Waller Declaration Is Not Based On
                        Sufficient Facts Or Data .......................... 12

                  b.    The Waller Declaration Does Not Apply
                        Reliable Data To The Claim Construction
                        Issues Relevant to This Case ........................ 13

            3.    The Waller Declaration Does Not Comply With
                  Expert Disclosure Rules .................................. 14

                  a.    The Waller Declaration Should Be Stricken
                        For Voith's Failure to Disclose Mr. Waller
                        Pursuant To Fed. R. Civ. P. 26(a)(1)(A)(i) ........ 14

                  b.    The Waller Declaration Should Be Stricken
                        For Voith's Failure To Comply With Fed. R.
                        Civ. P. 26(a)(2) .................................. 16

C.    JohnsonFoils Should Be Able To Cross-Examine
Mr. Waller At The Markman Hearing ................................................... 17

V.    CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell and Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
   132 F.3d 701 (Fed. Cir. 1997)..................................................................5
*Bell Atl. Network Serv., Inc. v. Covad Commc'ns Group*,
   262 F.3d 1258 (Fed. Cir. 2001)................................................................12

*Brookhill-Wilk, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294
   (Fed. Cir. 2003) ........................................................................................12

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ......................5, 6

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ..........................................6, 7

*Dunkin' Donuts Inc. v. Patel*, 174 F. Supp.2d 202 (D. N.J. 2001)...............................16, 17

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ........................................................7

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ...........................................................6, 7

*Graham v. John Deere*, 383 U.S. 1 (1966) .......................................................................13

*Heller v. Shaw*, 167 F.3d 146 (3d Cir. 1999) ....................................................................6

*Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709 (Fed. Cir. 1998) ...............................12

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ..................................................6, 7, 8

*Mantech Envtl. Corp. v. Hudson Envtl. Serv. Inc.*, 152 F.3d 1368
   (Fed. Cir. 1998) ........................................................................................5

*Markman v. Westview Instruments*, 517 U.S. 370 (1996) ..................................................4

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995),
   aff'd, 517 U.S. 370 (1996)........................................................................4

*Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004).....................................15

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) .......................................................7

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ..........................................7

*Phillips v AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......................................4, 5, 12, 17

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999) ....................5

*Senmed, Inc.* v. *Richard-Allan Med. Indus., Inc.*, 888 F.2d 815 (Fed. Cir. 1989).............17

*Trost v. Trek Bicycle Corp.*, 162 F.3d 1004 (8th Cir. 1998)................................................15

*Vitronics Corp. v. Conceptronic*, 90 F.3d 1576 (Fed. Cir. 1996) ...................................4, 5

## RULES

Fed. R. Civ. P. 26 ................................................................................................................15

Fed. R. Civ. P. 26(a) ...........................................................................................................15

Fed. R. Civ. P. 26(a)(1)(A) .................................................................................................14

Fed. R. Civ. P. 26(a)(1)(A)(i) .............................................................................................14

Fed. R. Civ. P. 26(a)(1)(B) .................................................................................................15

Fed. R. Civ. P. 26(a)(2)...................................................................................................15, 16

Fed. R. Civ. P. 26(a)(2)(B) ..........................................................................................3, 15, 16, 17

Fed. R. Civ. P. 37 ................................................................................................................17

Fed. R. Civ. P. 37(c)(1)....................................................................................................3, 15

Fed. R. Evid. 702 ..........................................................................................................3, 5, 14

## I. <u>NATURE AND STAGE OF THE RELEVANT PROCEEDINGS</u>

On April 27, 2007, Voith Paper GmbH & Co. KG ("Voith") filed this action alleging that JohnsonFoils, Inc. ("JohnsonFoils") infringed on Patent No. 5,718,805 ("the '805 Patent"), and Patent No. 5,972,168 ("the '168 Patent") (collectively referred to as "Patents-in-Suit"). JohnsonFoils served its Answer, Affirmative Defenses and Counterclaims on August 13, 2007.

On August 3, 2007, the Court issued a Scheduling Order setting the trial for <u>November 5, 2008</u>, and ordering the parties to:

(1) File all motions to amend the pleadings by <u>December 21, 2007</u>;

(2) File their respective Markman Briefs ten days prior to the scheduled Markman hearing;

(3) Attend a <u>Markman</u> hearing scheduled for <u>January 30, 2008</u>;

(4) Complete exchange of contentions interrogatories, identify witnesses and complete document discovery by <u>February 15, 2008</u>; and

(5) and complete fact discovery by <u>April 30, 2008</u>. (D.I. 17).

On January 16, 2008, JohnsonFoils filed its "Declaration of Patricia P. McGonigle in Support of Defendant, JohnsonFoils, Inc.'s Opening Claim Construction Brief." (D.I. 69).

On January 16, 2008, Voith filed its "Declaration of Michael J. Waller in Support of Plaintiff Voith Paper GmbH & Co. KG's Opening Markman Brief." ("Waller Declaration" or "Waller Decl.") (D.I. 66).

On January 16, 2008, Voith filed its "Plaintiff Voith Paper GmBH & Co. KG's Opening Markman Brief." (D.I. 65).

On January 16, 2008, JohnsonFoils filed its "Defendant JohnsonFoils, Inc.'s Opening Claim Construction Brief." (D.I. 68).

