IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOITH PAPER GMBH & CO. KG., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-226 (JJF) |
| | ) | |
| JOHNSONFOILS, INC., | ) | |
| | ) | |
| Defendant | ) | |

**PLAINTIFF VOITH PAPER GMBH & CO. KG'S
ANSWERING BRIEF  IN OPPOSITION TO
JOHNSONFOILS, INC.'S MOTION TO STRIKE DECLARATION
OF MICHAEL H. WALLER  IN SUPPORT OF PLAINTIFF'S
OPENING MARKMAN BRIEF OR IN THE ALTERNATIVE
FOR  AN ORDER  DIRECTING MICHAEL H. WALLER  TO
APPEAR AT THE JANUARY 30, 2008 MARKMAN HEARING TO
<u>ALLOW DEFENDANT THE OPPORTUNITY TO CROSS-EXAMINE</u>**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600
apoff@ycst.com

*Attorneys for Plaintiff Voith Paper GMBH & Co. KG*

OF COUNSEL:

GREENBLUM & BERNSTEIN, P.L.C.
Neil F. Greenblum
Michael J. Fink
Neil Goldberg
1950 Roland Clarke Place
Reston, VA 20191
(703) 716-0081

Dated:  January 28, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... iii

I.      NATURE AND STAGE OF PROCEEDINGS ................................... 2

II.      SUMMARY OF THE ARGUMENT ................................................ 4

III.      ARGUMENT ................................................................................. 5

     A.      THE LAW OF CLAIM CONSTRUCTION ............................................ 7

     B.      THE WALLER DECLARATION SHOULD NOT BE STRICKEN ................................................................................. 7

         1.      The Waller Declaration Is Completely Consistent With The Intrinsic Record Of The Patents-In-Suit. .................... 7

             a.      Drainage Elements in the First Section ........................... 8

             b.      Drainage Elements in the Second Section ...................... 9

             c.      Drainage Strip Support ................................................ 10

             d.      First Section .................................................................. 10

             e.      Second Section.............................................................. 11

             f.      Third Section................................................................. 11

         2.      The Waller Declaration Is Reliable And Admissible. .............. 12

         3.      The Waller Declaration Is Proper ............................................ 14

             a.      The Declaration Is Proper under Fed. R. Civ. P. 26 ......................................................... 14

             b.      JohnsonFoils Confuses Admissibility With Weight To Be Accorded Expert Testimony.................. 14

             c.      Professor Waller Is An Expert Within The Meaning Of Rule 702, And His Declaration Is Proper ....................................................................... 15

                 i.      Legal Standard ................................................. 15

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 2

II.     SUMMARY OF THE ARGUMENT ................................................................ 4

III.    ARGUMENT ................................................................................................... 5

        A.    THE LAW OF CLAIM CONSTRUCTION .......................................... 7

        B.    THE WALLER DECLARATION SHOULD
              NOT BE STRICKEN ............................................................................ 7

              1.    The Waller Declaration Is Completely Consistent
                    With The Intrinsic Record Of The Patents-In-Suit. ................... 7

                    a.    Drainage Elements in the First Section ........................... 8

                    b.    Drainage Elements in the Second Section ....................... 9

                    c.    Drainage Strip Support ................................................. 10

                    d.    First Section ................................................................. 10

                    e.    Second Section ............................................................. 11

                    f.    Third Section ................................................................ 11

              2.    The Waller Declaration Is Reliable And Admissible. .............. 12

              3.    The Waller Declaration Is Proper ............................................ 14

                    a.    The Declaration Is Proper under
                          Fed. R. Civ. P. 26 ........................................................ 14

                    b.    JohnsonFoils Confuses Admissibility With
                          Weight To Be Accorded Expert Testimony .................. 14

                    c.    Professor Waller Is An Expert Within The
                          Meaning Of Rule 702, And His Declaration
                          Is Proper ...................................................................... 15

                          i.    Legal Standard ................................................. 15

|   | ii. | Professor Waller Is Qualified As An Expert.....16 |

|   | iii. | Professor Waller's Declaration is Reliable.......16 |

|   | iv. | Professor Waller's Testimony is Relevant and Will Assist the Court..................................17 |

C.    JOHNSONFOILS IS NOT ENTITLED TO CROSS-EXAMINE PROFESSOR WALLER AT THE MARKMAN HEARING .....................................................................17

IV.    CONCLUSION..............................................................................................19

# TABLE OF AUTHORITIES

Page

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993) ........................................................................................... 6