## II.    SUMMARY OF ARGUMENT

1.    Voith filed the Waller Declaration in Support of Plaintiff Voith Paper GmbH & Co. KG's Opening Markman Brief in an attempt to rewrite the claims of the Patents-in-Suit. Voith's Opening Markman Brief is nothing more than a string of citations to the Waller Declaration. See D.I. 65. The Waller Declaration is a series of isolated term interpretations divorced from the context of the claims. (D.I. 66 at 8 – 20). Although Waller purports to offer the ordinary meanings of the claim terms, the isolated interpretations have no relationship to a proper understanding of the claims or the technical background of the Patents-in-Suit. The Waller Declaration is in direct conflict with the intrinsic record of the Patents-in-Suit and must be rejected.

2.    Waller copies Voith's statements contained in the Patents-in-Suit related to alleged improvements achieved with the claimed apparatus. (D.I. 66 at 7 – 9 and 13 – 14). However, like Waller's isolated terms, such self serving validity statements have no bearing on either a proper understanding of a claim or the background technology of the Patents-in-Suit.

Waller's assertions lack factual support in the Patents-in-Suit and do not allude to any experimental or practical evidence to support his conclusions. The

Declaration is unreliable and inadmissible under Fed. R. Evid. 702.

3.     Voith, without justification, suppressed the fact that it would be submitting a declaration in support of its claim construction. JohnsonFoils had no opportunity to depose or refute Waller's opinion and is prejudiced by Voith's suppression. The Waller Declaration should be stricken pursuant to Fed. R. Civ. P. 37(c).

4.     The Waller Declaration is Mr. Waller's expert opinion and should be treated as an expert report. Voith failed to list Mr. Waller's publications, his compensation for his opinion and testimony, or other cases in which Mr. Waller has testified. The Waller Declaration should be stricken for failure to comply with Fed. R. Civ. P. 26(a)(2)(B).

5.     Voith submitted the Waller Declaration without giving JohnsonFoils notice or opportunity to depose Mr. Waller. The bias inherent in extrinsic evidence prepared for trial is amplified by Voith's stealth. If the court does not strike the Waller Declaration, JohnsonFoils respectfully requests that Mr. Waller be commanded to appear at the Markman Hearing and be subject to cross examination by JohnsonFoils.

III.    <u>STATEMENT OF RELEVANT FACTS</u>

JohnsonFoils contacted Voith in an attempt to reach an agreement on how the parties were going to submit their Markman briefing to the Court. At no point during the parties' communications did Voith identify a testifying expert or notify

- 3 -

JohnsonFoils that it intended to present an expert declaration as part of the *Markman* claim construction.   See Exhibits A – C.

## IV.   ARGUMENT

### A.   Legal Standards

Claim construction involves interpretation of the claims by their plain meaning and in light of the patent specification or prosecution history, *i.e.,* in light of the intrinsic record. *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) ("Markman II").   Accordingly, a court must look first to the intrinsic record when construing claims. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995) ("*Markman I*"), aff'd, 517 U.S. 370 (1996).  See also *Philips v. AWH Corp.,* 415 F.3d 1303, 1315 – 1316 (Fed. Cir. 2005).   In particular, "the context in which a term is used in the asserted claims can be highly instructive." *Id* at 1316. An expert's testimony in conflict with the intrinsic record must be rejected:

> The claims, specification, and file history, <u>rather than extrinsic</u> <u>evidence</u>, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. See Markman, 52 F.3d at 978-79, 34 USPQ2d at 1329. <u>Allowing the public</u> <u>record to be altered or changed by extrinsic evidence introduced at</u> <u>trial, such as expert testimony, would make this right meaningless.</u>

*Vitronics Corp. v. Conceptronic,* 90 F.3d 1576, 1583 (Fed. Cir. 1996), underlining emphasis added. Expert testimony may be used to help the court come to a proper understanding of a claim but only after consideration of the intrinsic record. *Markman I,* 52 F.3d 17 980 – 981 aff'd, 517 U.S. 370 (1996). "Opinion testimony on

claim construction should be treated with the utmost caution," because such testimony "amounts to no more than legal opinion -- it is precisely the process of construction that the court must undertake." See *Vitronics*, 90 F.3d at 1585; *Phillips*, 415 F.3d at 1318 - 1319. Further, if the claims can be interpreted based on intrinsic evidence, expert testimony is limited to the background in the technical area of the patent. *Mantech Envtl. Corp. v. Hudson Envtl. Serv. Inc.*, 152 F.3d 1368, 1372 – 1373 (Fed. Cir. 1998) (citing *Bell and Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997).

The use of expert testimony in claim construction requires the court to exercise its "basic gatekeeping obligation" under Fed. R. Evid. 702 to ensure that scientific, technical, other specialized knowledge is sufficiently reliable. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

The admission of expert testimony is governed by Fed. R. Evid. 702, which provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts in the case.

Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320 (3d Cir. 2003). The Supreme Court held that an "expert's opinion must be based on the 'methods and procedures of science' rather than on

'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). See also *Calhoun*, 350 F.3d at 321. The standards set forth in *Daubert* operate as a framework to ensure the relevance and reliability of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S.137, 151 (1999). It is the trial judge's role to serve as the gate-keeper in scrutinizing the evidentiary relevance and reliability of the proposed expert submission. See *Daubert*, 509 U.S. at 588-89, 595-97.

The court's inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, the court must also "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *Heller v. Shaw*, 167 F.3d 146, 153 (3d Cir. 1999). It is the trial court's responsibility to evaluate not only the principles and methodologies of the expert, but also whether the expert has properly applied those principles and methods to the facts of the case. *Daubert*, 509 U.S. at 592-593.