*EMI Group North America,*
157 F.3d 887 (Fed. Cir. 1998) ...................................................................... 17

*In re Unisys Savings Plan Litigation,*
173 F.3d 145 (3d Cir. 1999) ......................................................................... 17

*Izumi Products Co. v. Koninklijke Philips Electronics N.V.,*
140 Fed. Appx. 236 (Fed. Cir. 2005) ............................................................ 5

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.,*
175 F.3d 985 (Fed. Cir. 1999) ....................................................................... 5

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) .................................................................................. 6, 16

*McCullock v. H.B. Fuller Co.,*
61 F.3d 1038 (2d Cir. 1995) .......................................................................... 6

*PC Connector Solutions LLC v. SmartDisk Corp.,*
406 F.3d 1359 (Fed. Cir. 2005) ..................................................................... 5

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................... 5, 6, 17

*Sandisk Corp. v. Memorex Prods.. Inc.,*
415 F.3d 1278, 1284 (Fed. Cir. 2005) ........................................... 7, 8, 9, 11

*Schneider ex rel. Estate of Schneider v. Fried,*
320 F.3d 396 (3d Cir. 2003) ............................................................. 15, 16, 17

*SmithKline Beecham Corp. v. Apotex Corp.,*
247 F.Supp.2d 1011 (N.D. Ill. 2003) ............................................................ 6

*Ulico Cas. Co. v. Clover Capital Mgmt ., Inc.,*
217 F.Supp.2d 311 (N.D.N.Y. 2002) ............................................................ 6

*WeddingChannel.Com, Inc. v. The Knot, Inc.,*
2005 WL 165286 (S.D.N.Y. 2005) ............................................................... 15

**Rules**

Fed. R. Civ. P. 26 .............................................................................................. 14

Fed. R. Civ. P. 26(a)(1)(a) ................................................................................ 14

Plaintiff Voith Paper GmbH & Co. KG ("Voith") hereby opposes JohnsonFoils, Inc.'s ("JohnsonFoils") Motion To Strike Declaration Of Michael H. Waller In Support Of Plaintiff's Opening Markman Brief Or In The Alternative For An Order Directing Michael H. Waller To Appear At The January 30, 2008 Markman Hearing To Allow Defendant The Opportunity To Cross-Examine ("Motion to Strike").

JohnsonFoils' Motion To Strike is unfounded in both law and fact. The Declaration of Michael H. Waller ("Professor Waller") in support of Plaintiff's Opening Markman Brief ("Waller Declaration") unequivocally establishes that he is an expert in the relevant art. Professor Waller's résumé, Exhibit 1 to the Waller Declaration, shows that Professor Waller has a Bachelor of Science degree in Mechanical Engineering from Rensselaer Polytechnic Institute, and a Master of Science degree and a Master of Engineering degree (advanced degrees) from Massachusetts Institute of Technology. Additionally, Professor Waller has more than 25 years experience as a professor at Miami University, in the Paper and Chemical Engineering department. Prior to becoming a professor, Professor Waller was a papermaking engineer. Waller Dec. ¶ 2.

Professor Waller stated that, in forming his opinions, he reviewed the patents-in-suit, portions of the respective prosecution histories, and various dictionaries. He also relied on his experience in the paper machine field. Waller Dec. ¶ 5. In his declaration, Professor Waller provides information concerning the level of one of ordinary skill in the art, how terms and phrases appearing in the patents-in-suit would be understood by one of ordinary skill in the art, and background information about the relevant art and the claimed invention. The facts and opinions set forth in the declaration are completely consistent with, and supported by, the intrinsic record, *i.e.,* the patent claims, specification and prosecution history.

It is hornbook law that expert testimony is admissible to clarify the patented technology and assist a court's understanding of technical aspects of the relevant art. JohnsonFoils, realizing that it is at a disadvantage by not having submitted any declarations to support its proffered constructions, seeks to strike the Waller Declaration which supports Voith's proposed claim constructions. However, as will be shown herein, JohnsonFoils has no credible basis in law or fact to challenge the Waller Declaration. The law which JohnsonFoils relies upon is inapposite, and JohnsonFoils' attorneys disagreement with Professor Waller statements is simply not a proper basis to strike the declaration.