The Supreme Court and the Third Circuit have recognized certain factors to guide a trial court's assessment of the reliability of proffered scientific expert testimony. These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6)

the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the nonjudicial uses to which the method has been put.

See *Daubert*, 509 U.S. at 593-94; *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741, 742 n. 8 (3d Cir. 1994). As the Supreme Court noted in *Daubert*, this inquiry is a flexible one, and in this Circuit, it has been held that this list of factors is "nonexclusive" and that "each factor need not be applied in every case." *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000). Rather, the court must tailor its inquiry to the facts of each case and "should consider the specific factors identified in *Daubert* where [such factors] are reasonable measures of the reliability of the expert testimony." *Kumho Tire*, 526 U.S. at 150, 152 (noting that *Daubert* factors may or may not be useful depending on "nature of the issue, the expert's particular expertise, and the subject of his testimony") (citations omitted)).

If a court concludes that there is simply too great an analytical gap between the data and the opinion proffered, there is nothing in the Federal Rules of Evidence, *Daubert*, or its progeny, that requires a district court to admit the opinion. *General Elec.*, 522 U.S. at 145-46.

### B.    The Waller Declaration Should Be Stricken

#### 1.    The Waller Declaration Is In Direct Conflict With The Intrinsic Record Of The Patents-In-Suit And Must Be Rejected

In paragraphs 39 – 60, Waller describes "The Invention" as any twin wire former. (D.I. 66 at 8 - 12). In one instance, Waller states "To practice the invention, the twin wire formers claimed in the patents-in-suit are constrained to include at

- 7 -

least some drainage and forming elements positioned relative to one another in a specified way." (D.I. 66 at 11, ¶ 51). In contrast to Waller's characterizations, the claims of the Patents-in-Suit demand a very specific set of components in a first section, a second set of different specific components in a second section, and a third set of different specific components in a third section. The '805 Patent, Col. 8, lines 4 – 49. (See D.I. 68, Exhibit A). This attempt to broaden the claims, in conflict to the ordinary meaning of the claims, is characteristic of the Waller Declaration as a whole.

At paragraphs 66 – 94, Waller purports to define claim terms with their "ordinary and accustomed" meanings. (D.I. 66 at 14 – 20). However, the definitions rely on selective pin cites to the '805 Patent. (See D.I. 66 at ¶¶ 72, 74, 76, 77, 78, 79, 81, 82, 83, 84, 87, 89, 90, 92, 93, and 94). Or, the Waller Declaration cites to further extrinsic evidence and passages in the '805 Patent that coincidentally agree with the further extrinsic evidence. (See D.I. 66 at ¶¶ 69, 70, 71, and 86). Waller's pin cites conflict with the intrinsic evidence, including those noted in the following paragraphs.

<u>Drainage Elements in the First Section</u>

The Waller Declaration states "[a]t least one of the wire meshes passes over at least one drainage element in order to partially dewater the fiber suspension and begin formation of the web. ... In a preferred embodiment, this drainage element is curved, *e.g.*, a rotating forming cylinder or a (stationary) curved forming shoe. <u>Additional drainage elements may also be present.</u>" (D.I. 66 at 11, ¶¶ 53 – 55,

underlining added). With respect to "additional drainage elements," the Patents-in-Suit suggest that a straight shoe could be used but only under undefined "certain situations." The '805 Patent, Col. 4, lines 14-16. (See D.I. 68, Exhibit A). An element that can only exist in undefined "certain situations" cannot be part of the claimed combination. Also, Voith argued during prosecution of the patent that its drainage element was not a first section drainage strip as disclosed in the prior art, and thus disclaimed drainage strips. (D.I. 68 at 18). Clearly, Waller's use of "additional drainage elements" attempts to alter the special meaning of first section "drainage element" in the Patents-in-Suit and exceeds the scope of claims allowed by the USPTO.

### Drainage Strips in the Second Section

The Waller Declaration states "A drainage strip is a blade which contacts the wire. '805 patent, col. 4:20-28, 37-38 ("The strips scrape the water from the wires.")" (D.I. 66 at 18, ¶ 18, underlining added). This selective quote ignores the fact that the '805 Patent also states that the first section forming shoes have strips that scrape water; the '805 Patent, Col. 4, lines 15 – 12; and none of those forming shoe strips can be a second section "drainage strip." The '805 Patent, Col. 5, lines 15 – 30. (See D.I. 68, Exhibit A). In other words, a "drainage strip" is not a forming shoe strip. The Waller Declaration seeks to remove this explicit special restriction of "drainage strip" from the '805 Patent claims.

### Drainage Strip Support

The Waller Declaration states "at least one of the drainage strips on one side

of the wire meshes is resiliently supported while <u>at least one</u> of the drainage strips on the other side is rigidly supported." (D.I. 66 at 12, ¶ 57, underlining added). In stark contrast, the plain language of the claims states that <u>all</u> of the strips on one side are resiliently supported and <u>all</u> of the strips on the other are rigidly supported. See the '805 Patent Claim 1, Col. 8, lines 4 – 49 ("first support means for resiliently supporting <u>the</u> first drainage strips against the respective wire belt that the strips contact; second support means supporting <u>the</u> second drainage strips rigidly against the second wire belt"). (See D.I. 68, Exhibit A). Additionally, Voith could not overcome prior art rejections during the patent's prosecution without amending the claims to include this restrictive support arrangement. (D.I. 68 at 25 – 26). The Waller Declaration attempts to escape from the plain language of the claim and the explicit bargain Voith made with the USPTO in order to obtain the claims.