## I.    NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement action. The Complaint, asserting United States Patent Nos. 5,718,805 ("the '805 patent") and 5,972,168 ("the '168 patent") (collectively, "the Patents-in-Suit") against JohnsonFoils, Inc., was filed by Voith on April 27, 2007, against the Defendant JohnsonFoils. *See* Complaint, D.I. 1. Voith first served discovery requests on JohnsonFoils on July 26, 2007. After requesting and obtaining several unopposed extensions of time, JohnsonFoils filed its answer, affirmative defenses, and counterclaims, on August 13, 2007. *See* "Defendant, JohnsonFoils, Inc.'s Answer, Affirmative Defenses, and Counterclaims to Plaintiff, Voith Paper GmbH & Co. KG's Complaint," (JohnsonFoils "Answer, Defenses, and CounterClaims") D.I. 19. Voith replied to the Counterclaims on September 5, 2007. *See* "Voith's Answer to Defendant's CounterClaims," D.I. 31.

On August 1, 2007, a scheduling conference pursuant to Fed. R. Civ. P. 16(b) was held. A Scheduling Order was entered on August 3, 2007, ordering that the "[e]xchange and completion of contention interrogatories, identification of fact witnesses and document

production shall be commenced so as to be completed by February 15, 2008." Rule 16(b) Scheduling Order, "Scheduling Order," D.I. 17.

On August 16, 2007, JohnsonFoils served seven (7) deposition notices before written discovery had even begun. JohnsonFoils filed a "Motion for Summary Judgment That U.S. Patents 5,718,805 and 5,972,168 are Invalid," on August 22, 2007. D.I. 25. JohnsonFoils withdrew that motion on August 24, 2007. *See* JohnsonFoils Notice of Motion to Withdraw its Motion for Summary Judgment, dated August 24, 2007, D.I. 26.

JohnsonFoils filed its "Defendant's Motion to Stay the Proceedings Pending Reexamination of the Patents in Suit or in the Alternative For Leave to File a Motion for Summary Judgment Prior to August 20, 2008 That U.S. Patents 5,718,805 and 5, 972,168 are Invalid" on August 28, 2007. (JohnsonFoils' "Motion for Stay") D.I. 28. Voith filed its response on September 17, 2007. D.I. 33. JohnsonFoils' Motion is currently pending and no hearing date has been set.

Both parties have served discovery requests and their respective objections and responses to discovery requests.

Voith filed its "Motion to Compel Defendant JohnsonFoils, Inc. to Provide Information Requested in Voith's First and Second Sets of Interrogatories and to Produce Documents Responsive to Voith's First and Second Requests for Documents" on November 9, 2007. D.I. 43 ("Voith's Motion to Compel"). JohnsonFoils' "Opposition to [Voith's Motion to Compel]" was filed on November 28, 2007. D.I. 46. Voith filed its "Reply to JohnsonFoils' Opposition to Voith's Motion to Compel" on December 3, 2007, D.I. 48. The Court issued an Oral Order on December 6, 2007, cancelling the scheduled December 7 Motion Day hearing and stating that the Court would rule based on the parties' written submission.

JohnsonFoils filed its Motion to Compel on December 17, 2007. Voith filed its Motion for a Protective Order on December 18, 2007. Briefing on both Motions has been completed.

Opening Briefs for the Markman Hearing, scheduled for January 30, 2008, were filed on January 16, 2008. On January 24, 2008, Voith requested leave to file a Supplemental Markman Brief, supported by a Supplemental Declaration from Michael H. Waller.

## II.    SUMMARY OF THE ARGUMENT

1.    Professor Waller's testimony is clearly proper. JohnsonFoils' request to strike the Waller Declaration is unfounded. JohnsonFoils does not challenge Professor Waller's expert qualifications. Instead, JohnsonFoils argues that the expert testimony is improper and inadmissible because it supports Voith's claim constructions and conflicts with JohnsonFoils' view of the intrinsic record. Contrary to JohnsonFoils' arguments, the Waller Declaration is completely consistent with, and supported by, the intrinsic record. Moreover, the Waller Declaration will likely be useful to the Court for a variety of purposes, such as 1) to provide background on the technology at issue, 2) to explain how the invention works, 3) to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, and 3) to establish that a particular term in the patent or prior art has a particular meaning in the pertinent field.

2.    As to JohnsonFoils' challenges to the admissibility of the Waller Declaration, it is well established that disputes as to the strength of an expert's credentials, alleged faults in an expert's use of a particular methodology, or the purported lack of textual authority for an expert's opinion, go to the weight, not the admissibility, of the expert's testimony. Accordingly, the Waller declaration is proper and admissible.

3.     JohnsonFoils' challenge to Professor Waller's Declaration based on the alleged lack of prior notice is without merit.  Voith disclosed Professor Waller and his Declaration to JohnsonFoils shortly after retaining him and two weeks prior to the Markman Hearing on January 16, 2008.