> First section

The Waller Declaration states "[t]he first forming section of a twin wire former is where web formation begins." (D.I. 66 at 16, ¶ 80). In contrast, the plain language of the claims explicitly defines the first section by its components. See the '805 Patent Col. 8, lines 4 – 49 (...a first section which includes a first drainage element ..., means for supporting the belts for forming a wedge shaped entrance slot ..., [and] a fiber suspension supplying headbox ...). (See D.I. 68, Exhibit A). Waller's identification of the "first section" seeks to expand it to any spot where web formation begins.

### Second section

The Waller Declaration defines this section as "[t]he forming section after the first forming section of a twin wire former." (D.I. 66 at 18, ¶ 80). As set forth immediately above, Waller allows the first section to be at any spot where web formation begins. This definition of the second section allows the expert to shift the second section and any of its components so that it is immediately after that spot. In contrast, the claims define the second section by its components. See the '805 Patent Col. 8, lines 4 – 49 (...a second section following the first section ... in the second section, a plurality of first drainage strips a ... a plurality of second drainage strips ... first support means for resiliently supporting the first drainage strips ... second support means supporting the second drainage strips rigidly ... first means for collecting the water ... second means separate from the first means for collecting the water ....). (See D.I. 68, Exhibit A). In addition, the Patents-in-Suit explicitly forbid any component of either the first or third section from being in the second section. See the '805 Patent, Col. 5, lines 15-30. (See D.I. 68, Exhibit A). The Waller Declaration attempts to redefine the second section and the location of its components to any section or position convenient for Voith's infringement analysis.

### Third section

The Waller Declaration states "[t]he forming section after the forming section of a twin wire former." Like the nebulous position definitions of the first and second sections, this definition seeks to re-define the third section not as it is claimed, by its components, but by a convenient position for infringement analysis.

The Waller Declaration is riddled with broadening definitions that would capture any known prior art twin wire former within the claims. As such, the Declaration is in direct conflict with the intrinsic evidence and must be rejected. *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716(Fed. Cir. 1998)(court should discount any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent."); *Phillips*, 415 F.3d at 1318.

### 2.    The Waller Declaration Is Unreliable And Inadmissible

#### a.    The Waller Declaration Is Not Based On Sufficient Facts Or Data

Mr. Waller states that he only reviewed the Patents-in-Suit, <u>portions</u> of the respective file histories and <u>various unidentified</u> dictionaries. (D.I. at 2, ¶5). By not reviewing the entire file history, Mr. Waller has committed a clear error. "Moreover, we *must* also examine the prosecution history to determine whether the patentee has relinquished a potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." [emphasis added] *Bell Atl. Network Serv., Inc. v. Covad Commc'ns Group*, 262 F.3d 1258, 1261 (Fed. Cir. 2001); *Brookhill-Wilk, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) ("[In construing a claim term,] resort must always be made to the surrounding text of the claims in question, the other claims, the written description, and the prosecution history.") By ignoring the complete prosecution history, he disregarded a mandatory step in claim construction.

b.    The Waller Declaration Does Not Apply Reliable
Data To The Claim Construction Issues Relevant
To This Case

The Waller Declaration, at paragraphs 9 – 34, describes paper making machines and alleged deficiencies in prior art machines. In paragraphs 35 – 36, Waller repeats and then quotes the '805 Patent as "evidence" of persistent problems faced in the industry in making quality paper at increased speeds. In paragraphs 39 and 62 – 64, Waller further quotes the '805 Patent as "evidence" that Voith solved these problems by the claimed combination. Finally, in paragraphs 40 -42, Waller states that Voith's alleged invention solved the problem despite the failure of others, filled a long felt need, was a dramatic improvement, and was never known before the teachings of the Patents-in-Suit.

Waller's statements have no bearing on the technical background of the Patents-in-Suit and they do not provide any understanding of any term of the claims. They ape the secondary considerations of non-obviousness, which are not an issue in a Markman proceeding. See *Graham v. John Deere*, 383 U.S. 1 (1966). As stated in the Patents-in-Suit, the alleged inventions an arrangement of known elements. Waller provides no support or independent evidence for his bald conclusions each of these statements is irrelevant to claim construction.

The Waller Declaration is silent as to any method that Waller used to identify whether Voith's alleged invention actually improved the quality or speed of paper making. Without any supporting data, it is impossible to determine whether the claimed inventions actually improved anything or solved any need. Waller's

"evidence" is nothing more than the wholesale repeat of Voith's self serving statements and *ispse dixit* proof. This is not the type of sufficient facts or data upon which an expert report must be based.

Clearly, the Waller Declaration is not reliable and is inadmissible under Fed. R. Evid. 702.

> 3. **The Waller Declaration Does Not Comply With Expert Disclosure Rules**
>
>> a. **The Waller Declaration Should Be Stricken For Voith's Failure To Disclose Mr. Waller Pursuant To Fed. R. Civ. P. 26(a)(1)(A)(i)**

Federal Rule of Civil Procedure 26(a)(1)(A) provides in pertinent part that:

> (1) Initial Disclosure
>
> (A) In General: Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

JohnsonFoils first learned that Mr. Waller would be submitting an expert declaration in support of Voith's Markman brief when his declaration was filed with Voith's Markman Brief. Mr. Waller was not identified by Voith in its initial disclosures, any discovery response, or when the parties exchanged communication regarding the planning of the briefing for the Markman hearing. See Exhibit D.