## III.    ARGUMENT

### A.    THE LAW OF CLAIM CONSTRUCTION

When construing claim terms, "a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).  *See also Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 140 Fed. Appx. 236, 245 (Fed. Cir. 2005) ("Claim terms are to be given their ordinary and customary meaning to one of skill in the relevant art." (*citing Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999))); *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) (*citing Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1577 (Fed. Cir. 1993)).  The ordinary and accustomed meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

To ascertain the plain and ordinary meaning to one of skill in the art, the Court objectively reviews:

> . . . those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.  Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Phillips*, 415 F.3d at 1313.

The Court in *Phillips* expressly held that extrinsic evidence in the form of expert

testimony may be relied upon:

> We have also held that extrinsic evidence in the form of expert testimony
> can be useful to a court for a variety of purposes, such as to provide background
> on the technology at issue, to explain how an invention works, to ensure that the
> court's understanding of the technical aspects of the patent is consistent with that
> of a person of skill in the art, or to establish that a particular term in the patent or
> prior art has a particular meaning in the pertinent field.

*Phillips*, 415 F.3d at 1318.

Moreover, the Court in *Phillips* concluded that "because extrinsic evidence can help

educate the court regarding the field of the invention and can help the court determine what a

person of ordinary skill in the art would understand claim terms to mean, it is permissible for the

district court in its sound discretion to admit and use such evidence." *Id.* at 1319.

As to JohnsonFoils' citations to *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579

(1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the primary purpose of the

holdings in those cases "is to protect juries from being bamboozled by technical evidence of

dubious merit...." *SmithKline Beecham Corp. v. Apotex Corp.,* 247 F.Supp.2d 1011, 1042 (N.D.

Ill. 2003). Here, Professor Waller's credentials are not contested and clearly qualify him as an

expert in the field of paper making machines. And as his declaration was submitted in the

context of a Markman hearing, there is no concern that a jury will be bamboozled. Furthermore,

it is well established that disputes as to the strength of an expert's credentials, faults in his use of

a particular methodology, or lack of textual authority for his opinion, go to the weight, not the

admissibility, of his testimony." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir.

1995); *see also Ulico Cas. Co. v. Clover Capital Mgmt ., Inc.,* 217 F.Supp.2d 311, 318 *(N.D.N.Y.*

*2002).* Accordingly, the Waller declaration is proper and admissible.

B.    THE WALLER DECLARATION SHOULD **NOT** BE STRICKEN

1.    **The Waller Declaration Is Completely Consistent
With The Intrinsic Record Of The Patents-In-Suit.**

JohnsonFoils' argument that the Waller Declaration conflicts with the intrinsic record is

preposterous. JohnsonFoils argues that the declaration should be stricken because Professor

Waller's understanding of how one of ordinary skill in the art would interpret claim terms in

view of the intrinsic record does not agree with JohnsonFoils' proposed claim constructions.

However, for all the reasons set forth in Voith's Original and Supplemental Markman Briefs,[1]

JohnsonFoils proposed claim constructions deviate from the plain language of the claims as

understood by one of ordinary skill in the art upon review of the intrinsic record and are,

therefore, wrong as a matter of law.

JohnsonFoils' proposed constructions attempt to improperly limit open claim terms to

exclude devices with unrecited elements from their scope. It is settled law that the words

"comprising" and "includes" signal open limitations. *See Sandisk Corp. v. Memorex Prods., Inc.*,

415 F.3d 1278, 1284 (Fed. Cir. 2005) ("includes" and "comprising" are open claim terms that do

not exclude unrecited elements). Thus, JohnsonFoils' arguments that recited claim elements are

*limited* to very specific sets of components is incorrect as a matter of law.

Furthermore, JohnsonFoils argument that Professor Waller's citation to "pin cites" in the

patent specification of the '805 patent-in-suit which support the ordinary and accustomed

meanings of claim terms (JohnsonFoils' Brief, p. 8) is somehow improper and at odds with the

intrinsic record has absolutely no credence. The patent specification which Professor Waller

cites to is the intrinsic record!

---

[1]    Voith filed a Motion for Leave to file its Supplemental Markman Brief on January, 24, 2007.
A copy of the brief was filed with that motion.