Apparently, Mr. Waller possesses discoverable information that Voith is using to support its claim construction position in this case. As such, Voith has

violated Rule 26(a)(2) by not disclosing Mr. Waller's identity prior to submitting his declaration. In such cases, if a "party fails to provide information or identify witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was justified or is harmless." Failure to comply with the requirements of Rule 26(a) requires "automatic and mandatory" exclusion of the proffered expert opinion pursuant to Rules 26 and 37(c)(1) where plaintiff cannot show that the violation was either "justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004); See *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1007-09 (8th Cir. 1998) (granting defendant's motion for summary judgment and affirming the district court's exclusion of plaintiff's expert's opinion because the disclosure was untimely and the untimeliness prejudiced defendant).

Voith provided no justification for its actions which cannot be classified as harmless. JohnsonFoils is significantly prejudiced by the late production of Mr. Waller's opinion because it was given no opportunity to depose Mr. Waller or refute his opinions or factual statements. The Waller Declaration should be stricken pursuant to Rule 37(c). *Id.*

> b.  **The Waller Declaration Should Be Stricken For Voith's Failure To Comply With Fed. R. Civ. P. 26(a)(2)**

Federal Rule of Civil Procedure 26(a)(2)(B) provides in pertinent part that:

(B) Written report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one

whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

>     (1)    A complete statement of all opinions the witness will express and the basis and reasons for them;

>     (2)    The data or other information considered by the witness in forming them;

>     (3)    Any exhibits that will be used to summarize or support them;

>     (4)    The witness' qualifications, including a list of all publications authored in the previous ten years;

>     (5)    A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

>     (6)    A statement of the compensation to be paid for the study and testimony in the case.

Although the document is identified as the "Waller Declaration," for all intents and purposes, it is an expert report in support of Voith's claim construction and must be treated as such and must comply with the applicable rules. However, the other requirements of Rule 26(a)(2)(B) are not met. Mr. Waller's Declaration should be stricken for failure to comply with Fed. R. Civ. P. 26(a)(2)(B). See *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp.2d 202 (D. N.J. 2001)(Court recommended striking expert certification filed in opposition to summary judgment based on, among other things, the failure to comply with Rule 26(a)(2)(B)).

C.    JohnsonFoils Should Be Permitted To Cross-Examine
      Mr.  Waller At The Markman Hearing

As noted previously, the Federal Circuit has found that extrinsic evidence consisting of expert reports and testimony which is generated at the time of and for the purpose of litigation can suffer from a bias that is not present in intrinsic evidence. *Phillips*, 415 F.3d 1318.  This bias can be exacerbated "if the expert's opinion is offered in a form that is not subject to cross-examination." *Id.*, citing, *Senmed, Inc. v. Richard-Allan Med. Indus., Inc.*, 888 F.2d 815, 819 n.8 (Fed. Cir. 1989).

Here, Voith has submitted the expert declaration of Mr. Waller without any notice to or opportunity for JohnsonFoils to depose Mr. Waller.  If the Court does not strike Mr. Waller's Declaration, JohnsonFoils respectfully requests that Mr. Waller be commanded to appear at the January 30, 2008 Markman hearing and be subject to cross examination by JohnsonFoils.

## CONCLUSION

For the aforementioned reasons, JohnsonFoils asks this Court to strike the Waller Declaration or in the alternative to order that Waller appear at the January 30, 2008 Markman Hearing to Allow JohnsonFoils the opportunity to cross-examine.

Respectfully submitted,

Seitz, Van Ogtrop & Green, P.A.

*/s/ Patricia P. McGonigle*

Date: January 24, 2008

George H. Seitz, III (DE #667)
Patricia Pyles McGonigle (DE #3126)
Kevin A. Guerke (DE#4096)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

-and-

Anthony S. Volpe
John J. O'Malley
Ryan W. O'Donnell
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400

*Attorneys for Defendant*
*JohnsonFoils, Inc.*

## CERTIFICATE OF SERVICE

I, Patricia P. McGonigle, Esquire, hereby certify that on this 24th day of January 2008, I electronically filed the foregoing pleading with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record. Further, I caused a copy of the foregoing pleading to be served upon the following counsel as noted

**Via Hand Delivery**
Adam W. Poff, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899

**Via Federal Express**
Neil F. Greenblum, Esquire
Neal Goldberg, Esquire
Michael J. Fink, Esquire
Greenblum & Bernstein, PLC
1950 Roland Clarke Place
Reston, Virginia  20191

/s/ Patricia P. McGonigle
Patricia P. McGonigle (ID No. 3126)
pmcgonigle@svglaw.com

63084 v1

# EXHIBIT A

LAW OFFICES
# GREENBLUM & BERNSTEIN, P.L.C.
PATENT, COPYRIGHT AND TRADEMARK MATTERS
1950 ROLAND CLARKE PLACE
RESTON, VA 20191-1411
TEL: (703) 716-1191
FAX: (703) 716-1180
EMAIL: gbpatent@gbpatent.com
www.gbpatent.com

NEIL F. GREENBLUM
BRUCE H. BERNSTEIN
JAMES L. ROWLAND
ARNOLD TURK
MICHAEL J. FINK
STEVEN WEGMAN *
WILLIAM PIEPRZ *
STEPHEN M. ROYLANCE
ROBERT W. MUELLER
WILLIAM E. LYDDANE
WILLIAM S. BOSHNICK *
PAUL A. BRAIER, Ph.D.
P. BRANKO PEJIC *
JOHN PRETA *
HERBERT F. MUENSTERER, Ph.D. ▢ *
LINDA J. HODGE
JOSHUA M. POVSNER *
DANIEL B. MOON
PAUL T. LEE △
JOHN V. MAZZOLA ▢
JAMES KENNETH MOORE, JR.
ENOCH PEAVEY
ANDREW WRIGHT
KATRIN VENTER, Ph.D. ▢
AZZA JAYAPRAKASH
JONATHAN MILLER *