The examples cited by JohnsonFoils where it disagrees with the Waller Declaration are addressed below:

### a.    Drainage Elements in the First Section

The first example where JohnsonFoils disagrees with the Waller Declaration relates to "drainage elements in the first section." JohnsonFoils' Brief, p. 8. The phrase "drainage elements in the first section" does not appear in any of the claims of the patents-in-suit. The pertinent claim language is "a first section which *includes* a first drainage element at the start of the path through the twin wire zone." (emphasis added). JohnsonFoils take issue with Waller Declaration[2] where it states that the claim language is open to additional drainage elements in the first section. JohnsonFoils' Brief, pp. 8-9.

JohnsonFoils' proposed construction improperly implies that the recited first section is limited to the components expressly enumerated in the claim. This is incorrect because the claims use open language, not exclusionary language, *e.g.*, the claimed Twin Wire Former *comprises*, but is not limited to, the enumerated elements. Supplemental Waller Dec., ¶ 24. In addition, the first section of the claimed Twin Wire Former *includes* the enumerated components, but does not exclude other components as suggested by JohnsonFoils' construction. *Id.* Both the claimed Twin Wire Former and its "first section" are *open* claim terms. *See Sandisk*, 415 F.3d at 1284 ("comprises" and "includes" are open claim terms). With open claim terms, the recitation of constituent elements provide a condition for being within the term's scope, but, once satisfied, that condition remains satisfied despite the addition of other elements. *Id.*

---

[2]    Paragraph 54 of the Waller Declaration states: In a preferred embodiment, this drainage element is curved, *e.g.*, a rotating forming cylinder or a (stationary) curved forming shoe. Additional drainage elements may also be present in the beginning of the twin-wire zone.

Thus, the Waller Declaration is not only consistent with the intrinsic record, it is fully supported by the intrinsic record. Accordingly, contrary to JohnsonFoils' assertions, Professor Waller's statement that "[a]dditional drainage elements may also be present in the beginning of the twin-wire zone" is correct, and does not exceed the scope of the claims allowed by the USPTO.

  **b.**  **Drainage Elements in the Second Section[3]**

JohnsonFoils disagrees with the statement in the Waller Declaration that "a drainage strip is a blade which contacts the wire."[4] JohnsonFoils argues that under its proposed claim construction, in the second section, the term "drainage strips" do not include forming shoe strips. JohnsonFoils' Brief, p. 9. JohnsonFoils' proposed construction improperly implies that the recited second section is limited to only drainage strips. This is incorrect because the claimed Twin Wire Former *comprises*, but is not limited to, the enumerated elements. Both the claimed Twin Wire Former and its "second section" are *open* claim terms. *See Sandisk*, 415 F.3d at 1284 ("comprises" and "includes" are open claim terms). With open claim terms, the recitation of constituent elements provide a condition for being within the term's scope, but, once satisfied, that condition remains satisfied despite the addition of other elements. *Id.* Thus, the proposed claim construction recited in the Waller Declaration is not only consistent with the intrinsic record, it is fully supported by the intrinsic record.

---

[3] The phrase "drainage elements in the second section" does not appear in any of the claims of the patents-in-suit.

[4] Paragraph 81 of the Waller Declaration states: "Drainage strips: A drainage strip is a blade which contacts the wire. '805 patent, col. 4:20-28, 37-38 ('The strips scrape the water from the wires.')"

### c.     Drainage Strip Support

JohnsonFoils disputes the statement in the Waller Declaration that "at least one of the drainage strips on one side of the wire meshes is resiliently supported while at least one of the drainage strips on the other side is rigidly supported."[5]  JohnsonFoils argues that all of the strips on one side are resiliently mounted and all of the strips on the other are rigidly mounted. JohnsonFoils' Brief, pp. 9-10.

There is no dispute that the claims of the '805 patent recite resiliently mounted drainage strips on one side and rigidly mounted strips on the other.  However, whether there is one or a plurality of drainage strips, there is no language in the claims, the specification, nor the prosecution history which requires all strips on a given side to be resiliently or rigidly mounted, or present only in a given section.  Moreover, after the drainage strips there may be additional drainage elements.  *See* Figs. 1-5, elements 23, 29, 31, 45; and col. 5 lines 2-8, and 47-51, and col. 6 lines 25-28 of the '805 patent.

Thus, the Waller Declaration is completely consistent with, and supported by, the intrinsic record.