NEAL GOLDBERG
STEVEN R. POLLICOFF *
FAHD MAJIDUDDIN, Ph.D. ▢
SARAH J. SMALL

OF COUNSEL:
BRUCE E. STONER, JR.
ANDREW M. CALDERON
CHARLES S. MURRAY, JR.*
SEAN MYERS-PAYNE, Ph.D.
LESLIE J. PAPENNER *
RICHARD J. McGRATH
BARRY I. HOLLANDER

TECHNICAL ADVISORS :
THOMAS WEBER, Ph.D.
ZHIDONG HAO, Ph.D.
MONICA S. ULLAGADDI
BO BIN JANG Ph.D.
WALTER SCHLAPKOHL, Ph.D.

* ADMITTED TO A BAR
  OTHER THAN VA
◦ EUROPEAN PATENT ATTORNEY
△ KOREAN PATENT ATTORNEY
▢ REGISTERED PATENT AGENT

December 18, 2007

**VIA EMAIL(PDF)**

Tony Volpe, Esq.
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103

Re:    *Voith Paper GmbH & Co. KG  v. JohnsonFoils, Inc.*
       <u>*C.A. No. 07-0226-JJF.*  Our Ref.: 214720.</u>

Dear Tony:

As you know, a Markman hearing is scheduled for next month. We propose that each side submit an opening Markman brief, an opposition, and a reply, and we would like to discuss a briefing schedule with you. Additionally, please let me know whether JohnsonFoils is agreeable to setting a time for each party to identify the claim terms which it asserts need to be construed by the Court. To the extent that we can agree on the meaning of any of those terms, it will narrow the issues to be resolved by the Court.

With respect to your request for leave to amend JohnsonFoils counterclaims, JohnsonFoils has already filed a separate action (C.A. No. 07-760) seeking exactly the same relief which you seek to include in the amended counterclaim. There is no proper justification to amend the counterclaims in the present action to simply repeat what is asserted in the other action, especially when JohnsonFoils has requested to stay this action. Moreover, the proposed amendment at this point in the litigation would unfairly prejudice Voith, cause unnecessary delay, and needlessly increase the cost of litigation, and as such, appears to be interposed for improper purposes. Accordingly, Voith does <u>not</u> consent to the request to amend.

Tony Volpe, Esq.                December 18, 2007                Page -2-

We can be available tomorrow if you are willing to discuss these matters.

Very truly yours,

GREENBLUM & BERNSTEIN, P.L.C.

Michael J. Fink

MJF/mis

{J214720 00322687.DOC}

# EXHIBIT B



**Volpe** and **Koenig** P.C.

United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103

Telephone: +1-215-568-6400
Facsimile: +1-215-568-6499
www.volpe-koenig.com

———————————— BRINGING LAW TO YOUR IDEAS ®————————————

Anthony S. Volpe
avolpe@volpe-koenig.com

December 19, 2007

Michael J. Fink, Esquire                              **VIA E-MAIL**
Greenblum & Bernstein, P.L.C.
1950 Roland Clarke Place
Reston, VA  20191

Re:   *Voith Paper GMBH & Co. KG v. JohnsonFoils, Inc.*
      Civil Action No. 07-226

Dear Michael:

This responds to your suggestion for a Markman briefing schedule.  We are
surprised at your suggestion, given your earlier opposition to our request to include
it in the schedule, but believe that it is too late in any event.  The date set for
simultaneous exchange of briefs, according to our calculations, is January 16, 2008.
Although we do not believe there is sufficient time for the briefing you suggested,
we do agree that it may be useful to decide on the disputed terms.

If you agree with exchanging terms, we suggest that you, as the patentee, provide
your proposed terms for our consideration by Friday, December 28, 2007.  We will
respond on Friday, January 4, 2008 with our proposed terms.  We can then discuss
any differences and possibly agree on what will be briefed for January 16th.

Please let us have the benefit of your thoughts at your earlier opportunity.

Very truly yours,

Volpe and Koenig, P.C.

By:_____
     Anthony S. Volpe

ASV/cps

cc:    All counsel of record via e-mail

*Patents       Trademarks       Copyrights       Trade Secrets       Litigation       Licensing*

# EXHIBIT C

LAW OFFICES

# GREENBLUM & BERNSTEIN, P.L.C.

PATENT, COPYRIGHT AND TRADEMARK MATTERS

1950 ROLAND CLARKE PLACE

RESTON, VA 20191-1411

TEL: (703) 716-1191

FAX: (703) 716-1180

EMAIL: gbpatent@gbpatent.com

www.gbpatent.com

NEIL F. GREENBLUM
BRUCE H. BERNSTEIN
JAMES L. ROWLAND
ARNOLD TURK
MICHAEL J. FINK
STEVEN WEGMAN *
WILLIAM PIEPRZ *
STEPHEN M. ROYLANCE
ROBERT W. MUELLER
WILLIAM E. LYDDANE
WILLIAM S. BOSHNICK *
PAUL A. BRAIER, Ph.D.
P. BRANKO PEJIC *
JOHN PRETA *
HERIBERT F. MUENSTERER, Ph.D. ▫ *
LINDA J. HODGE
JOSHUA M. STOVER *
DANIEL B. MOON
PAUL T. LEE ▵
JOHN V. MAZZOLA ▫
JAMES KENNETH MOORE, JR.
ENOCH PEAVEY
ANDREW WRIGHT
KATRER VENTER, Ph.D. ▫
AZZA JAYAPRAKASH
JONATHAN MILLER *