### d.     First Section

JohnsonFoils' disagrees with Professor Waller's statement that one of ordinary skill in the art would construe the "first section" to mean "[t]he first forming section of a twin wire former is where web formation begins."  Waller Dec. ¶ 75.  JohnsonFoils argues that the claims

---

[5]     Paragraph 57 of the Waller Declaration states: "Importantly, at least one of the drainage strips on one side of the wire meshes is resiliently supported while at least one of the drainage strips on the other side is rigidly supported.  As described in the specification, the use of resiliently supported blades allows for the blade to temporarily move in response to changes in pressure of the fiber suspension, thus maintaining a relatively constant forming pressure and avoiding undesirable damage to the partially formed web.  '805 Patent, col. 7:16-21."

define the first section by it components. JohnsonFoils' Brief, p. 10. As stated earlier, JohnsonFoils assertion is incorrect because both the claimed Twin Wire Former and its "first section" are *open* claim terms. *See Sandisk*, 415 F.3d at 1284 ("comprises" and "includes" are open claim terms).

Thus, the Waller Declaration is completely consistent with, and supported by, the intrinsic record.

### e.    Second Section

JohnsonFoils' disagrees with the statement in the Waller Declaration which construes the "second section" to mean "[t]he forming section after the first forming section of a twin wire former." Waller Dec. ¶ 80. JohnsonFoils argues that the claims define the second section by its components. JohnsonFoils' Brief, p. 11. Again, JohnsonFoils improperly attempts to read unnecessary limitations into the claims. There is no dispute that the second section includes certain components, but as with the first section, the claim language is open, and does not exclude other components as suggested by JohnsonFoils' construction. Accordingly, the Waller Declaration is consistent with the intrinsic record.

### f.    Third Section

JohnsonFoils' also disagrees with the statement in the Waller Declaration which construes the "third section" to mean "[t]he forming section after the second forming section of a twin wire former." Waller Dec. ¶ 85. As with the "first" and "second" sections, JohnsonFoils argues that the "third" section is also limited to specific components. JohnsonFoils' Brief, p. 11. As before, JohnsonFoils' proposed construction is simply wrong. Just like the open wording used to recite the "first" and "second" sections, the claim language reciting the "third" section is

also open, and does not exclude other components as suggested by JohnsonFoils. Accordingly, the Waller Declaration is consistent with the intrinsic record.

In sum, JohnsonFoils arguments that a few of the statements in the Waller Declaration are in conflict with the intrinsic record is erroneous. JohnsonFoils attempts to improperly import limitations into the claims is at odds with ordinary and accustomed meanings of the claim terms. The fact that Professor Waller does not agree with JohnsonFoils' proposed constructions, and that JohnsonFoils challenges select statements in the Waller Declaration, is not proper basis for striking the declaration.

Moreover, the declaration is admissible and should not be stricken because, as realized in *Phillips*, the declaration will likely assist the Court as it provides background on the technology at issue, explains how an invention works, ensures that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, and/or establishes that a particular term in the patent or prior art has a particular meaning in the pertinent field.

### 2.   The Waller Declaration Is Reliable And Admissible.

JohnsonFoils next argues that the Waller Declaration is unreliable and inadmissible because Professor Waller allegedly reviewed only portions of the prosecution histories and "unidentified" dictionaries. JohnsonFoils' Brief, p. 12. This argument is speculative at best, and contrary to the facts. Professor Waller had in his possession the complete prosecution histories for the patents-in-suit, and he reviewed the <u>relevant portions</u> of the prosecution histories. Every patent practitioner knows that a prosecution history includes portions which are not relevant to claim construction, *e.g.*, transmittal letters and facsimile cover sheets. There is no need for Professor Waller to read portions of a prosecution history which are totally irrelevant to the

claim construction issues. Professor Waller reviewed the <u>relevant portions</u> of the prosecution histories, and JohnsonFoils unfounded accusations based upon pure speculation have no merit.[6]

As for JohnsonFoils assertion that Professor Waller reviewed allegedly unidentified dictionaries, the Waller Declaration clearly cites to the specific references which he relies on. *E.g., see* Waller Dec. ¶¶ 69-71, 86. JohnsonFoils assertion of unidentified dictionaries similarly has no merit.

Accordingly, JohnsonFoils concocted arguments about the prosecution histories and dictionaries should be rejected as they were speculative and completely without merit.

JohnsonFoils also appears to assert that Professor Waller's description of the background of paper making machines (Waller Dec. ¶¶ 9-38) and his description of the invention (Waller Dec. ¶¶ 39-64) have no bearing on the technical background of the patents-in-suit and do not provide any understanding of any term of the claims, and is therefore unreliable and inadmissible. This assertion by JohnsonFoils is confounding. JohnsonFoils cannot in good faith assert that the background of paper making machines and a description of the invention would not be useful to the Court. Indeed, in *Phillips* it is acknowledged that "expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.