NEAL GOLDBERG
STEVEN B. POLLICOFF *
FAHD MAJIDUDDIN, Ph.D. ▫
SARAH J. SMALL

OF COUNSEL:
BRUCE H. STONER, JR.
ANDREW M. CALDERON
CHARLES S. MURRAY, JR.*
SEAN MYERS-PAYNE, Ph.D.
LESLIE J. PAPERNER *
RICHARD J. McGRATH
BARRY I. HOLLANDER

TECHNICAL ADVISORS :
THOMAS WEBER, Ph.D.
ZBIDONG HAO, Ph.D.
MONICA S. ULLAGADDI
BO BIN JANG Ph.D.
WALTER SCHLAPKOHL, Ph.D.
—————
* ADMITTED TO A BAR
  OTHER THAN VA
▫ EUROPEAN PATENT ATTORNEY
▵ KOREAN PATENT ATTORNEY
▫ REGISTERED PATENT AGENT

December 20, 2007

VIA EMAIL(PDF)

Tony Volpe, Esq.
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103

Re:    *Voith Paper GmbH & Co. KG  v. JohnsonFoils, Inc.*
       *C.A. No. 07-0226-JJF.* Our Ref.: 214720.

Dear Tony:

I disagree with your statement that it is too late for us to agree to a Markman briefing schedule.

I also disagree with you that the date set for simultaneous exchange of Markman briefs is January 16, 2008. The Scheduling Order states that the Markman briefing is to be completed 10 days prior to the January 30, 2008, hearing. While the Scheduling Order does not expressly set dates for filing initial briefs, oppositions, and replies, it does not preclude the filing of such responsive pleadings, otherwise called for under Del. Local Rule 7.1.2. Consequently, a brief filed without providing any time for the opposing party to file an opposition by January 16, does not comply with the Scheduling Order. Thus, the parties must either file their opening briefs so as to permit the filing of an opposition by January 16, or, as we have proposed, ask the Court to modify the Scheduling Order to permit the parties to file their opposition briefs after January 16. To that end, we propose that the parties agree to submit their respective opening Markman briefs on January 14, and jointly request leave for each party to file a responsive brief by January 22.

At this time, we have preliminarily identified the following as terms which may benefit from construction: twin-wire former, wire, web, fiber suspension, first section, second section, third section, means for directing the wire belts, twin wire zone, single wire predrainage zone, drainage element, means for supporting the belts, wedge shaped entrance slot, headbox, drainage strips, offset and in a non-opposing relationship, support means for resiliently supporting, means for collecting the water, roll, endless loop, means for supplying a vacuum, resiliently supported, rigidly supported, dewatering element, suction roll, forming roll, and forming shoe. Of course,

Tony Volpe, Esq.                December 20, 2007                    Page -2-

there is no need to provide briefing on a claim term if the parties agree to a joint proposed claim construction for that term, or JohnsonFoils stipulates that its accused devices satisfy that term as it appears in the claims.

We had expected to be able to determine which claim terms are in dispute based upon JohnsonFoils' response to Voith's Interrogatory No. 7 which requests JohnsonFoils to identify the claim terms it asserts are not present in its accused products. However, JohnsonFoils has yet to provide a substantive response despite offering no opposition to Voith's Motion to Compel directed to JohnsonFoils' deficient interrogatory responses.

Accordingly, please identify any claim terms which you believe are not present in the accused devices, and any other claim terms which you believe may benefit from construction, so that we have a reasonable starting point from which to identify any disputes.

Very truly yours,

GREENBLUM & BERNSTEIN, P.L.C.

Michael J. Fink

MJF/mis

Cc:    Adam W. Poff, Esq.
       George H. Seitz, III, Esq.

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VOITH PAPER GMBH & CO. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 07-226-JJF |
| | ) |
| JOHNSONFOILS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF VOITH PAPER**
**GMBH & CO. KG'S INITIAL DISCLOSURES**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26(a)(1)**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's

Scheduling Order, Plaintiff Voith Paper GmbH & Co. KG (hereinafter referred to as

"Plaintiff" or "Voith") hereby submits its initial disclosures. Voith reserves its right to

supplement these disclosures pursuant to Federal Rule of Civil Procedure 26(e) as its

investigation continues and more information becomes available in the course of

discovery.

**A.    PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION**
**THAT VOITH MAY USE TO SUPPORT ITS CLAIMS AND**
**DEFENSES**

On information and belief, the following individuals have discoverable

information that Voith may use to support its claims and defenses:

    1) Mr. Hans-Jürgen Wulz

    Mr. Wulz may be contacted through Voith's counsel:

    Neil Greenblum
    Greenblum & Bernstein P.L.C.
    1950 Roland Clarke Place
    Reston, Virginia 20191

(703) 716-1191

On information and belief, Mr. Wulz has knowledge relating to United States Patents Nos. 5,718,805 and 5,972,168 ("the Patents-in-Suit").

2) Dieter Egelhof

   Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is attempting to obtain contact information for Mr. Egelhof.

   On information and belief, Mr. Egelhof has knowledge relating to the Patents-in-Suit.