---

[6]    At the parties' meet and confer prior to the filing of JohnsonFoils' motion, JohnsonFoils made <u>no mention</u> of its purported concern that Professor Waller might not have considered the full intrinsic record in developing his opinion. Had JohnsonFoils done so, Voith could have easily clarified then that Professor Waller reviewed the entire record.

### 3.    The Waller Declaration Is Proper

#### a.    The Declaration Is Proper under Fed. R. Civ. P. 26

JohnsonFoils next attack on the Waller Declaration is that it does not comply with the

Fed. R. Civ. P. 26. JohnsonFoils' Brief, pp. 14-16. Again, JohnsonFoils' arguments have no

merit. Contrary to JohnsonFoils' assertion, the Waller Declaration is not an expert report in the

context of Rule 26(a)(2). However, even if it were considered an expert report, reports from

retained experts are not required to be served until May 21, 2008. Rule 16(b) Scheduling Order,

¶ 3(b). As such, there was no requirement to serve the declaration prior to its submission to the

Court.

JohnsonFoils also argues that Voith did not identify Professor Waller in its initial

disclosures under Fed. R. Civ. P. 26(a)(1)(a). While it is doubtful that a retained expert, who

may or may not testify during the case, would have to be disclosed in a party's Initial

Disclosures, the fact is that Voith had not retained Professor Waller until well after initial

disclosures had been exchanged. As such, he could not have been identified at the time the

parties exchanged initial disclosures.

As for JohnsonFoils' assertion that Voith did not identify Professor Waller in any

discovery responses prior to the date the declaration was filed, JohnsonFoils had not served any

interrogatories which would have required Professor Waller to be identified before the

submission of his declaration.

#### b.    JohnsonFoils Confuses Admissibility With Weight To Be Accorded Expert Testimony.

Tellingly, JohnsonFoils does not challenge Professor Waller's qualifications. Rather,

JohnsonFoils attacks Professor Waller's Declaration based on authority directed to the weight of

expert testimony—not its admissibility. However, "the Federal Circuit has . . . emphasized that

[claim construction] rules concerning how much (if any) weight to accord extrinsic evidence are not applied to the underlying question of admissibility." *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 2005 WL 165286 *5 (S.D.N.Y. 2005) (*citing Aqua-Aerobic Sys., Inc. v. Aerators, Inc.*, 211 F.3d 1241 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 n. 2 (Fed. Cir. 1999)(stating that admissibility of expert testimony and reliance on such testimony for the purpose of claim construction are separate issues governed by different rules).

JohnsonFoils' failure to squarely address the *admissibility* of Professor Waller's Declaration alone warrants denial of the instant Motion to Strike.  However, Professor Waller's unchallenged credentials more than qualify him as an expert in the papermaking field, and there is no basis in law or fact to strike his Declaration.

<blockquote>
**c.    Professor Waller Is An Expert Within The Meaning Of Rule 702, And His Declaration Is Proper**

**i.    Legal Standard**
</blockquote>

Where an evidentiary ruling raises a procedural issue that is not unique to patent law, the law of the regional circuit applies. *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 2005 WL 165286, *4 (S.D.N.Y. 2005) (*citing Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999); *WMS Gaming, Inc. v. Intern'l Game Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999)).  Admissibility of expert testimony is a procedural issue that arises in an array of substantive areas.  As such, the Third Circuit's application of the *Daubert* test governs the admissibility of expert declarations such as the Waller Declaration.

In articulating the test, the Third Circuit has stated that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (*citing In re Paoli R.R. Yard PCB Litig.*, 35

F.3d 717, 741-43 (3d Cir. 1994); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). A district court's decision to admit or reject expert testimony is reviewed under an abuse of discretion standard, and the decision will be disturbed when the decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 404 (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

### ii.    Professor Waller Is Qualified As An Expert

Professor Waller is qualified as en expert because of his extensive background in paper making science and engineering. The Third Circuit has interpreted the qualification requirement "liberally, holding that 'a broad range of knowledge, skills, and training qualify an expert.'" *Schneider ex rel. Estate*, 320 F.3d 396, 404 (*citing In re Paoli*, 35 F.3d at 741-743)(emphasis added). In making this determination the Court is required to "decide whether th[e] particular expert ha[s] specialized knowledge to assist ... 'in deciding the particular issue in the case.'" *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (internal citation omitted).