3) Klaus Henseler

   Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is attempting to obtain contact information for Mr. Henseler.

   On information and belief, Mr. Henseler has knowledge relating to the Patents-in-Suit.

4) Werner Kade

   Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is attempting to obtain contact information for Mr. Kade.

   On information and belief, Mr. Kade has knowledge relating to the Patents-in-Suit.

5) Albrecht Meinecke

   Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is attempting obtain contact information for Mr. Meinecke.

   On information and belief, Mr. Meinecke has knowledge relating to the Patents-in-Suit.

6) Wilhelm Wanke

   Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is attempting to obtain contact information for Mr. Kade.

   On information and belief, Mr. Wanke has knowledge relating to the Patents-in-Suit.

2

7) Jay Shands

   JohnsonFoils, Inc.
   40 Progress Avenue
   Springfield, MA 01104

   On information and belief, Mr. Shands has knowledge relating to
   JohnsonFoils's infringement of the Patents-in-Suit.

8) Vaughn Wildfong

   JohnsonFoils, Inc.
   40 Progress Avenue
   Springfield, MA 01104

   On information and belief, Mr. Wildfong has knowledge relating to
   JohnsonFoils's infringement of the Patents-in-Suit.

9) Douglas McPherson

   JohnsonFoils, Inc.
   40 Progress Avenue
   Springfield, MA 01104

   On information and belief, Mr. McPherson has knowledge relating to
   JohnsonFoils's infringement of the Patents-in-Suit.

10) Mr. Thomas Rühl

    Mr. Rühl may be contacted through Voith' counsel:

    Neil Greenblum
    Greenblum & Bernstein P.L.C.
    1950 Roland Clarke Place
    Reston, Virginia 20191
    (703) 716-1191

    On information and belief, Mr. Rühl has knowledge relating
    JohnsonFoils's infringement of the Patents-in-Suit.

11) Mr. Karl-Josef Böck

    Mr. Böck may be contacted through Voith's counsel:

3

Neil Greenblum
Greenblum & Bernstein P.L.C.
1950 Roland Clarke Place
Reston, Virginia 20191
(703) 716-1191

On information and belief, Mr. Böck has knowledge relating to costs
Voith's damages caused by infringement of the Patents-in-Suit.

**B.    THE CATEGORIES AND LOCATION OF DOCUMENTS AND
THINGS THAT VOITH MAY USE TO SUPPORT ITS CLAIMS AND
DEFENSES**

On information and belief, the following categories of documents and things may

be used to support Voith's claims and defenses and may be found at the indicated

locations.

1)    Documents and things relating to the Patents-in-Suit including research

and development, reviews, prosecution, prior art, reduction to practice, marketing, sales,

costs, revenues, profits, and damages resulting from JohnsonFoils's infringement, may be

located at the following facilities:

Voith Paper GmbH & Co. KG
St. Pöltener Str. 43 in 89522
Heidenheim, Germany

Voith Paper GmbH & Co. KG
Paul-Hartmann-Str. 4
Heidenheim, Germany

2)    Documents and things relating to JohnsonFoils's infringement of the

Patents-in-Suit and Voith's damages from JohnsonFoils's infringement, including

designs, specifications, profits, sales, costs, revenues, infringement opinions, and

documents demonstrating notice of JohnsonFoils's infringement of the Patents-in-Suit

may be located at JohnsonFoils's facilities.

4

**C.    COMPUTATION OF DAMAGES**

Pursuant to Fed. R. Civ. P. 26(e) and 26(g), Voith is without information sufficient to provide a computation of damages at this time and reserves its right to supplement its disclosure.

**D.    INSURANCE AGREEMENTS**

Other than the insurance agreement referred to by JohnsonFoils in its initial disclosures, Voith is not aware of any insurance agreements or indemnification agreements relevant to this action.

Respectfully submitted,

Neil F. Greenblum
Michael J. Fink
Neal Goldberg
GREENBLUM & BERNSTEIN, P.L.C.
1950 Roland Clarke Place
Reston, Virginia 20191
(703) 716-1191

- and

Adam W. Poff (DE #3990)
YOUNG CONWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6642

*Attorneys for Plaintiff Voith Paper GmbH & Co. KG*

Dated: September 21, 2007

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff Voith Paper GmbH & Co. KG's Initial Disclosures Pursuant to Federal Rules of Civil Procedure 26(a)(1) was served on Attorneys for Defendant JohnsonFoils, Inc., via Electronic Mail and First Class Mail:

> Anthony S. Volpe, Esq.
> Ryan W. O'Donnel, Esq.
> Randolph J. Huis, Esq.
> VOLPE AND KOENIG, P.C.
> United Plaza, Suite 1600
> 30 S. 17th Street
> Philadelphia, PA 19103
> (215) 568-6400
>
> George H. Seitz, III, Esq. (DE #667)
> SEITZ, VAN OGTROP & GREEN, P.A.
> 222 Delaware Avenue, Suite 1500
> P. O. Box 68
> Wilmington, DE  19899
> (302) 888-7602

Date:   September 21, 2007

> Neil F. Greenblum
> Michael J. Fink
> Neal Goldberg
> GREENBLUM & BERNSTEIN, P.L.C.
> 1950 Roland Clarke Place
> Reston, Virginia 20191
> (703) 716-1191
>
> – and –
>
> Adam W. Poff (DE #3990)
> YOUNG CONWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19899
> (302) 571-6642

> *Attorneys for Plaintiff Voith Paper GmbH & Co. KG*