Here, Professor Waller, as a professor and paper machine engineer with decades of experience in the papermaking field, has "specialized knowledge" relevant to at least the claim construction issue in this case. As such, Professor Waller is qualified as an expert under Rule 702 and *Daubert*.

### iii.    Professor Waller's Declaration is Reliable

Professor Waller's Declaration is *reliable* because the method he used to arrive at his conclusions—reading the Patents-in-suit in the context of the specification and the prosecution history—is the scientifically correct way to address the relevant issue: How would one of ordinary skill understand the claims in the context of the specification and prosecution history. Thus, in accordance with the requirements of *Daubert*, Professor Waller's Declaration is "based

on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief." *Schneider ex rel. Estate*, 320 F.3d at 404 (*citing In re Paoli*, 35 F.3d at 742; *Daubert*, 509 U.S. at 590). Professor Waller's testimony is based upon Professor Waller's reading of the '805 and '168 patent, the relevant portions of the prosecution histories of these patents, various dictionaries and his years experience in the papermaking field. As such, Professor Waller's testimony as set forth in the Waller Declaration is indisputably based upon "good grounds," and reliable. *Schneider ex rel. Estate*, 320 F.3d at 404.

**iv.    Professor Waller's Testimony is Relevant
and Will Assist the Court**

Professor Waller's Declaration is relevant and useful because his opinion regarding the understanding of the claims from the perspective of one of ordinary skill informs an essential claim construction inquiry. *See Schneider ex rel. Estate*, 320 F.3d at 404 (*citing In re Paoli*, 35 F.3d at 741-743) (in the context of trial testimony, testimony must be relevant and assist the trier of fact). Testimony is relevant if "the proffered expert opinion is relevant to a factual issue before the fact-finder." *In re Unisys Savings Plan Litigation*, 173 F.3d 145, 168 (3d Cir. 1999). As such, the Waller Declaration is clearly relevant. The Waller Declaration is being offered, *inter alia*, to help the Court understand paper making technology and understand how one of ordinary skill in the art would understand the claim terms. *See Phillips*, 415 F.3d at 1317; *EMI Group North America*, 157 F.3d 887, 892 (Fed. Cir. 1998).

**C.    JOHNSONFOILS IS NOT ENTITLED TO CROSS-EXAMINE
PROFESSOR WALLER AT THE MARKMAN HEARING**

There is simply no basis for requiring Professor Waller to attend the Markman Hearing for the purpose of permitting JohnsonFoils' counsel to cross-examine him. Indeed, the timing of

the depositions of experts are specifically addressed in the Rule 16(b) Scheduling Order, and are not to be conducted until sometime after May 21, 2008. *See* ¶¶ 3(e), (f) and (h). Moreover, in view of the importance of the understanding of one of ordinary skill to the claim construction inquiry, JohnsonFoils' can hardly claim that it is surprised that Voith has provided some evidentiary support for its contentions through the declaration of an expert in paper making science.

## IV.    **CONCLUSION**

JohnsonFoils, for reasons known only to them, chose not to submit any declarations to support their proposed claim constructions. Voith's submission of the Waller Declaration in support of its Markman Briefs is appropriate, and the declaration is clearly admissible. The statements in the declaration are consistent with the intrinsic record, and provide evidence of how those skilled in the art would understand the language recited in the claims of the patents-in-suit. Moreover, the declaration will assist the Court to understand the background on paper making machines and how the invention works. Accordingly, Plaintiff respectfully requests the Court to deny JohnsonFoils' Motion To Strike.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Adam W. Poff (No. 3990)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
Tel:  (302) 571-6600
Fax:  (302) 571-1253

*Attorneys for Plaintiff Voith Paper GMBH & Co. Kg.*

OF COUNSEL:

GREENBLUM & BERNSTEIN, P.L.C.
Neil F. Greenblum
Michael J. Fink
Neal Goldberg
1950 Roland Clarke Place
Reston, VA 20191
(703) 716-0081

Dated:  January 28, 2008

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on January 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George H. Seitz, III, Esquire
> Patricia P. McGonigle, Esquire
> SEITZ, VAN OGTROP & GREEN, P.A.
> 222 Delaware Avenue
> Suite 1500
> P.O. Box 68
> Wilmington, DE 19899

I further certify that on January 28, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

> Anthony S. Volpe, Esquire
> Ryan W. O'Donnell, Esquire
> Volpe and Koenig
> United Plaza, Suite 1600
> 30 South 17th Street,
> Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam w. Poff*
Adam W. Poff  (No. 3990)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Voith Paper GmbH & Co. KG*